IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY RODRIGUEZ-ORTEGA AND
JOSHUA RODRIGUEZ,

        Plaintiff,

v.                                No.  1:21-cv-01129-SCY-KK

DAVID RICH, KENNETH LUCERO,
in their official and individual capacities, AND
NEW MEXICO DEPARTMENT OF HEALTH

        Defendants,

**<u>DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR VIOLATIONS OF THE
FAMILY AND MEDICAL LEAVE ACT, THE NEW MEXICO HUMAN RIGHTS ACT,
BREACH OF IMPLIED CONTRACT, BREACH OF GOOD FAITH AND FAIR
DEALING, WHISTLEBLOWER PROTECTION ACT AND PETITIONS FOR WRIT OF
CERTIORARI AND SUPPORTING MEMORANDUM</u>**

        Defendants David Rich and Kenneth Lucero in their official and individual capacities, and

the New Mexico Department of Health ("Defendants"), by and through counsel of record, Miller

Stratvert P.A. (Paula Maynes and Laura R. Ackermann) respectfully move to dismiss Plaintiffs'

Complaint for Violations of the Family and Medical Leave Act, the New Mexico Human Rights

Act, Breach of Implied Contract, Breach of Good Faith and Fair Dealing, Whistleblower

Protection Act, and Petitions for Writ of Certiorari ("Complaint") filed on January 8, 2022.  This

motion is opposed by Plaintiffs.

I.      **<u>FACTUAL AND PROCEDURAL BACKGROUND</u>**.

        Plaintiff Jeremy Rodriguez-Ortega ("Rodriguez-Ortega") began working for the New

Mexico Department of Health ("NMDOH") in June 2018, and Plaintiff Joshua Rodriguez

("Rodriguez") began working for NMDOH in July 2011.  (Compl. ¶¶ 12-13, 16.)  Plaintiffs are

twin brothers who both have a congenital kidney disease.  (Compl. ¶ 11.)  Defendants David Rich ("Rich") and Kenneth Lucero ("Lucero") are employed by the NMDOH.  (Compl. ¶¶ 13, 40.)

    A. **Jeremy Rodriguez-Ortega**.

Rodriguez-Ortega worked in Human Resources ("HR") at the NMDOH and reported directly to Rich.  (Compl. ¶ 13.)  Rodriguez-Ortega applied for and was granted leave at NMDOH under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2615 ("FMLA") from July 2018 to July 2019.  (Compl. ¶ 14.)   On February 21, 2020, Rodriguez-Ortega was "suddenly and unexpectedly hospitalized for 3 days due to his medical condition," and was allegedly absent from work due to his health until he returned to work on March 2, 2020.  (Compl. ¶ 23.)  Rodriguez-Ortega's FMLA leave had expired in July 2019.  (Compl. ¶ 31.)  Plaintiffs assert that Rodriguez-Ortega was allowed to and had taken leave related to his condition more than twelve times from July 2019 to February 2020, even though he was not approved for FMLA leave at that time.  (Compl. ¶ 32.)  Even though he did not have approved FMLA leave, FMLA was designated (unknown by whom) on February 22-26, February 27 (part of), and February 29-March 1, 2020.  (Compl. ¶ 35.)  Plaintiffs allege Rich designated Rodriguez-Ortega as Absent Without Leave ("AWOL") on February 21, part of February 27, and on February 28, 2020.  (Compl. ¶ 35.)

    "Shortly after his return" to work on March 2, 2020, Rodriguez-Ortega met with Rich and Teresa Padilla (the "Meeting").  (Compl. ¶ 27.)  At the Meeting, it was suggested to Rodriguez-Ortega that he apply for FMLA, and he was told that the FMLA leave would be applied *retroactively* back to July 2019, allowing him to have FMLA leave covering the time he did not have approved leave and was absent from work.  (Compl. ¶ 31.)  Rodriguez-Ortega submitted an FMLA application dated March 5, 2020, which was approved and applied retroactively starting July 2019 and ending July 2020.  (Compl. ¶¶ 33, 38.)   Rich instructed Rodriguez-Ortega to

complete another FMLA application dated March 16, 2020, which was approved from March 2020 to July 2020.  (Compl. ¶¶ 37-38.)

Plaintiffs allege that following the New Mexico Governor's March 17, 2020 Stay-At-Home Order when all state employees were working remotely, Rodriguez-Ortega "dutifully logged into the DOH VPN Service 'Apache-Guacamole," but he "did not notice when his email password expired, and observed no prompts."  (Compl. ¶¶ 48, 50.)  On April 24, 2020, Rich emailed Rodriguez-Ortega about a Notice of Contemplated Action ("NCA") he had failed to complete, and gave him until April 27, 2020, to submit the NCA.  (Compl. ¶¶ 56-57.)  Plaintiffs claim Rodriguez-Ortega did not know Rich emailed him because his password had expired.  (Compl. ¶¶ 50, 59.)  Rich emailed Rodriguez-Ortega again on May 1, 2020, regarding the past-due NCA, needing to be notified of his medical appointments and how he was coding his time, and that he had "literally no work result to speak of nor have you communicated with me or the team as to what you are doing."  (Compl. ¶¶ 48, 61-63.)

On May 4, 2020, Rodriguez-Ortega sent Rich a text stating, "David I just arrived at the ED at SF Pres Hospital.  It's a given I won't be able to telecommute the rest of the day.  I'll keep you posted."  (Compl. ¶ 67; Ex. A.)  After not receiving any updates for eleven days, Rich called Rodriguez-Ortega on May 15, 2021, about being AWOL.  (Compl. ¶ 73.)  Rodriguez-Ortega told Rich he had been teleworking, and never mentioned being hospitalized after the May 4th text.  (Compl. ¶ 76.)

