IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY RODRIGUEZ-ORTEGA AND

JOSHUA RODRIGUEZ,

        Plaintiffs,

v.                                                        No. 21-cv-01129-JCH-KK

DAVID RICH, KENNETH LUCERO,

in their official and individual capacities, AND

NEW MEXICO DEPARTMENT OF HEALTH

        Defendants,

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COMES NOW Plaintiffs Jeremy Rodriguez-Ortega and Joshua Rodriguez, by that through their counsel of record, Heather Burke, with their Response in Opposition to Defendants' Motion to Dismiss.  For the reasons argued herein, Plaintiffs respectfully request that this Court deny Defendants Motion to Dismiss in its entirety.

## Background

This case involves twin brothers, both long time State of New Mexico employees, one with 21 years of service and the other with 12 years of service. Both were employed by the Department of Health at the time of their termination, and both suffer from the same disabling congenital kidney disease. Both were suddenly terminated by the same decisionmaker within approximately one month of one another after events directly related to their disabilities

1

including taking FMLA and reporting discrimination.  In or around January 2020, Joshua

Rodriguez reported disability discrimination to Defendant Rich.  In February 2020, Jeremy

Rodriguez-Ortega was suddenly hospitalized and incapacitated, and took unforeseen FMLA

qualifying leave. Thereafter, both Plaintiffs were subjected to discrimination, retaliation and

hostile work environments which culminated with their terminations from employment.

<u>**Argument**</u>

In deciding a Motion to Dismiss the Court should accept all factual allegations as true for

purposes of the Motion, and grants all reasonable inferences in the non-moving party's favor.

See *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Sanders v.*

*Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012).  "The court's function

on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at

trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for

relief may be granted." *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th

Cir. 1999)(internal quotation marks omitted). "When a party presents matters outside of the

pleadings for consideration, as a general rule 'the court must either exclude the material or treat

the motion as one for summary judgment.'" *Brokers' Choice of America, Inc. v. NBC Universal,*

*Inc*., 861 F.3d 1081, 1103 (10th Cir. 2017)(quoting *Alexander v. Oklahoma*, 382 F.3d 1206, 1214

(10th Cir. 2004)).

**A.  Plaintiffs are not collaterally estopped from litigating facts raised in Plaintiffs' SPB Hearings.**

The doctrine of collateral estoppel, also known as issue preclusion, prevents relitigation of an issue decided in a prior action. See *Spradling v. City of Tulsa*, 198 F.3d 1219, 1222 (10th Cir. 2000) "Under collateral estoppel, an actual and necessary determination of an issue by a court of competent jurisdiction is conclusive in subsequent cases based on a different cause of action but involving a party to the prior litigation." *Lujan v. United States Dep't of Interior*, 673 F.2d 1165, 1168 n.4. (10th Cir. 1982). (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5, 99 S. Ct. 645, 649, 58 L. Ed. 2d 552 (1979))

The New Mexico Human Rights Act specifically provides for a "trial de novo in the district court" and thus the Legislature intended the jurisdiction of the district court to be exclusive. See *Contreras v. Miller Bonded, Inc*., 2014-NMCA-011, ¶ 13, 316 P.3d 202, 206 ("[W]e conclude that findings made in administrative proceedings are not entitled to collateral estoppel in NMHRA actions.")  "Trial de novo" means "[a] new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance." Black's Law Dictionary 1645 (9th ed. 2009). Moreover, the district court must independently make a determination of all facts, without consideration of any previous administrative decisions. "The Supreme Court concluded that the NMHRA 'requires an independent review of the facts' by the district court, which shall "decide all questions of fact independently of any previous determination made by the Commission." *Keller v. City of Albuquerque,* 1973-NMSC-048, 85 N.M. 134, 509 P.2d 1329.