On June 30, 2020, Rich issued a NCA to Rodriguez-Ortega for being AWOL, negligent in his duties, failure to be ready to work, insubordination, and inappropriate and unprofessional behavior.  (Compl. ¶ 80; Ex. B.)  As noted by Plaintiffs in the Complaint, the AWOL allegations were from May 2020, and not from the February 2020 hospitalization.  (Compl. ¶ 81.)  The NCA

stated it was proposing to dismiss Rodriguez-Ortega from his position in HR, and that he could submit a written response or request an opportunity for an oral response within eleven calendar days of the date of service.  (Ex. B.)  NMDOH issued the Notice of Final Action ("NFA") terminating Rodriguez-Ortega on July 22, 2020, and stated "you provided a written response to your NCA…the information you provided in your written statement was read and carefully considered but was not persuasive enough to change the proposed disciplinary action."  (Compl. ¶ 83; Ex C.)  The NCA and the NFA stated Rodriguez-Ortega violated the Governor's Code of Conduct and the following NMDOH Policies: Code of Conduct (HR 08.28), Telework During Emergencies (HR 08.53) and the Telework Agreement Form, Disciplinary Action (HR 08.10), Readiness to Work, and Absences and Other Leave (HR 08.13).  (Ex. B & C.)  The NCA and NFA stated Rodriguez-Ortega was "AWOL from May 5, 6, 7, 8, 11, 12, 13, 14, 15," of 2020, for a total of nine days in violation of the Absences and Other Leave Policy, that "Four (4) consecutive days of AWOL is considered job abandonment and shall be grounds for dismissal without having first imposed progressive discipline," with the sanction for four (4) or more AWOLs in a 12-month period being dismissal.  (Ex. B & C.)

Plaintiffs alleged "Plaintiffs timely filed charges of discrimination with the New Mexico Human Rights Bureau, which was cross filed with the EEOC.  They satisfied all administrative requirements and received an order of non-determination dated July 15, 2021, which allows them 90 days to file their Complaint in state district court."  (Compl. ¶ 10.)  Plaintiffs have not exhausted their administrative remedies with the New Mexico Human Rights Bureau ("HRB").  In Rodriguez-Ortega's September 14, 2020 HRB Charge ("HRB Charge") he alleged (Ex. D.):

a.      Discrimination, checking boxes for "Disability" and "Serious Medical Condition;"

b.      Discrimination as stated in the narrative section, "Due to my health conditions, I was informed that my job duties were distributed to other HR Analyst, in order for me to proceed with Early Disability Retirement. (Against my will)  My application was not processed in a time frame according to DOH's expectations, so my employment was terminated;"[1]

c.      The organization named was the NMDOH, and the individuals named were David Rich as HR Labor Manager, and Teresa Padilla as HR Division Director.

The allegations Plaintiffs alleged in the Complaint that ***were not*** alleged in the HRB Charge were:

a.      Rodriguez-Ortega has "PKD" and pancreatitis, a disability and/or serious medical condition under NMHRA; (Compl. ¶ 120.)

b.      Rich discriminated and retaliated against Rodriguez-Ortega when his job-duties were stripped and reassigned after his February 2020 hospitalization; (Compl. ¶ 133.)

c.      At the Meeting Rich: i) discriminated and retaliated against Rodriguez-Ortega when he threatened to suspend Rodriguez-Ortega for 5 days for allegedly being AWOL while in the hospital and recovering; ii) told Rodriguez-Ortega it was unacceptable that he had not notified Rich of his whereabouts, stating "that without exception, he must comply with DOH's Absence and Leave policy;" iii) marked Rodriguez-Ortega AWOL for several days of his February hospitalization in violation of policy; and, iv) said that if Rodriguez-Ortega did not notify Rich when he would be absent within 30 minutes of the start of his shift, he would be marked AWOL and subject to discipline up to and including termination; (Compl. ¶¶ 27-28, 134.)

---

[1] Rodriguez-Ortega also checked the box for discrimination based on Sexual Orientation, stating, "Comments were also made about my sexual orientation in relation to my job;" however, this is not alleged in the Complaint.

d.      Rich discriminated against Rodriguez-Ortega at the Meeting when Rich "pressured Mr. Rodriguez-Ortega to take early disability retirement 'out of our concern for your rapidly deteriorating health.'"  Plaintiffs alleged Rich told Rodriguez-Ortega he would have to seek early retirement in lieu of being suspended for 5 days for being AWOL while he was hospitalized and recovering; (Compl. ¶¶ 29, 135.)

e.      Rich discriminated against Rodriguez-Ortega when he placed him "under increased scrutiny because Mr. Rodriguez-Ortega's disability application and/or approval was not happening quickly enough."  Plaintiffs alleged Rich sent angry emails to Rodriguez-Ortega on April 24, 2020, and May 1, 2020, and called Rodriguez-Ortega yelling about him being AWOL; (Compl. ¶¶ 56, 61, 136.)

f.      Rich discriminated against Rodriguez-Ortega "by failing to provide larger monitors for telework to accommodate Mr. Rodriguez-Ortega's disability related vision problems;" (Compl. ¶ 137.)

g.      Rich discriminated and retaliated against Rodriguez-Ortega "by ridiculing and disciplining Mr. Rodriguez-Ortega for not being able to see that his password was expired on his small personal laptop screen;" (Compl. ¶ 138.)

h.      Rich discriminated and retaliated against Rodriguez-Ortega "by terminating his employment for leave while hospitalized and recovering from hospitalization."  Plaintiffs alleged Rodriguez-Ortega was in the hospital for three days starting on February 20, 2020, went to the Emergency Department on May 4th and May 8th, and went into the hospital May 13-15, 2020. (Compl. ¶¶ 33, 67, 69-70, 139.)

Rodriguez-Ortega appealed his termination to the State Personnel Board ("SPO") and a two-day hearing was presided over by Administrative Law Judge Aaron Baca ("ALJ Baca").