In non NMHRA claims, the burden to demonstrate estoppel is steep.  See *State ex rel. Martinez v. Kerr-McGee Corp*., 120 N.M. 118, 122, 898 P.2d 1256, 1260 (Ct. App. 1995)("The

party seeking to preclude litigation of an issue has the burden of showing with clarity and certainty that the issue was actually and necessarily determined; if the basis of the prior decision is unclear, subsequent litigation may proceed.")  Only "If the movant introduces sufficient evidence to meet all elements of this test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation." *Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293, 297, 850 P.2d 996, 1000.  However, the FMLA statutorily provides an employee the right to bring an action to recover damages or relief "in any Federal or State court of competent jurisdiction."  29 U.S.C. § 2617(a)(2).   The State Personnel Board does not have jurisdiction over statutory issues, and is limited to matters within the limited jurisdiction given by the State Personnel Act.  See *Chavez v. City of Albuquerque,* 1998-NMCA-004, ¶ 12, 124 N.M. 479, 482, 952 P.2d 474, 477. ([T]he city's grievance process was limited to matters within the purview of the merit system ordinance and the city's personnel rules and regulations, the personnel board did not have jurisdiction over the plaintiff's constitutional or statutory claims.)

Here, there is no question that the SPB has no jurisdiction over Plaintiffs' NMHRA claims and that these are not entitled to collateral estoppel.   Not only were these claims not yet exhausted with the Human Rights Bureau, but even if they had been, the Legislature's intent unmistakably gave exclusive jurisdiction to the Courts.

Defendants then misstate *Mascareñas v. City of Albuquerque*, 2012-NMCA-031, ¶ 27, 274 P.3d 781, 788, which involved a City Merit System Board adjudication, not a SPB adjudication.  Additionally, the key difference between the instant case, and *Mascareñas* is that in this case, the SPB made no determination at all about Mr. Rodriguez-Ortega's FMLA rights.

There was no explicit determination made as to whether Mr. Rodriguez-Ortega's FMLA rights were interfered with, nor was there any consideration whether he was retaliated against for taking FMLA leave. (Exhibit 1) Therefore, this cannot constitute estoppel because there was no ruling on this issue, and it was not "necessarily determined" as the required fourth factor. Therefore, Defendants have not established the fourth factor necessary in order to proceed to whether there was a "full and fair chance to litigate," and the analysis stops here.

Even if there had been a determination, the State Personnel Board has no jurisdiction over the FMLA, as the FMLA 29 U.S.C.S. § 2617(a)(2) provides a right of action only in "Any Federal or State court of competent jurisdiction." The State Personnel Board is not a Federal or State Court of competent jurisdiction. If Congress had wished to allow administrative agencies to adjudicate the FMLA, it would have required the Department of Labor to do so. It has no authority to enforce the FMLA and does not have statutory authority to award liquidated damages, costs and fees under this law even were it to find a violation. It can only award back pay and reinstatement[1], if an employee is successful, and at its discretion.

It would be nonsensical for a court to hold that a litigant was estopped from pursuing a claim based on an administrative hearing which made no statutory finding, had no jurisdiction, and could never have provided relief allowed by law. This is the opposite of a full and fair chance to litigate, as Plaintiff Rodriguez-Ortega could not have fully vindicated his rights in a SPB Hearing. Judge Baca erroneously determined that there was "just cause" for Mr. Rodriguez-Ortega's termination, but did not determine whether there was a violation of FMLA.

---

[1] NMSA § 1978 10-9-18(F) "[T]he board may modify the disciplinary action or order the agency to reinstate the appealing employee….The board may award back pay as of the date of the dismissal, demotion or suspension or as of the later date as the board may specify."

Moreover, the narrow focus of the SPB review would have precluded any "full and fair chance to litigate" even if Defendants had been able to show that a) the SPB had jurisdiction over the FMLA, and b) that it made any actual finding as to its violation.  This narrow focus would have prevented Mr. Rodriguez-Ortega from having a full and fair chance to litigate all surrounding facts to his claims, even had there been any determination on this issue, or any jurisdiction or authority to provide relief.  Defendant Rich's interference with Mr. Rodriguez-Ortega's FMLA in February is directly linked to his interference with Mr. Rodriguez-Ortega's FMLA in May.  But ALJ Baca refused to consider anything outside the events Defendants mentioned in their Notice of Final Action.  Mr. Rodriguez-Ortega did not get an opportunity to present his entire FMLA case, so it cannot be precluded.