(Compl. ¶¶ 193-194; Ex. E.)  The parties submitted their Written Closing Argument, Proposed Findings of Fact, and Proposed Conclusions of Law by July 12, 2021, in accordance with the Post-Hearing Scheduling Order.  (Ex. F.)  On October 14, 2021, ALJ Baca issued his Recommended Decision.  (Compl. ¶ 194; Ex. E.)  Rodriguez-Ortega filed his written exceptions and objections to the Recommended Decision on November 4, 2021.  (Ex. G.)  On December 10, 2021, the matter came before the SPB, and after considering ALJ Baca's summary of evidence, proposed findings of fact, recommended conclusions of law, and Recommended Decision, as well as Rodriguez-Ortega's exceptions to the Recommended Decision, the SPB affirmed Rodriguez-Ortega's dismissal.  (Compl. ¶ 195; Ex. H.)

B.  **Joshua Rodriguez**.

Plaintiffs allege that on or around December 2019, Rodriguez applied for a promotion as a Vaccine Outreach Manager at NMDOH and at the interview (the "Interview"), "was immediately asked to fill out ADA accommodations paperwork which requested disclosure of his health condition."   (Compl. ¶¶ 17-18.)  Rodriguez did not fill out the paperwork and was not offered the promotion.  (Compl. ¶ 19.) Rodriguez emailed Rich on December 30, 2019, and January 7, 2020, about the interview.  (Compl. ¶¶ 20-21.)  Plaintiffs alleged Rich sent an email to Lucero and others about Rodriguez' claim and identified Rodriguez by name and work location.  (Compl. ¶ 22.)

Plaintiffs allege that on March 9, 2020, Rodriguez observed Vandora Montoya and Chasedy Vela with a stun gun in the office and was directed by his manager to speak with them about what they thought was a violation of NMDOH's Weapons Policy.  (Compl. ¶ 39.)  Plaintiffs claim Ms. Montoya reported sexual harassment by Rodriguez to Lucero that same day and that Lucero asked Rich for permission to investigate only Rodriguez, but not the alleged weapons policy violation.  (Compl. ¶¶ 40-42.) Plaintiffs allege Lucero conducted a biased investigation.

(Compl. ¶¶ 43-46.)   Plaintiffs further alleged Lucero's report was relied on entirely by management, and that two others who were found to have violated policy, Ron Ulibarri and Dr. Chris Novak, were not disciplined.  (Compl. ¶¶ 52-53.)  A NCA was issued for Rodriguez on April 24, 2020, proposing dismissal for sexual harassment, inappropriate and unprofessional behavior, and dishonesty, and also included as evidence in support of termination two counseling statements from 2016.  (Compl. ¶ 54; Ex. I.)  On May 19, 2020, NMDOH issued a NFA terminating Rodriguez, stating that NMDOH considered his May 8, 2020 written statement in response to the NCA, found it not to be persuasive, and decided to proceed with dismissal.  (Compl. ¶ 78; Ex. J.)

As stated above, Plaintiffs allege all administrative requirements have been satisfied with the HRB; however, Rodriguez' administrative remedies with the HRB have not been exhausted. (Compl. ¶ 10.)  In Rodriguez's September 28, 2020 HRB Charge ("HRB Charge") he alleged (Ex. K.):

a.      Discrimination, checking boxes for "Disability" and "Serious Medical Condition," and including a handwritten note "Polycystic Kidney Disease;"

b.      Discrimination based on the first narrative section in which he stated, "I applied and interviewed for a position with the Immune Division with DOH.  I was asked about my health condition the minute I walked in the door.  I was asked to fill out paperwork regarding my health;"

c.      Discrimination based on the second narrative section in which is stated, "After reporting this illegal attempt to force me to fill out an accommodation request for a disability I had not even had to disclose to them, I thought that the matter was settled.  I did not get this promotion, however.  In March, I was suddenly and unexpectedly placed under investigation for alleged "sexual harassment" and then terminated in May.  I had never had any previous issues.  I believe that was discrimination for my disability and retaliation for reporting the illegal requirement to

make me fill out an accommodation from in my interview.  They fired my brother for the same disability at the same time;"

      d.      The organization named was the NMDOH, and the individuals named were Erica Martinez, Program Manager, David Rich, HR Labor Manager, and Ken Lucero, HR Manager.

On July 7, 2021, Rodriguez amended the HRB Charge (collectively "HRB Charge") (Ex. K.):

      a.      Stating he was adding "Ken Lucero, David Rich, Ron Ulibarri, Vandora Montoya, Jeff Lara and Chasedy Vela to my charge;"

      b.      Alleging against Lucero and Rich, "I believe that Ken Lucero and David Rich found me guilty of sexual harassment in retaliation for engaging in protected activity, and decided to terminate me."

The allegations Plaintiffs alleged in the Complaint that ***were not*** alleged in the HRB Charge were:

      a.      Rodriguez engaged in a protected activity when he emailed Rich about the Interview on or around December 30, 2019[2], and again on January 7, 2020; (Compl. ¶¶ 20-21, 124.)

      b.      Rich discriminated and retaliated Rodriguez when he identified Rodriguez by name and work location to DOH employees, including Lucero, in a January 15, 2020 email; (Compl. ¶¶ 22, 125.)