Even if collateral estoppel could reasonably apply to Mr. Rodriguez-Ortega's FMLA interference claim, Judge Baca's erroneous and contrary to law decision would still be subject to appeal and this Court would still have jurisdiction to review it.   As discussed more explicitly below, we believe that these issues have enough evidentiary support, in fact, that Mr. Rodriguez-Ortega is able to move for summary judgment on these claims.   But as estoppel does not apply here, as a matter of law, to either of the Plaintiffs' claims, and so this Court must deny Defendants' Motion to Dismiss.

**B.   Plaintiff did not fail to exhaust their administrative remedies.**

Defendants argue that Plaintiffs were required to list each and every incident that may remotely be considered discrimination, a hostile environment and/or retaliation in his NMHRB charge in order for it to be properly exhausted. However, they cite no cases in support of this contention.  Defendants cite no case law which suggests that Plaintiffs must exhaust each and every incident which may be adverse or prove discrimination, retaliation or a hostile work

environment. They merely cite cases which refer to exhausting discrete acts.  In fact, the cases

they cite in their Motion to Dismiss Plaintiffs' Amended Complaint state the opposite of their

general conention.  In *Charles v. Regents of N.M. State Univ.*, the Court expressly stated "We see

no reason to exclude Plaintiff's retaliation claim from the continuing violation doctrine."  2011-

NMCA-057, ¶ 12, 150 N.M. 17, 22, 256 P.3d 29, 34. The *Charles* court based their decision on

the similarity between retaliation and hostile work environments and the holding of the Court in

*Ulibarri v. State Corr. Acad.*, 2006-NMSC-009, ¶ 10, 139 N.M. 193, 197, 131 P.3d 43, 47.

("[I]f one act contributing to a hostile environment claim occurred within the filing period, all

acts creating the hostile environment may be considered.")  In the other case cited by

Defendants, *Hartwell v. Sw. Cheese Co., LLC,*  this Court found that the Plaintiff had not even

alleged the bare minimum of information necessary "to lead an investigator to find racial or

sexual harassment."  276 F. Supp. 3d 1188, 1205 (D.N.M. 2016).

Defendants examples of this alleged failure to exhaust are examples of evidence of

discriminatory intent and attitude, hostile work environment and/or retaliation caused by

discrimination and need not each be individually exhausted.  Mr. Rodriguez-Ortega's specific

disability and/or serious medical condition need not be stated on the charge, and Defendants

cannot pretend that they did not know of Mr. Rodriguez-Ortega's conditions since they are

certified for his FMLA.  They do not cite any authority that failure to specifically name or

describe a disability in the initial charge constitutes a failure to exhaust.

Defendants position statement clearly understood the basis for Mr. Rodriguez-Ortega's

disability and medical condition allegations. (Exhibit 2) In fact, as is clearly shown, Defendants

respond directly in this position statement to most of the facts they claim were not exhausted.

The entire premise of administrative exhustion is based on giving notice, and clearly,

Defendants had proper notice of Mr. Rodriguez-Ortega's claims.   Even if Defendants had cited any case law in support of their contention or if the cases they cited applied, none of the examples they list include discrete adverse actions**.**  ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify." Gerald v. Locksley, 785 F. Supp. 2d 1074, 1109-10 (D.N.M. 2011)). They do not allege that Mr. Rodriguez-Ortega has failed to exhaust a claim of termination, failure to promote, denial of transfer, or refusal to hire. Instead, their examples would all be continuing violations, as defined in *Charles* and *Ulibarri*. Defendants claim that Mr. Rodriguez-Ortega failed to exhaust his remedies is without merit.