---

[2] The Complaint states the Interview took place in December 2018 at ¶ 124, but this appears to be a typographical error because earlier it states it occurred in December 2019 at ¶ 20.

c.     Lucero discriminated and retaliated against Rodriguez when he sought approval to investigate Rodriguez after a report of sexual harassment by Ms. Montoya, instead of investigating Ms. Montoya and Ms. Vela for possible weapons violations; (Compl. ¶¶ 42, 126.)

d.     Lucero discriminated against Rodriguez in conducting a biased investigation designed to terminate Rodriguez and made every inference against him; (Compl. ¶¶ 43-46, 127.)

e.     Lucero discriminated against Rodriguez "when he added extra allegations to Mr. Rodriguez's NCA and NFA;" (Compl. ¶ 128.)

f.     Rich and Lucero discriminated and retaliated against Rodriguez when they did not remove two verbal counseling statements from 2016 in violation of NMDOH policy, and used the statements to support the termination; (Compl. ¶¶ 54, 131.)

g.     All Defendants discriminated against Rodriguez by disciplining him and not others recommended for discipline in the NCA and NFA; (Compl. ¶¶ 52, 129.)

h.     All Defendants discriminated and retaliated against Rodriguez when terminating Rodriguez instead of suspending him for a first alleged violation, disparately applying discipline. (Compl. ¶ 132.)

Rodriguez appealed his termination to the SPB and a three-day hearing was presided over by Administrative Law Judge K. Janelle Haught ("ALJ Haught"). (Compl. ¶¶ 84-85; Ex. L.) The parties submitted their Written Closing Statements, Proposed Findings of Fact, and Proposed Conclusions of Law on June 4, 2021, in accordance with the Amended Post-Hearing Scheduling Order. (Ex. M.) On August 18, 2021, ALJ Haught issued her Recommended Decision. (Ex. L.) Rodriguez filed his written exceptions and objections to the Recommended Decision on September 8, 2021. (Ex. N.) On September 17, 2021, the matter came before the SPB, and after considering ALJ Haught's summary of evidence, proposed findings of fact, recommended conclusions of law,

and Recommended Decision, as well as Rodriguez' exceptions to the Recommended Decision, the SPB affirmed Rodriguez' dismissal.  (Compl. ¶ 93; Ex. O.)

II.      **LAW GOVERNING RULE 12(b)(6) MOTIONS TO DISMISS**.

Rule 12(b)(6) permits dismissal of a Complaint that fails to state a claim upon which relief can be granted, "dismissal under Rule 12(b)(6) is appropriate if the Complaint alone is legally insufficient to state a claim." *Doe v. Woodard*, 912 F.3d 1278, 1299 (10th Cir. 2019).  To survive a motion to dismiss, "a Complaint must have enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  Legal conclusions that are couched as factual allegations do not suffice. *Llacua v. W. Range. Ass'n*, 930 F.3d 1161, 1177 (10th Cir. 2019).

When evaluating a motion to dismiss, this Court may consider documents referred to in the Complaint to the extent that the documents are incorporated by reference and their authenticity and contents are not disputed.  See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.2002); See *GFF v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) "[i]f the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff had relied.  Further, if the documents central to a plaintiff's claim "contradict the allegations of the amended Complaint, the documents control and [the] Court need not accept as true the allegations in the [ ] Complaint..." *Rapoport v. Asia Elec. Holding Co.*, 88 F.Supp.2d 179, 184 (S.D.N.Y.2000).

III.     **PLAINTIFFS ARE COLLATERALLY ESTOPPED FROM LITIGATING FACTS RAISED IN RODRIGUEZ' AND RODRIGUEZ-ORTEGA'S SPB HEARINGS**.

Collateral estoppel prevents Plaintiffs from re-litigating facts in Court that were addressed at Rodriguez' and Rodriguez-Ortega's SPB hearings.  Collateral estoppel "arises where the causes

of action are different but some ultimate facts or issues may necessarily have been decided in the previous case. Stated another way, where the causes of action in the cases are identical in all respects, the first judgment is a conclusive bar upon the parties and their privies as to every issue which either was or properly could have been litigated in the previous case." *City of Santa Fe v. Velarde*, 1977-NMSC-040, ¶ 5.  Collateral estoppel "prevents a party from relitigating ultimate facts or issues actually and necessarily decided in a prior suit." *Bank of New York v. Romero*, 2016-NMCA-091, ¶ 23 (internal quotation marks and citation omitted).  A key inquiry "is whether the issue presented in the two proceedings is substantially the same." *Id*.  The primary purposes behind the application of collateral estoppel are to prevent endless re-litigation of the same issues under the guise of different causes of action and to promote judicial economy. *Reeves v. Wimberly*, 1988-NMCA-038, ¶¶ 6-8; *Adams v. United Steelworkers of Am.*, 1982-NMSC-014, ¶ 16.

Parties are collaterally estopped from re-litigating facts raised in an administrative hearing, "collateral estoppel applies to issues resolved in an administrative agency adjudicative decision to a later civil trial when rendered under conditions in which the parties have the opportunity to fully and fairly litigate the issue at the administrative hearing." *Mascarenas v. City of Albuquerque*, 2012-NMCA-031, ¶ 31; See *Shovelin v. Cent. New Mexico Elec. Co-op., Inc.*, 1993-NMSC-015, ¶ 11.  A party relying on collateral estoppel must prove:  "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action [page numbers omitted] in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Ideal v. Burlington Res. Oil & Gas Co. LP*, 2010-NMSC-022, ¶ 9 (quoting *Shovelin*, at ¶ 8).  When the party moving for collateral estoppel, "has produced sufficient evidence to meet all four elements, the district court must determine whether the party to be estopped had a full and

fair opportunity to litigate the issue in the prior litigation." *Mascarenas v. City of Albuquerque*, 2012-NMCA-031, ¶ 31.

In *Mascarenas v. City of Albuquerque*, the New Mexico Court of Appeals held that a former city employee was collaterally estopped from re-litigating FMLA issues that were adjudicated in a SPB hearing, "the district court did not err in applying collateral estoppel in dismissing Plaintiff's civil Complaint based on the factual determinations made by the personnel board." 2012-NMCA-031, ¶¶ 34-36.  The Court found that the parties to the litigation and SPB hearing were the "identical parties…the cause of action in the personnel board hearing was different from the due process and FMLA cause of action in this case…the findings of the personnel board indicate the issues…were actually litigated in the personnel board hearing…," and "the issues were necessarily decided in the personnel board hearing." *Id*.