Nearly every example Defendants give as "unexhausted" for Mr. Rodriguez are merely evidence of the overall hostile work environment or retaliation. For example, Defendants claim that Mr. Rodriguez failed to exhaust his protected activity about reporting disability discrimination but on the previous page quote his HRB charge where he clearly states that he reported disability discrimination.  There is no requirement that Mr. Rodriguez must state things in a certain way or use certain magic words.  As stated above, the point of the administrative exhaustion process is to put employers on notice of the allegations against them.  In their position statement in response to Mr. Rodriguez's charge, Defendants clearly understood that he was alleging he had engaged in protected activity when he reported discrimination.  (Exhibit 3) As in the previous example, Defendants responded to Mr. Rodriguez's allegations in their position statement, and they clearly understood what the allegations were.   Defendants claim that Mr. Rodriguez failed to exhaust his remedies is without merit.

Defendants claims that Plaintiffs failed to exhaust any of his claims have no merit, and their motion to dismiss on this basis should be denied.

C.  **Plaintiffs did not fail to state a claim on which relief can be granted for Mr.**
   **Rodriguez-Ortega's FMLA Interference Claim.**

A plaintiff on an FMLA interference claim must establish the following: (1) that he was entitled to FMLA leave; (2) that some adverse action by the employer interfered with his right to take FMLA leave; and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights. *Dalpiaz v. Carbon County*, 760 F.3d 1126, 1132 (10th Cir. 2014) *Gambro v. Campbell Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007), citing *Jones v.Denver Pub. Schs.*, 437 F.3d 1315, 1318 (10th Cir. 2005). The employer bears the burden of proof on the issue of whether the employer's actions were related to the exercise or attempted exercise of the employee's FMLA rights where the employee has shown some adverse action interfering with the right to use FMLA leave. *Dalpaz*, 760 F.3d at 1132; *Gambro*, 478 F.3d at 1287; *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006).

Where an employer interferes with the employee's right to FMLA leave, the deprivation constitutes a violation of the FMLA regardless of employer intent. *Brown v. ScriptPro, Inc.*, 700F.3d 1222, 1226-27 (10th Cir. 2012); *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955,960 (10th Cir. 2002). Under an interference theory, the employee must simply demonstrate an entitlement to the disputed leave. Smith, 298 F.3d at 960. The McDonnell-Douglas framework is not applicable to FMLA interference claims. *ScriptPro, Inc.*, 700 F.3d at 1226-27. Consequently, a pretext analysis is not necessary in determining FMLA interference claims. Id. at 1228.

Here, Plaintiffs have not only pled a claim of FMLA interference upon which relief can be granted, but can, in fact, move for summary judgment on this claim due to the nature of the undisputed facts.  While doing so may be unusually early, parties have had sufficient opportunity for discovery on this particular issue.   In addition, an early resolution of Mr. Rodriguez-Ortega's

FMLA claims would be beneficial to judicial economy[2], and would also allow this Court to divest itself of the remaining state law claims and remand this action to state court if it should so choose.

Defendants have tried to argue that Mr. Rodriguez-Ortega's alleged failure to go into more detail about Defendant Rich's notice violation means this claim should be dismissed, this is clearly not at all the case. Mr. Rodriguez-Ortega was hospitalized unexpectedly for an FMLA qualifying condition. There is no dispute that Mr. Rodriguez-Ortega qualified for FMLA. There is no dispute that Mr. Rodriguez-Ortega's certification forms specifically referred to this hospitalization, and that these absences were because of his qualifying conditions. Despite this, Defendant Rich designated only some of Mr. Rodriguez-Ortega's absences as FMLA protected, and designated other days as AWOL, even though all of these absences were indisputably FMLA protected.

Even if Defendant Rich had not already been aware of this FMLA qualifying condition, and had not consistently approved Mr. Rodriguez-Ortega's leave for medical appointments related to it without properly noticing Mr. Rodriguez-Ortega of his continuing right to FMLA, there is no getting around his clear interference detailed above. Mr. Rodriguez-Ortega was denied his right to FMLA protected leave for all of the days he was absent as a result of his FMLA qualifying conditions. As a matter of law, Defendant Rich interfered with Mr. Rodriguez-Ortega's federal rights under the FMLA.