The *Mascarenas* Court then evaluated "whether the parties had a full and fair opportunity to litigate," by examining "whether the non-movant had ... incentive to vigorously litigate the prior action," and "whether procedural differences between the two actions, such as representation by counsel, presentation of evidence, questioning of witnesses, and appellate review, would make preclusion unfair, and whether policy considerations exist to deny any preclusive effect." *Id*. (quoting *Rex, Inc. v. Manufactured Hous. Comm. of State of N.M., Manufactured Hous. Div.*, 1995-NMSC-023, ¶ 12).  In holding that the parties had a full and fair opportunity to litigate, the Court noted that at the three-day hearing: 1) the parties were represented by counsel, submitted exhibits, presented witness testimony, and submitted written briefs at the close of the hearing; 2) the hearing officer was a licensed attorney, who was entitled to subpoena witnesses and compel production of relevant documents for the hearing, and issued factual findings and conclusions of law; and, 3) the decision was approved or rejected by a vote of the entire SPB.  *Id*.

13

In this case, Plaintiffs should be collaterally estopped from re-litigating facts raised in the SPB hearings because Defendants can demonstrate that the elements for collateral estoppel have been met, and because both Rodriguez and Rodriguez-Ortega had a full and fair opportunity to litigate these issues at the SPB hearings.[3]  The parties and counsel for both SPB hearings and this case are the same.  The SPB hearings concerned whether there was just cause to terminate Rodriguez and Rodriguez-Ortega, which is different from Plaintiffs' causes of action in the Complaint.  ALJ Haught's and ALJ Baca's Recommended Decisions show the issues that were actually litigated and decided in the SPB hearings.  (Ex. E & L.)  The elements for collateral estoppel have been met.

A full and fair opportunity to litigate has also been shown.  The parties at the SPB hearings were represented by undersigned counsel. (Ex. E & L.)  In the Rodriguez SPB hearing the parties stipulated to four joint exhibits, with NMDOH entering eight additional exhibits into the record, and Rodriguez entering three.  (Ex. L at 2-3.)  NMDOH called seven witnesses to testify at the hearing, and Rodriguez called six witnesses.[4]  (Ex. L at Appendix A, 14.)  The parties submitted proposed findings of fact and conclusions of law, ALJ Haught issued her Recommended Decision, and Rodriguez submitted his written exceptions and objections to the Recommended Decision for the SPB's consideration before the SPB issued its Final Decision, affirming Rodriguez' dismissal.  (Ex. M, L, N, O.)  In the Rodriguez-Ortega hearing, the parties stipulated to five joint exhibits; NMDOH submitted ten additional exhibits with the Court only admitting eight into the record, and Rodriguez-Ortega submitted seven exhibits with the Court admitting five into the record.  (Ex. E

---

[3] Defendants' request that Plaintiffs be collateral estopped from re-litigating facts raised in the SPB hearings does not apply to Plaintiffs' NMHRA claims.  See *Contreras v. Miller Bonded, Inc.*, 2014-NMCA-011, ¶ 13.

[4] Four witnesses who NMDOH called to testify were also called by Rodriguez.  All testifying witnesses were under oath and subject to cross-examination.

at Appendix B.)  NMDOH had three witnesses testify at the hearing, and Rodriguez-Ortega testified on his own behalf, with all witnesses testifying under oath and subject to cross-examination. (Ex. E at Appendix A, 33-38.)  The parties submitted proposed findings of fact and conclusions of law, ALJ Baca issued his Recommended Decision, and Rodriguez-Ortega submitted his written exceptions and objections to the Recommended Decision for the SPB's consideration before the SPB issued its Final Decision, affirming Rodriguez-Ortega's dismissal. (Ex. E, F, G, H.)  ALJ Haught and ALJ Baca are licensed attorneys who had the power to subpoena witnesses and compel production of relevant documents, and who issued Recommended Decisions that included findings of fact and conclusions of law.  (Ex. E & L.)  Plaintiffs had an incentive to fully litigate the SPB hearings because of their interest in returning to work at NMDOH. Preclusion is not unfair because Plaintiffs had a full and fair opportunity to litigate these matters at the SPB hearings.

Plaintiffs raised multiple issues in the Complaint that were addressed at the SPB hearings. In Rodriguez' SPB hearing, he aggressively argued misconduct by NMDOH, Lucero, and Rich concerning the sexual harassment investigation (the "Investigation"), including that the Investigation was a pretext for retaliation against Rodriguez reporting what occurred at the Interview.  (Ex. L.)  In finding there was no basis for Rodriguez' argument that his dismissal was pretextual because he had made a complaint of discrimination as a result of a chronic medical condition, ALJ Haught noted the absence of any evidence to support pretext beyond that "Mr. Lucero testified that he was aware that Mr. Rodriguez made a complaint of discrimination to David Rich. (Lucero.) Mr. Rich gave Lucero permission to investigate Mr. Rodriguez." (Ex. L at 29-30.) ALJ Haught stated "The evidence is overwhelming that Mr. Rodriguez engaged in misconduct," and that, "No evidence was submitted to support that Mr. Rodriguez' discrimination complaint

precipitated the investigation into his alleged misconduct." (Ex. L at 29-30.) Rodriguez also argued at the SPB hearing that the retaliation was evident from Dr. Novak and Mr. Ulibarri not being disciplined when they had also violated NMDOH policy. (Ex. L at 28-29.) ALJ Haught held that, "The failure of the NMDOH to discipline Mr. Ulibarri, Dr. Novack [name omitted] did not justify or mitigate Mr. Rodriguez' misconduct." Plaintiffs make these same arguments again in the Complaint at ¶¶ 17-22, 163-169, that Defendants illegally retaliated against Rodriguez for reporting what occurred at the Interview and that the Investigation as well as his termination were a pretext for retaliation. This allegation is the basis for Plaintiffs' Whistleblower Protection Act claim. Because this issue was argued at the SPB hearing, Plaintiffs do not have a basis to proceed with that cause of action.