This clear interference with Mr. Rodriguez-Ortega's in February is inseparable from the interference with his FMLA in May, which led to his dismissal. Defendants claim that Mr. Rodriguez-Ortega "would have been terminated regardless due to violation of NMDOH

---

[2] Undersigned counsel has been recently informed that Mr. Rodriguez-Ortega's health has taken a serious turn for the worse, which additionally supports efficiency in reaching a resolution to this litigation.

(attendance) policy."  However, they fail to disclose that this Court has stated "The Defendant cannot avoid FMLA liability on the ground that the plaintiff was dismissed for a reason unrelated to the FMLA when that reason is inconsistent with the FMLA." *Ortega v. San Juan Coal Co*., No. 12-CV-0501 MV/RHS, 2013 U.S. Dist. LEXIS 197693, at *68 (D.N.M. Oct. 3, 2013). There is no legitimate dispute that Defendant Rich strongly, and wrongly, believes that any failure to call in within 30 minutes of their shift, *regardless of the reason*, employees are AWOL. (Exhibit 4) This is directly contrary to the rights provided by the FMLA.   These allegations are more than sufficient plead a plausible claim upon which relief can be granted, and are even more explicitly described in Plaintiffs Motion for Partial Summary Judgement.

### D.   Plaintiffs did not fail to properly file a notice of appeal with the District Court.

Defendants next entire argument is a semantic argument with no support in case law at all.  The State Personnel Decisions upholding Plaintiffs' terminations were issued September 17, 2021 and December 10, 2021, respectively.  Plaintiffs filed the instant action in the State of New Mexico First Judicial District Court on October 12, 2021, and was filed as an appeal.  (See Exhibit 5)  This is within 30 days.  Defendants entire argument appears to be surrounding the use of the terms "Notice of Appeal" vs. "Writ of Certiorari" within the complaint itself, but point to no case law which makes any distinction about whether only one can be used.

In their first Motion to Dismiss the original complaint, Defendants cited *Wakeland v. New Mexico Dep't of Workforce Sols.*, 2012-NMCA-021, ¶ 25, which actually specifically states the opposite of the argument which Defendants are making[3].  "A notice of appeal alone is not an adequate substitution for a petition for writ of certiorari."  The Court in *Mascareñas v. City of*

---

[3] They removed it in this version after Plaintiffs pointed out this conflict in their previous response.

*Albuquerque*, 2012-NMCA-031, ¶ 1, 274 P.3d 781, 783  continues "However, because New Mexico courts have not been stringent about the form and content requirements of documents filed in an effort to seek appellate review, a docketing statement complying with the substantive requirements of N.M. R. Ann. 12-208(D) is an adequate substitute for a petition for writ of certiorari."

In fact, the Court in *Wakeland* goes on to explain why a Notice is not sufficient when a Writ is required. Citing  *Roberson v. Bd. of Educ.*, 1967-NMSC-176, 78 N.M. 297, 430 P.2d 868, the Court explained "*Roberson* simply holds that because a notice of appeal contains no information about the issues raised on appeal, it cannot substitute for a petition for writ of certiorari since it does not substantially comply with the content requirements for a petition." *Wakeland*, at ¶ 14.

In the instant Motion, Defendants cite no case law, and Plaintiffs have found none, which suggest that providing more information via a Writ of Certiorari is unacceptable if only the general less informative Notice of Appeal could be used.  Such a holding would be illogical on its face.   Given the explanation in *Wakeland,* there is no reason that providing more information via a Writ of Certiorari would be problematic if the lesser standard of a "Notice of Appeal" could suffice.  This is particularly true because the Writ of Certiorari and complaint itself contains the information in the "Statement of Appeals" requirements.  Those requirements are:

> (1) a statement of the issues;
> (2) a summary of the proceedings, briefly describing the nature of the
>       case, the course of proceedings, and the disposition in the agency.;
> (3) an argument, which shall contain the contentions of the appellant with
>       respect to each issue presented
> (4) a statement of the precise relief sought.