Rodriguez-Ortega should be collaterally estopped from arguing facts litigated at the SPB hearing concerning his FMLA Interference and Retaliation claims. In the Complaint at ¶¶ 27-29, 48-49, 108, 114-116, Plaintiffs allege: 1) at the Meeting, Rodriguez-Ortega was given a choice between a five day suspension for being AWOL or taking early disability retirement; and, 2) after the Stay-At-Home Order, Rodriguez-Ortega was assigned no work because Rich had taken his job duties and reassigned them to his coworkers. These allegations in the Complaint were argued at the SPB hearing. (Ex. E) ALJ Baca found that at the Meeting, they met "to discuss his [Rodriguez-Ortega's] job performance, his medical needs, and various benefits available to him including FMLA, as well as medical retirement…Neither Mr. Rich nor Ms. Padilla instructed Mr. Rodriguez-Ortega that he had to medically retire from his job." (Ex. E at 7-8.). ALJ Baca further held that Rodriguez-Ortega was assigned work after the Stay-At-Home Order, "Sometime either in late March or early April of 2020 Mr. Rodriguez-Ortega was tasked with drafting a disciplinary action…," and that Rodriguez-Ortega's duties were not stripped from him and assigned to co-

workers, but rather "In March 2020 Mr. Rich assigned other HRB [Human Resources Bureau] employees to serve as backups to Mr. Rodriguez-Ortega to cover his duties during times he would be out." (Ex. E at 10.).

Defendants have proven that Plaintiffs should be collaterally estopped from asserting allegations in the Complaint that were previously litigated at Rodriguez' and Rodriguez-Ortega's SPB hearings. Defendants request this Court collaterally estop Plaintiffs from re-litigating these allegations raised in the Complaint.

IV. **PLAINTIFFS HAVE NOT EXHAUSTED THEIR ADMINISTRATIVE REMEDIES ON THE NMHRA CLAIMS**.

Plaintiffs' NMHRA claims should be dismissed because they have failed to exhaust their administrative remedies. In bringing an NMHRA claim, "a plaintiff must exhaust his or her administrative remedies against a party before bringing an action in district court against that party." *Sonntag v. Shaw*, 2001-NMSC-015, ¶ 13. If administrative remedies are not exhausted the Court may dismiss the claim for lack of subject-matter jurisdiction over the claim. *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1109-10 (D.N.M. 2011). Administrative remedies must be exhausted as to all defendants named in a complaint, "each discrete act of discrimination must be administratively exhausted. 'Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice.'" *Gerald*, 785 F. Supp. 2d at 1089-1093 (D.N.M. 2011) (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). Both Plaintiffs have failed to exhaust their administrative remedies for multiple allegations of discrimination and retaliation in the Complaint.

In the Factual and Procedural Background section, subsections a-h (above) are the allegations of discrimination and retaliation Plaintiffs raised in the Complaint against Rich, Lucero, and NMDOH that *were not* included in Rodriguez' HRB Charge.  (See pages 9-10 above; Ex. K.)  Plaintiffs' allegations that Rich discriminated and retaliated against Rodriguez in the January 15, 2020 email he sent to others, including Lucero, was not raised in the HRB Charge. Plaintiffs' allegations that Lucero discriminated against Rodriguez in a "biased investigation" into allegations of sexual harassment and added extra allegations to Rodriguez' NCA and NFA to make him "appear as guilty as possible" were also not alleged in the HRB Charge.  Though their names are listed in the HRB Charge, Rodriguez did not allege Rich or Lucero discriminated and retaliated against him by not removing prior disciplinary statements against Rodriguez.  Rodriguez did not claim any discrete acts of discrimination or retaliation by either Rich or Lucero in the HRB Charge. Rodriguez also did not allege in the HRB Charge that all Defendants discriminated against him in disciplining him and not others recommended for discipline in the NCA and NFA, nor that all Defendants discriminated and retaliated against him by terminating him instead of suspending him for a first violation while disparately applying discipline.  Each of these alleged discrete acts of discrimination and retaliation were not administratively exhausted.

The Complaint alleges discriminatory and retaliatory acts against Rodriguez-Ortega that were also not raised in his HRB Charge.  (Ex. D.)  In the Factual and Procedural Background section, subsections a-h, are the allegations of discrimination and retaliation Plaintiffs raised in the Complaint against Rich and NMDOH that *were not* included in Rodriguez-Ortega's HRB Charge. (See pages 5-6 above; Ex. D.)  Rodriguez-Ortega did not identify a specific serious medical condition in the HRB Charge, only stating he had a "health condition."  Plaintiffs alleged in the Complaint, but did not raise in the HRB Charge, multiple allegations by Rich at the Meeting,

including: 1) Rich allegedly threatening to suspend Rodriguez-Ortega for being AWOL for 5 days; 2) Rich allegedly stating "that without exception, he must comply with DOH's Absence and Leave policy;" 3) Rich allegedly marking Rodriguez-Ortega AWOL for several days of his February hospitalization; 4) Rich allegedly stating that if he did not notify Rich that he would be absent within 30 minutes of the start of his shift going forward, he would be marked AWOL and subject to discipline; 5) Rich allegedly pressuring him to take early disability retirement; 6) Rich allegedly telling Rodriguez-Ortega he would have to seek early retirement in lieu of being suspended for 5 days for being AWOL; and, 7) Rich reassigning Rodriguez-Ortega's job duties after the February 2020 hospitalization.  None of these seven allegations against Rich that allegedly occurred at the Meeting were included in the HRB Charge.