Rule 1-074(K).  All of these requirements are substantially satisfied by the filing of the instant complaint including the Writs of Certiorari.  As the Statement of Appeal information is included in the instant complaint, Defendants have failed to comply with their responsibility to file their response within 30 days of service of this complaint.  It would appear that it is Defendants who have not complied with their obligations under Rule 1-074 NMRA.

 Defendants were personally served with this complaint, which contained the Writ of Certiorari and proof of service was filed with the Court.  While opposing counsel was not personally directly served in Mr. Rodriguez's case, they clearly timely also received it from their clients. Opposing counsel were served directly with Mr. Rodriguez-Ortega's notice of appeal. Plaintiffs' Counsel emailed Annette Lopez at the State Personnel Office with a copy of the stamped filed appeal on November 5, 2021 at 5:27pm, and requested that the record be prepared and sent to the Court. (Exhibit 6) Emailing Ms. Lopez is the procedure for filing anything with the State Personnel Office's adjudication division. Ms. Lopez did not respond to this email, although she read it at 5:29pm the same day.  (Exhibit 7) Plaintiffs' counsel emailed Ms. Lopez with Mr. Rodriguez-Ortega's Notice of Appeal at 11:08 AM on January 10, 2022. (Exhibit 8) Ms. Lopez read this email at 11:14 AM on January 10, 2022.  (Exhibit 9) Counsel has never received further communication for the State Personnel Office.

As there is no explicit process described for this in the State Personnel Rules, it is unknown where that request stands, or what happens if the State Personnel Board fails to prepare a record, or whether there is a cost for it to do so.  It seems reasonable to expect that the agency would communicate if they required any more information, or payment, from counsel. After all, this is certainly not the first appeal of a State Personnel Board Decision that they have received.

According to Rule 1-074 NMRA, preparing the record is the responsibility of "the agency" not Plaintiffs. It is the "agency" which must "within thirty (30) days after the filing of the notice of appeal with the agency pursuant to Paragraph C of this rule, the agency shall number consecutively and bind the pages of the record on appeal taken in the proceedings and file it in accordance with Rule 1-005 NMRA." Rule 1-074(H) NMRA.  The State Personnel Board received notice of Mr. Rodriguez's appeal on November 5, 2021, and Mr. Rodriguez-Ortega's appeal on January 10, 2022. Thirty days expired on December 5, 2021 for the former appeal, and expire on February 9, 2022 for the latter.

Defendants cite no authority that any of their allegations are fatal in any way to Plaintiff Rodriguez's appeal, even if any of them were true. Defendants were served with Mr. Rodriguez's appeal in person.  They have been served Mr. Rodriguez-Ortega's appeal via the Amended Complaint through their counsel.  They have alleged no prejudice from any of these purported technical violations, even if any happened.  It appears that the only actual omission was to attach the decision to the filed appeal, and Plaintiffs have remedied that with their First Amended Complaint.

<u>**Conclusion**</u>

For the reasons argued herein, Defendants Motion to Dismiss is wholly without merit. Plaintiffs are not collaterally estopped from any of their claims, they have not failed to administratively exhaust their claims, and a Writ of Certiorari contains more information than a Notice of Appeal, Plaintiffs respectfully request that this Motion be Denied in its entirety, and for any other relief this Court deems proper.

Respectfully Submitted.

Heather Burke
Attorney at Law
1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing to be served on the following parties or counsel of record this 7th day of February, 2022, via e-mail:

Laura R. Ackermann
Attorney for Defendants
P.O. Box 25687
Albuquerque, New Mexico 87125
Telephone: (505) 842-1950
Facsimile: (505) 243-4408
Email: lackermann@mstlaw.com