Plaintiffs alleged in the Complaint that Rich discriminated against Rodriguez-Ortega by placing him under increased scrutiny due to his not receiving medical retirement quickly enough and alleged that there were three separate communications between Rich and Rodriguez-Ortega in April and May regarding Rodriguez-Ortega being AWOL.  These allegations were not included in the HRB Charge.  Plaintiffs alleged that Rich did not provide larger monitors when Rodriguez-Ortega was home to telework and disciplined him for not seeing his password on his laptop.  Again, these allegations were not in the HRB Charge.  Finally, the HRB Charge did not allege that Rich discriminated and retaliated against Rodriguez-Ortega for terminating him while he was hospitalized and recovering from hospitalization in February and May 2020.

Plaintiffs may argue they are not required to include all allegations in their HRB Charges; however, the NMHRA statute and case law supports that they are required to include all allegations in the HRB Charge before they may file a Complaint.  The statute governing the HRB grievance procedure for NMHRA claims states that a person claiming they have been aggrieved may submit

a written complaint to the HRB which "shall state the name and address of the person alleged to have engaged in the discriminatory practice, all information relating to the discriminatory practice and any other information that may be required by the commission." NMSA 1978, Sec. 28-1-10(A). In *Hartwell v. Sw. Cheese Co., LLC*, the United States District Court of New Mexico found that plaintiff had failed to exhaust her harassment claims under the NMHRA, stating, "Under the NMHRA, Title VII, and the ADEA, a claimant must exhaust administrative remedies before filing suit…A plaintiff must file a charge of discrimination with respect to each discrete instance of discrimination or retaliation." 276 F. Supp. 3d 1188, 1202-03 (D.N.M. 2016). The New Mexico Court of Appeals in *Charles v. Regents of N.M. State Univ.*, evaluated a plaintiff's NMHRA retaliation claim stating, "We must therefore consider whether Plaintiff's retaliation claim is based on a discrete act or on a cumulative series of acts. [cite omitted] The NMHRA makes it unlawful for any person or employer to retaliate against any person who has opposed any unlawful discriminatory practice," and holding that "Plaintiff's claim of retaliation is, therefore, based on a cumulative series of acts, not a 'discrete discriminatory act.'" No. 28,825, 2010 WL 4703506, at *1 (N.M. Ct. App. Nov. 4, 2010).

The NMHRA states all information is to be provided in the HRB Charge and case law supports all discrete acts being included in the HRB Charge. Each of these discrete acts of discrimination and retaliation were not included in the HRB Charges. Plaintiffs have not adequately exhausted administrative remedies before filing this Complaint, and therefore their NMHRA claims should be dismissed for lack of subject-matter jurisdiction.

V.  **PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED FOR RODRIGUEZ-ORTEGA'S FMLA INTERFERENCE CLAIM**.

Plaintiffs must show for the FMLA interference claim: "(1) he [Rodriguez-Ortega] was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights.'"[5] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 978 (10th Cir. 2017) (quoting *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012)).  If Plaintiffs can show that Rodriguez-Ortega was entitled to FMLA leave, they will then need to show that Rich prevented Rodriguez-Ortega "from taking the full twelve weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Valdez v. McGill*, 462 F. App'x 814, 820 (10th Cir. 2012).

Plaintiffs allege Rich "unlawfully interfered with Mr. Rodriguez-Ortega's FMLA rights by failing to provide notice within 5 business days when they first learned he was taking leave related to his medical condition in or after July 2019." (Compl. ¶ 102.)  Plaintiffs did not provide the date for computation of the notice period.  That this allegedly occurred "in or after July 2019" is insufficient to identify a date when Rich first learned Rodriguez-Ortega was taking leave to determine if notice was timely given.  Further, Plaintiffs alleged that during the Meeting "It was also suggested that Mr. Rodriguez-Ortega apply for FMLA," arguably by Rich or Ms. Padilla, which may have occurred within the notice period.  (Compl. ¶ 31.)

Even if Plaintiffs were permitted to subsequently amend their Complaint and provide a date to determine if notice was timely given, Rodriguez-Ortega was not prejudiced by the alleged

---

[5] The *McDonnell Douglas* burden-shifting framework is not applied to a claim for FMLA interference.  *Brown*, 700 F.3d at 1227; See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), holding modified by *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993).

failure to provide notice because he had previously taken FMLA, and was terminated for reasons unrelated to FMLA leave.  In *Branham v. Delta Airlines*, a plaintiff alleged that her employer failed to meet its obligations to notify her that she could apply for FMLA leave.  678 F. App'x 702, 705–06 (10th Cir. 2017).   The   Tenth Circuit Court of Appeals, in evaluating whether the employers' obligations to notify plaintiff were triggered when plaintiff called in to inform her employer she would be out due to taking care of her sick mother, held "even assuming these vague assertions put Delta [employer] on notice that she [employee] might be entitled to FMLA leave, we would not conclude that Delta failed to meet its notification obligations because Ms. Branham already requested and received FMLA leave multiple times during her tenure at Delta." 678 F. App'x 702, 705–06 (10th Cir. 2017).  In addition, "…because Delta terminated Ms. Branham for reasons unrelated to FMLA leave, she has not shown that she was prejudiced by the defendants' alleged failure to better inform her about her FMLA rights." *Id*.

Rodriguez-Ortega had previously been approved for FMLA while working for NMDOH in HR, from July 2018 to July 2019, and demonstrated his knowledge of how to apply for FMLA when he received two additional approvals for FMLA leave from July 2019 to July 2020, and from March 2020 to July 2020.  NMDOH could not have failed to meet its notification obligations because Rodriguez-Ortega had previously requested and received FMLA leave while at NMDOH. Further, NMDOH provided Rodriguez-Ortega with reasons for termination in the NCA and NFA that are unrelated to FMLA leave.  (Ex. B & C.)

Even if what Plaintiffs alleged were true, FMLA interference is, "not a strict liability statute…Thus, 'an employee may be dismissed, preventing her from exercising her statutory right to FMLA leave [or reinstatement after leave] ... if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.'"  (Compl. ¶¶ 104-108.)  *Metzler*, 464 F.3d

at 1180 (quoting *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960-61 (10th Cir. 2002)); See *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998) ("An employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request.").

In the *Branham* Court case the Court examined whether an employee who would have been terminated for violating the absences policy, regardless of any FMLA claim, had an actionable claim, and held, "[A]n employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, *even if the absences that the employee failed to report were protected by the FMLA*." *Branham*, 678 F. App'x at 705 (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008-09 (10th Cir. 2011)). The Court stated, "…the employee's violation of a notice-of-absence policy can constitute a reason for dismissal that is unrelated to a request for an FMLA leave." *Id.* (quoting *Twigg*, 659 F.3d at 1009 (brackets and internal quotation marks omitted); See *Smith*, 298 F.3d at 961 ("[A]n employee may be dismissed, preventing her from exercising her statutory right to FMLA leave ... if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave.").

NMDOH stated in the NCA and NFA that Rodriguez-Ortega was being terminated from his position in HR "for inappropriate unprofessional behavior, negligence in the performance of his duties, insubordination, failure to be ready to work, and for being AWOL four (4) or more times within a 12-month period," and proceeded to state the facts that led to NMDOH's decision. (Ex. B & C.) NMDOH's policy Absences and Other Leave (HR. 08.13) states "the sanction for four (4) or more AWOL's in a 12-period is dismissal," and that NMDOH does not have to impose progressive discipline prior to termination. (Ex. B & C.) The NCA and NFA state Rodriguez-

Ortega was AWOL for nine days in May 2020.[6]   NMDOH's policy requires dismissal and is unrelated to Plaintiffs' allegation of interference with FMLA leave.   As ALJ Baca stated, "Department policy leaves no room for negotiation: termination of employment is the prescribed consequence when an employee is absent without leave for four or more times during a 12-month period, or if an employee is absent without leave four or more consecutive days. (cite omitted) Mr. Rodriguez-Ortega's absence from work with no explanation of his whereabouts was his undoing, and it is the catalyst for his termination."  (Ex. E at 13.)

VI.   **PLAINTIFFS HAVE NOT PROPERLY FILED THE NOTICES OF APPEAL WITH THE DISTRICT COURT TO PURSUE CERTIORARI REVIEW UNDER RULE 1-074**.

In Count VII and Count VIII, Plaintiffs petitioned for a Writs of Certiorari to appeal the SPB's Final Decision in Rodriguez and Rodriguez-Ortega's SPB matters.  Plaintiffs cited to NMSA 1978, § 39-3-1.1, Rule 1-074 NMRA, and NMSA 1978, § 10-9-18; however, they neglected to follow the rule and statutes cited when they filed the Writs of Certiorari instead of the Notices of Appeal, and by identifying the Writs of Certiorari as causes of action in the Complaint. § 10-9-18 states, "A party aggrieved by the decision of the board made pursuant to this section may appeal the decision to the district court pursuant to the provisions of Section 39-3-1.1 NMSA 1978."  §39-3-1.1(C) states that "a person aggrieved by a final decision *may appeal the decision to district court by filing in district court a notice of appeal* within thirty days of the date of filing of the final decision." (emphasis added.)  Rule 1-074 states that an aggrieved party may appeal the SPB's final decision by, "filing with the district court a notice of appeal."  These statutes and rules state a Notice of Appeal, not a Writ of Certiorari is to be filed with the District Court to appeal a

---

[6] The AWOL's listed in the NCA and NFA do not include the dates Plaintiffs alleged Rich marked Rodriguez-Ortega AWOL "on February 21, part of February 27, and all of Feb[ruary] 28."  (Compl. ¶ 35; Ex. B & C.)

SPB final decision.  A Writ of Certiorari is filed when a party is *appealing a District Court's decision* to the Court of Appeals and is not granted as a matter of right as a Notice of Appeal of an SPB decision is, but rather the appeal is within the discretion of the Court of Appeals. § 39-3-1.1(C).

Plaintiffs also failed to comply with the requirements of Rule 1-074(F) when filing a Notice of Appeal, "(1) serve each party or such party's attorney in the administrative proceedings with a copy of the notice of appeal in accordance with Rule 1-005 NMRA; and (2) file a certificate in the district court that satisfactory arrangements have been made with the agency for preparation of and payment, if required, for the record of the proceedings."  Defendants were not served the Notices of Appeal, and to Defendants' knowledge, certificates were not filed with the district court that satisfactory arrangements have been made with the agency regarding payment.  Plaintiffs have failed to comply with the rules and statutes governing appeals of SPB decisions, and therefore Counts VII and VIII should be dismissed.

VII.   **<u>CONCLUSION</u>**.

Plaintiffs should be collaterally estopped from re-litigating facts in their Complaint that have already been argued in Rodriguez' and Rodriguez-Ortega's SPB hearings.  Plaintiffs have failed to exhaust their administrative remedies on their NMHRA claims requiring dismissal of those claims.  Plaintiffs have failed to state a prima facie case for the FMLA interference claim. Plaintiffs have also failed to properly file the notices appeal.

For these reasons, Defendants move this Court to grant their Motion to Dismiss.

Respectfully submitted,

MILLER STRATVERT P.A.

By: */s/ Laura R. Ackermann*
    Laura R. Ackermann
    Paula Maynes
    Attorneys for Defendants
    P.O. Box 25687
    Albuquerque, New Mexico 87125
    Telephone: (505) 842-1950
    Facsimile: (505) 243-4408

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed this 26th day of January, 2022 to:

Heather Burke
Attorney at Law
*Attorney for Plaintiffs*
1000 Cordova Place #24
Santa Fe, New Mexico 87505
Phone: (505) 428-9424
Email: heather@hburkelaw.com

By: */s/ Laura R. Ackermann*
    Laura R. Ackermann