## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JEREMY RODRIGUEZ-ORTEGA and**
**JOSHUA RODRIGUEZ,**

   **Plaintiffs,**

**v.**            **Civ. No.  21-cv-01129 JCH/KK**

**DAVID RICH, KENNETH LUCERO,**
**in their official and individual capacities, and**
**NEW MEXICO DEPARTMENT OF HEALTH,**

   **Defendants.**

### MEMORANDUM OPINION AND ORDER

   This matter is before the Court on the *Motion to Dismiss Complaint for Violations of the Family and Medical Leave Act, the New Mexico Human Rights Act, Breach of Implied Contract, Breach of Good Faith and Fair Dealing, Whistleblower Protection Act and Petitions for Writ of Certiorari and Supporting Memorandum* (ECF No. 23), filed by Defendants David Rich, Kenneth Lucero, and the New Mexico Department of Health ("NMDOH") (collectively, "Defendants"). Having considered the motion, briefs, evidence, and applicable law, the Court concludes that Defendants' motion to dismiss should be denied as to the dismissal of Counts I, III, VII, and VIII. The Court, however, will grant Defendants' request to dismiss certain bases of liability for the NMHRA claim that were not administratively exhausted and will dismiss the lack-of-notice theory of liability for the FMLA interference claim for failure to state a claim.

### I.  STANDARD

   On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient to state a claim for relief. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). When reviewing a plaintiff's complaint in ruling on a Rule 12(b)(6) motion, a court must view well-pleaded facts as true, and in the light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

If matters outside the pleadings are presented to and not excluded by a court, the motion must be treated as one for summary judgment. Fed. R. Civ. P. 12(d). Under Rule 12(d), a court has broad discretion whether to accept material beyond the pleadings or to refuse to accept extra-pleading materials and resolve the motion solely on the pleading itself. *See Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). No conversion is required, however, when a court considers information that is subject to proper judicial notice, exhibits attached to the complaint, or documents incorporated into the complaint by reference and central to the plaintiff's claim, unless their authenticity is questioned. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith*, 561 F.3d at 1098; *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

## II.  FACTUAL BACKGROUND

Plaintiffs Jeremy Rodriguez-Ortega ("Rodriguez-Ortega") and Joshua Rodriguez ("Rodriguez") are twin brothers who were both employed by NMDOH and who both suffer from a congenital kidney disease. (Am. Compl. ¶¶ 1-2, 11, ECF No. 18.) To avoid confusion, the Court will separately discuss the facts leading up to their respective employment terminations.

### A.  Jeremy Rodriguez-Ortega's employment and termination from NMDOH

2

Employed by the State of New Mexico since 1999, Rodriguez-Ortega began working for the NMDOH in Human Resources ("HR") in June 2018 and reported directly to Defendant David Rich ("Rich"). (*Id.* ¶¶ 12-13.) From July 2018 to July 2019, Rodriguez-Ortega applied for and was granted leave under the Family Medical Leave Act ("FMLA"). (*Id.* ¶ 14.) Between July 2019 and February 2020, Rodriguez-Ortega took leave related to his condition more than 12 times, even though he had not submitted, and had not been requested to submit, another FMLA application after July 2019. (*See id.* ¶¶ 15, 32.)

On February 21, 2020, Rodriguez-Ortega was suddenly and unexpectedly hospitalized for three days due to his medical condition. (*Id.* ¶ 23.) He was heavily medicated after being released to recover at home and was unable to notify his employer of his whereabouts. (*Id.* ¶¶ 23-24.) While he was hospitalized, Rich contacted Joshua Rodriguez at work to ask where his brother was, and Rich learned that Jeremy Rodriguez-Ortega had been in the hospital. (*Id.* ¶ 25.) Rodriguez-Ortega was absent from work due to his health condition from February 21 to March 1, 2020. (*Id.* ¶ 26.)

After Rodriguez-Ortega returned to work on March 2, 2020, Rich called him into a meeting with Teresa Padilla wherein Rich informed him that it was unacceptable not to notify them of his whereabouts during his absence. (*Id.* ¶ 27.) Rich warned him that he would be marked AWOL and disciplined up to and including termination if it happened again. (*Id.*) Rich said that, without exception, Rodriguez-Ortega must comply with NMDOH's Absence and Leave policy, and if he did not notify Rich that he would be absent within 30 minutes of the start of his shift going forward, he would be marked AWOL and subject to discipline up to and including termination. (*Id.* ¶ 28.) Rich marked him AWOL for several days of his hospitalization and recovery period for being in violation of the policy. (*Id.*) Additionally, at the meeting, Rodriguez-Ortega was informed that his job duties were being reassigned, so his primary responsibility would be qualifying for early

disability retirement in lieu of being suspended for five days for being AWOL. (*Id.* ¶ 29.) It was suggested that Rodriguez-Ortega should apply for FMLA, which would be retroactively applied back to July 2019. (*Id.* ¶ 31.)

On March 5, 2020, Rodriguez-Ortega submitted his FMLA application that clearly stated he was hospitalized for an FMLA-qualifying condition on February 20-23, 2020. (*Id.* ¶ 33.) The certification stated that his condition caused flareups during which he was unable to work and could result in hospitalizations. (*Id.* ¶ 34.) Nevertheless, Rich marked Rodriguez-Ortega AWOL on February 21 and 28 and part of February 27, because he had not called in within 30 minutes of his shift, while the other days were designated FMLA. (*Id.* ¶¶ 35-36.) Rich directed Rodriguez-Ortega to complete a second intermittent leave application, which he did. (*Id.* ¶ 37.) Rich designated FMLA leave from July 2019 to July 2020 and March 2020 to July 2020. (*Id.* ¶ 38.)

On or about March 17, 2020, the governor enacted a stay-at-home order, after which all state employees began working from home. (*Id.* ¶ 48.) Rodriguez-Ortega logged into the NMDOH VPN service, but he received no communications from Rich or any of his coworkers while he was working from home and was assigned no work, because his coworkers were assigned his job duties. (*Id.* ¶¶ 49-50.) Because he became used to not receiving email, he did not notice when his email password expired. (*Id.* ¶ 50.)

On April 24, 2020, Rich sent Rodriguez-Ortega an angry email, claiming that Rodriguez-Ortega failed to complete an NCA he was assigned. (*Id.* ¶ 56.) Rich stated that there had been no measurable work from Rodriguez-Ortega since his health improved, and he told him to complete a work assignment by April 27th. (*Id.* ¶¶ 56-57.) Because Rodriguez-Ortega was not aware he was not getting emails, he did not receive and did not respond to Rich's email. (*Id.* ¶¶ 58-59.) In a May 1, 2020, email, Rich complained to Rodriguez-Ortega about not having received a response and

noted, "You have now been working from home at least seven (7) weeks with literally no work results to speak of nor have you communicated with me or the team as to what you are doing." (*Id.* ¶¶ 61, 63.)

On May 4, 2020, Rodriguez-Ortega sent Rich a text notifying him that he was in the emergency room ("ER"). (*Id.* ¶ 67.) Rodriguez-Ortega was on heavy-duty narcotic painkillers at the hospital and was given a continuing dose, keeping him incapacitated. (*Id.* ¶¶ 67-68.) After he was released home, he returned to the ER on May 8, 2020, where he was stabilized and released with continued narcotic pain treatment that kept him incapacitated. (*Id.* ¶¶ 68-69.) On May 13, 2020, Rodriguez-Ortega was admitted to the hospital and released on May 15, 2020. (*Id.* ¶ 70.) On May 15, 2020, Rich called Rodriguez-Ortega, yelling at him about being AWOL and threatening him with termination for being AWOL. (*Id.* ¶ 73.) Rich instructed that, if he did not call in within 30 minutes of his shift, he could not use FMLA and would be marked AWOL. (*Id.* ¶ 74.) Rodriguez-Ortega, however, had been too incapacitated to call in within 30 minutes of his shift each day. (*Id.* ¶ 75.) Because Rich had told Rodriguez-Ortega that if he did not call in within 30 minutes of his shift that he could not use FMLA and would be marked AWOL, Rodriguez-Ortega did not believe he could use his FMLA. (*See id.* ¶¶ 74-76.) To avoid being marked AWOL and facing possible termination, Rodriguez-Ortega, who was under the influence of heavy-duty narcotic medication at the time of the phone call, told Rich that he had been teleworking, not in the hospital. (*Id.* ¶ 76.)

On June 30, 2020, Rich issued a Notice of Contemplated Action to Rodriguez-Ortega for being AWOL on the dates in which he was hospitalized and incapacitated in May 2020, for being negligent in his duties, for failing to be ready to work, and for insubordination. (*Id.* ¶¶ 80-81.) Effective July 25, 2020, NMDOH terminated Rodriguez-Ortega's employment on those four

grounds, despite that his new FMLA year would have started again in July. (*Id.* ¶¶ 82-83.) On October 14, 2021, Administrative Law Judge ("ALJ") Aaron Baca determined there was good cause for termination and recommended this finding to the State Personnel Board ("SPB"). (*Id.* ¶ 194.) Rodriguez-Ortega appealed his termination to the SPB, which on December 10, 2021, approved ALJ Baca's decision that there was just cause to terminate his employment. (*Id.* ¶ 195.)

**B. Joshua Rodriguez's employment and termination from NMDOH**

In July 2011, Rodriguez began working for NMDOH. (*Id.* ¶ 16.) In or around December 2019, he applied for a promotion. (*Id.* ¶ 17.) When he arrived for his December 16, 2019, interview, he was asked to fill out ADA accommodations paperwork that requested disclosure of his health condition. (*Id.* ¶ 18.) Believing it to be a violation of law, Rodriguez refused to fill out the paperwork, and he was not offered the promotion. (*Id.* ¶ 19.) Around December 30, 2019, Rodriguez sent an email to Rich reporting hiring practices that he believed to violate the law. (*Id.* ¶ 20.) On January 7, 2020, Rodriguez again reported the incident to Rich and others. (*Id.* ¶ 21.)

Subsequently, on March 9, 2020, Rodriguez observed two employees, Vandora Montoya and Chasedy Vela, with a stun gun in the office. (*Id.* ¶ 39.) His manager directed him to address the NMDOH weapons policy violation with them, a violation of which can result in immediate termination. (*Id.* ¶¶ 39, 41.) That same day, Ms. Montoya contacted Defendant Kenneth Lucero and made an allegation of sexual harassment against Rodriguez. (*Id.* ¶ 40.) Committing sexual harassment can result in immediate termination. (*Id.* ¶ 41.)

Lucero launched an investigation of the sexual harassment complaint. (*Id.* ¶¶ 42-43.) Two of the complaints against Rodriguez came from the employees who Rodriguez had just confronted with their violation of the dangerous weapons policy, and the third came from an ex-employee who did not like him. (*Id.* ¶ 45.) Neither of the two employees received any discipline from the

weapons violations. (*Id.* ¶ 47.) After completing his investigation, Lucero recommended Rodriguez's employment be terminated. (*Id.* ¶ 51.) Although the report found that Ron Ulibarri and Dr. Chris Novak violated NMDOH policy, it made no discipline recommendations for their infractions. (*Id.* ¶ 52.) Despite not listening to the investigation interviews, on April 24, 2020, Rich approved a Notice of Contemplated Action for Rodriguez that proposed termination of his employment for alleged substantiation of sexual harassment, relying in part on two unrelated verbal counseling statements from 2016. (*See id.* ¶¶ 54.) Reliance on a counseling statement that was issued more than a year prior violates NMDOH Discipline Policy. (*Id.* ¶ 55.)

Rodriguez received a Notice of Final Action, terminating his employment, on May 19, 2020. (*Id.* ¶ 78.) On appeal, ALJ Haught upheld the termination. (*Id.* ¶¶ 84-85.) Rodriguez filed objections to the decision, but the SPB issued a decision against him. (*See id.* ¶¶ 86-93.)

### C.  Administrative and court procedural history

Plaintiffs filed charges of discrimination with the New Mexico Human Rights Bureau ("NMHRB"), and they received an order of non-determination dated July 15, 2021. (Am. Compl. ¶ 10, ECF No. 18.) On October 12, 2021, they filed a complaint in state court, which they subsequently amended after the case was removed to federal court. (*See* Compl., ECF No. 1-1; Am. Compl., ECF No. 18.) Rodriguez-Ortega asserts claims for FMLA interference (Count I) and FMLA retaliation (Count II) against Defendant Rich in his individual capacity. (Am. Compl. 15-18, ECF No. 18.) Both Plaintiffs assert against Defendants Rich, Lucero, and the NMDOH a claim for violation of the New Mexico Human Rights Act ("NMHRA") based on disability or serious medical condition (Count III). (*Id.* at 18-21.) Joshua Rodriguez asserts three claims against NMDOH: breach of implied contract (Count IV), breach of good faith and fair dealing (Count V), and violation of the New Mexico Whistleblower Protection Act ("NMWPA") (Count VI). (*Id.* at

21-25.) In Count VII, entitled as a petition for writ of certiorari, Joshua Rodriguez appeals the termination decision of the SPB to district court on the basis that it was not supported by substantial evidence and is contrary to law. (*Id.* at 25-27.) Similarly, in Count VIII, also entitled as a petition for writ of certiorari, Rodriguez-Ortega appeals the SPB's termination decision to district court, arguing the decision was contrary to law, not supported by substantial evidence, and in violation of the FMLA. (*See id.* at 27-28.)

### III.   ANALYSIS

#### A. Plaintiffs filed notices of appeal in Counts VII and VIII

Defendants argue that Plaintiffs improperly attempted to appeal the SPB's decisions by bringing petitions for writ of certiorari, rather than filing notices of appeal, as required by the procedural rules. Although entitled "Petition for Writ of Certoiari (sic)," each Plaintiff "appeals his termination to District Court" pursuant to "NMSA 1978 § 39-3-1.1, Rule 1-074 NMRA, and NMSA 1978 § 10-9-18." (Am. Compl. 25, 27, ¶¶ 172, 181, 188, 190, ECF No. 18.) According to N.M. Stat. Ann. § 10-9-18(G), a "party aggrieved by the decision of the board made pursuant to this section may appeal the decision to the district court pursuant to the provisions of Section 39-3-1.1 NMSA 1978." N.M. Stat. Ann. § 10-9-18(G). Section 39-3-1.1 in turn provides that "a person aggrieved by a final decision may appeal the decision to district court by filing in district court a notice of appeal within thirty days of the date of filing of the final decision." N.M. Stat. Ann. § 39-3-1.1(C). According to section 39-3-1.1(E), a party may seek review of a district court decision to the court of appeals by filing a petition for writ of certiorari with the court of appeals. N.M. Stat. Ann. § 39-3-1.1(E). Defendants argue that Plaintiffs failed to comply with the rules by filing a writ of certiorari, instead of a notice of appeal. The Court disagrees. Although Plaintiffs may have mis-

named their claims as petitions for writ of certiorari in the title of the respective counts, it is clear from the factual and legal assertions that they are filing notices of appeal to the district court.

Defendants next argue that Counts VII and VIII should be dismissed because Plaintiffs failed to comply with service rules for notices of appeal. Plaintiffs filed their initial complaint in state court, so the Court will look to those rules for service. Rule 1-074 sets forth the procedural rules for "appeals from administrative agencies to the district courts when there is a statutory right of review to the district court, whether by appeal, right to petition for a writ of certiorari, or other statutory right of review." NMRA 1-074(A). Under the rule, an aggrieved party may appeal a final agency decision by "filing with the district court a notice of appeal with proof of service that a copy of the notice has been served in accordance with Subparagraph (1) of Paragraph F of this rule" and by "promptly filing with the agency a copy of the notice of appeal that has been endorsed by the clerk of the district court." NMRA 1-074(C)(1)-(2). Rule 1-074(F)(1) requires the appealing party, at the time the notice of appeal is filed with the district court, to "serve each party or such party's attorney in the administrative proceedings with a copy of the notice of appeal in accordance with Rule 1-005 NMRA." A party must also "file a certificate in the district court that satisfactory arrangements have been made with the agency for preparation of and payment, if required, for the record of the proceedings." NMRA 1-074(F)(2).

Defendants point to two deficiencies: Plaintiffs failed to serve the notices of appeal on Defendants and failed to timely file the requisite certificates. Plaintiffs filed their initial complaint on October 12, 2021, which contained the count entitled a petition for writ of certiorari to appeal Joshua Rodriguez's termination, (*see* Compl. 1, 25, ECF No. 1-1), within thirty days of the entry of the September 17, 2021, SPB Final Decision (*see* Final Decision, ECF No. 23-15). Defendants acknowledged receipt of Plaintiffs' complaint on October 25, 2021. (Notice 1, ECF No. 1.) After

removal and after the SPB filed its December 10, 2021, Final Decision affirming Jeremy Rodriguez-Ortega's termination, Plaintiffs filed an amended complaint in this case on January 8, 2022, adding Count VIII challenging the SPB final decision. Because the facts asserted in the complaint and amended complaint made it clear Plaintiffs were appealing the SPB final decisions to the district court, Defendants were served with Rodriguez's notice of appeal when they received service of the original complaint, and they received notice of Rodriguez-Ortega's appeal when Plaintiffs filed the amended complaint, which was electronically mailed to counsel.

As for the second purported deficiency, Plaintiffs submitted an email that their counsel sent on November 5, 2021, notifying Annette Lopez of the State Personnel Office of Rodriguez's appeal of the SPB decision with the complaint attached (Pls.' Ex. 6, ECF No. 24-6), and a January 10, 2022, email to Ms. Lopez notifying her of Rodriguez-Ortega's appeal of the SPB decision, with the first amended complaint attached (Pl.'s Ex. 8, ECF No. 24-8). According to Plaintiffs, emailing Ms. Lopez is the procedure for filing a document with the State Personnel Office's adjudication division. Defendants did not dispute this assertion. Plaintiffs contend that these emails to Ms. Lopez should be sufficient to satisfy the requirement to make satisfactory arrangements with the agency for a record of the proceedings. Defendants, however, contend that the agency did not prepare the record, because confusion occurs when a party does not follow the rules.

According to Rule 1-074(F)(2), Plaintiff Rodriguez should have filed in state court at the time he filed his state court complaint a certificate stating that he made satisfactory arrangements with the SPB for preparation and payment for the record. Plaintiffs have not pointed to such a certificate in the record. Nevertheless, it is suggested by Defendants that the agency never further communicated with Plaintiffs or prepared the record because it may have construed Plaintiffs' complaint to contain writs of certiorari, rather than notices of appeal. Defendants have not cited

authority for the proposition that a plaintiff's notice of appeal must be dismissed with prejudice for failing to file the certificate. Given that Plaintiffs filed with the state agency the notices of appeal in a timely manner, but the state agency did not respond (potentially due to an overly restrictive interpretation of Counts VII and VIII), the proper remedy is to permit Plaintiffs to make the requisite preparations with the agency for the record for the appeal. The Court will grant Plaintiffs an additional 14 days to arrange with the agency the preparation of the record and to file a notice with this Court of the status of the preparation of the administrative record. Accordingly, the Court will deny Defendants' motion to dismiss Counts VII and VIII.

### B.  Plaintiffs' collateral estoppel arguments are premature

According to Defendants, Plaintiffs should be collaterally estopped from litigating facts raised in Rodriguez's and Rodriguez-Ortega's SPB hearings.[1] More specifically, Defendants seek collateral estoppel on the following issues as to Rodriguez: NMDOH had just cause to terminate his employment; the evidence that Rodriguez engaged in misconduct was overwhelming and that the investigation was not a pretext for retaliation for Rodriguez reporting discrimination; and NMDOH's failure to discipline Mr. Ulibarri and Dr. Novack did not mitigate Rodriguez's misconduct. As to Rodriguez-Ortega, Defendants seek collateral estoppel on issues concerning his FMLA interference and retaliation claims: neither Defendant Rich nor Ms. Padilla instructed Rodriguez-Ortega he had to medically retire from his job; Rodriguez-Ortega was assigned work after the Stay-At-Home Order; and his duties were not stripped from him, but rather, other employees served as backups.

---

[1] Defendants acknowledge that they are not attempting to use collateral estoppel as to Plaintiffs' NMHRA claims in Count III. (Defs.' Mot. 14 n.3, ECF No. 25 (citing *Contreras v. Miller Bonded, Inc.*, 2014-NMCA-011, ¶ 13, 316 P.3d 202, which held that "findings made in administrative proceedings are not entitled to collateral estoppel in NMHRA actions")).

Collateral estoppel is an affirmative defense in which the party raising the defense bears the burden of proof. *See Keller Tank Services II, Inc. v. Commissioner of Internal Revenue*, 854 F.3d 1178, 1193 (10th Cir. 2017). A defendant may properly raise the affirmative defense of collateral estoppel in a rule 12(b)(6) motion when the facts necessary to support the defense are apparent on the face of the pleadings or when the court may take judicial notice of additional documents filed of record in the prior case. *See also Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (res judicata); *Merswin v. Williams Companies, Inc.*, 364 F. App'x 438, 2010 WL 373672, *2 (10th Cir. Feb.3, 2010).

"The United States Supreme Court has 'long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality.'" *Brockman v. Wyoming Dept. of Family Services*, 342 F.3d 1159, 1166 (10th Cir. 2003) (quoting *Astoria Fed. Sav. & Loan Assoc. v. Solimino*, 501 U.S. 104, 107 (1991)). Applying the principles of collateral estoppel to decisions of state administrative agencies serves to enforce repose, promote federalism, conserve judicial resources, and encourage parties to minimize the expense and burden of repetitive litigation. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 798 (1986). Under 28 U.S.C. § 1738, federal courts must give the same full faith and credit to state court proceedings as they would be given by law or usage in the courts of the state. *Bell v. Dillard Dept. Stores, Inc.*, 85 F.3d 1451, 1453 (10th Cir. 1996) (quoting 28 U.S.C. § 1738). State-court judgments enjoy preclusive effect in federal courts. *Astoria*, 501 U.S. at 109. However, § 1738 is not applicable to judicially unreviewed findings of state administrative bodies; and while administrative estoppel is generally favored, it may be abrogated by Congress. *See id.* at 109-10. *See also Elliott*, 478 U.S. at 794-95. While some federal statutory schemes have abrogated the rule (such as Title VII and the ADEA), the federal common-

law rule applies to FMLA claims (and other claims such as § 1983 actions). *See Brockman*, 342 F.3d at 1165-67 (discussing *Astoria*, 501 U.S. at 110; *Elliott*, 478 U.S. at 799); *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 728-29 (2d Cir. 2001) ("Indeed, there is no indication of a Congressional intent anywhere in the FMLA to limit the preclusive effect of state administrative agency factual determinations.). Consequently, as to the FMLA and non-NMHRA state claims, this Court must determine whether Defendants have satisfied the factors necessary to apply collateral estoppel to the fact issues they argue were resolved in the administrative hearing.

When a state agency (1) acts in "a judicial capacity"; (2) "resolves disputed issues of fact properly before it"; and (3) the parties have had "an adequate opportunity to litigate" the issue, a federal court will grant the state agency's factfinding the same preclusive effect that it would have received in state court. *Id.* at 799 (quotation omitted). If those three requirements are met, a federal court must also determine the preclusive effect the issue would receive in state courts by applying the state test for collateral estoppel as well. *See Atiya v. Salt Lake County*, 988 F.2d 103, 1019 (10th Cir. 1993) (analyzing both the three-part *Elliott* test and Utah's collateral estoppel test). In New Mexico, the doctrine of collateral estoppel denies parties the ability to relitigate ultimate facts or issues that have been actually and necessarily decided in a previous suit. *Shovelin v. Central New Mexico Elec. Coop., Inc.*, 115 N.M. 293, 297 (1993). New Mexico courts apply collateral estoppel to issues resolved in an administrative agency adjudicative decision to subsequent civil cases so long as the parties had an opportunity to fully and fairly litigate the issue in the administrative hearing. *Mascarenas v. City of Albuquerque*, 2012-NMCA-031, ¶ 31, 274 P.3d 781. In order for a movant to obtain the preclusive effect of the doctrine, he must demonstrate four elements: (1) the parties are the same or in privity with the parties in the original action; (2) the cause of action in the two suits is different; (3) the ultimate facts or issues were actually litigated

in the prior suit; and (4) the issues were necessarily determined in the prior suit. *Id.* Upon a movant's successful demonstration of these elements, the court must then determine whether the non-moving party "had a full and fair opportunity to litigate the issue in the prior litigation." *Id.*

Defendants rely on *Mascarenas* to support their argument that the New Mexico state courts would grant the SPB's decision preclusive effect on the multiple factual and legal issues that were litigated and decided in Plaintiffs' respective pre-termination hearings. In *Mascarenas*, the City of Albuquerque terminated plaintiff's employment, a decision that was upheld after a three-day post-termination hearing in which the hearing officer concluded that there was just cause to support her termination. *See id.* ¶¶ 10-11. After the personnel board upheld the hearing officer's recommendation, the plaintiff filed a complaint in district court, appealing the personnel board's decision under Rule 1-074 NMRA and bringing a civil complaint for violation of her due process rights, breach of the implied employment contract, and violation of the FMLA. *Id.* ¶¶ 11-12. The district court affirmed the just-cause determination of the personnel board, and then granted the City's motion to dismiss on the basis that res judicata barred the contract claim and collateral estoppel precluded the due process and FMLA claims, because the personnel board decided the factual predicates of the claims. *See id.* ¶¶ 13, 15. The New Mexico Court of Appeals concluded that the administrative appeal was untimely and that it lacked jurisdiction to consider its merits, and then held that the district court did not err in dismissing the other civil claims based on preclusion principles. *See id.* ¶¶ 24, 37. As for the FMLA claim, the *Mascarenas* court examined the personnel board's findings that the plaintiff provided no valid documentation to support taking FMLA leave and that the city's demand for recertification of her leave was not unreasonable. *See id.* ¶ 33. The New Mexico Court of Appeals concluded that collateral estoppel applied because the parties were the same, the causes of action were different, and the FMLA issues were actually

litigated and necessarily determined, because the personnel board had to consider whether the City granted the plaintiff's FMLA leave and retroactively rescinded it in order to decide whether she abandoned her employment. *Id.* ¶ 34.

Plaintiffs argue that the Court should not rely on *Mascarenas* for numerous reasons, First, Plaintiffs suggest *Mascarenas* does not apply because it involved a City Merit System Board adjudication, not an SPB adjudication. The Court, however, is not convinced that distinction is meaningful. Next, Plaintiffs argue that, unlike in *Mascarenas*, here the SPB made no determination at all about whether Rodriguez-Ortega's FMLA rights were interfered with or whether he was retaliated against for taking FMLA leave. They thus assert that collateral estoppel cannot apply because the FMLA issues were not actually litigated or necessarily determined, and that it "would be nonsensical for a court to hold that a litigant was estopped from pursuing a claim based on an administrative hearing which made no statutory finding, had no jurisdiction, and could never have provided relief allowed by law." (Pls.' Resp. 5, ECF No. 24.)

While Plaintiffs correctly point out that the hearing officer did not render a legal determination of whether there was a violation of the FMLA, Defendants are not seeking to apply *res judicata*; rather, they ask the Court to apply collateral estoppel to more limited *factual issues* decided in the SPB hearing. ALJ Baca considered the above-identified factual issues because they were relevant to determining whether the NMDOH had just cause to terminate Rodriguez-Ortega for failing to complete his assigned work duties, for violating NMDOH's readiness-to-work policies, and for violating NMDOH's and the Governor's codes of conduct. (*See* Defs.' Ex. E at 1, 24-29, ECF No. 23-5.)[2] Contrary to Plaintiffs' arguments, these factual issues were actually

---

[2] The Court may consider the administrative record without converting this motion into one for summary judgment, because Plaintiffs referred to the underlying ALJ and SPB decisions in their complaint, the documents are subject to judicial notice, and Plaintiffs do not dispute their authenticity.

litigated and necessarily determined in the administrative hearing. *Cf. Mascarenas*, 2012-NMCA-031, ¶¶ 33-34, 37 (concluding that defendant made prima facie showing that collateral estoppel applied to factual findings made by personnel board, precluding litigating factual predicates of plaintiff's due process and FMLA claims).

Plaintiffs additionally argue that Defendants have not shown that the parties had a full and fair opportunity to litigate. In determining the fullness and fairness of prior litigation, courts look to a non-exhaustive list of factors to include "whether the non-movant had the incentive to vigorously litigate the prior action, whether procedural differences between the two actions, such as representation by counsel, presentation of evidence, questioning of witnesses, *and appellate review*, would make preclusion unfair, and whether policy considerations exist to deny any preclusive effect." *Rex, Inc. v. Manufactured Housing Committee of State of N.M., Manufactured Housing Div.*, 1995-NMSC-023, ¶ 14, 119 N.M. 500 (italics added). As discussed *supra*, the Court finds that Plaintiffs filed notices of appeal of the SPB's respective decision in Counts VII and VIII, so those appeals are currently pending before this Court. Again, *Mascarenas* provides guidance, as in that case the district court affirmed the decision of the personnel board *prior to* deciding the issues of preclusion. *See Mascarenas*, 2012-NMCA-031, ¶¶ 13-15. In the appeals before the Court, Plaintiffs argue that the ALJ decisions were erroneous, contrary to law, and not supported by the evidence. Until the Court renders a decision on Counts VII and VIII, determining the preclusive effect of the ALJs' respective factual determinations is premature. The Court will therefore deny Defendants' motion to dismiss on grounds of collateral estoppel without prejudice.

### C.  Plaintiffs exhausted some, but not all, of the discrete acts for their NMHRA claims

To bring an NMHRA suit in district court, a plaintiff is required to exhaust the administrative grievance process with respect to all defendants named in the district-court lawsuit.

*See Sonntag v. Shaw*, 2001-NMSC-015, ¶ 13, 130 N.M. 238; *Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7, 117 N.M. 380. The burden to prove exhaustion lies with the plaintiff. *Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109, ¶ 11, 314 P.3d 681. To exhaust administrative remedies under the NMHRA, a person must: (i) file a complaint with the NMHRB or the EEOC making sufficient allegations to support the complaint; and (ii) receive an order of non-determination from the NMHRB. *See Mitchell-Carr v. McLendon*, 1999-NMSC-025, ¶¶ 13-21, 127 N.M. 282. Each discrete act of discrimination or each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice. *See National R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 114-15 (2002). "An adverse employment action occurs when an employer imposes a tangible, significant, harmful change in the conditions of employment." *Ulibarri v. State of N.M. Corr. Acad.*, 2006–NMSC–009, ¶ 16, 139 N.M. 193. The NMHRA requires that the charge contain "all information relating to the discriminatory practice." N.M. Stat. Ann. § 28-1-10(A).

Unlike a claim of discrimination based on a discrete act that itself is actionable, hostile work environment claims are based on the cumulative effect of individual acts. *Morgan*, 536 U.S. at 115. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. For retaliation claims, courts must consider whether the claim is based on a discrete act or on a cumulative series of acts. *Charles v. Regents of New Mexico State Univ.*, 2011-NMCA-057, ¶ 13, 150 N.M. 17.

The purpose of the exhaustion requirement is to give notice of the alleged violation to the defendant and to give the administrative agency a chance to conciliate the claim. *Cf. Smith v. Cheyenne Retirement Investors L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (discussing Title VII exhaustion). Courts liberally construe the plaintiff's charge, but it must contain facts concerning

the discriminatory and retaliatory actions underlying each claim. *Id.* The question is whether the conduct alleged in the case falls within the scope of the administrative investigation that would reasonably grow out of the administrative charge. *Id.*

In his September 14, 2020, NMHRB charge, Rodriguez-Ortega alleged discrimination by the NMDOH, Rich, and Teresa Padilla based on sexual orientation, disability, and serious medical condition beginning on March 10, 2020, and continuing until July 24, 2020. (*See* Defs.' Ex. D, ECF No. 23-4 at 3-4 of 4.)[3] As relevant to his NMHRA medical disability/condition claim, Rodriguez-Ortega alleged: "Due to my health conditions, I was informed that my job duties were distributed to other HR Analyst[s], in order for me to proceed with Early Disability Retirement. (Against my will) My application was not processed in a timeframe according to DOH's expectations, so my employment was terminated…." (*Id.* at 3-4 of 4.)

As for Rodriguez, his NMHRB charge alleged discrimination based on disability and serious medical condition (polycystic kidney disease) from December 16, 2009, until May 20, 2020, against Erica Martinez, David Rich, and Ken Lucero. (Defs.' Ex. K, ECF No. 23-11 at 4 of 6.) Rodriguez asserted that he applied for the promotion with the Immune Division, he was asked about his health condition in the interview and to fill out paperwork regarding it, and after reporting this illegal attempt to force him to fill out an accommodation request, he did not get the promotion, was suddenly and unexpectedly placed under investigation for alleged "sexual harassment," and was terminated. (*See id.* at 4-5 of 6.) He claimed that they discriminated against him for his disability and in retaliation for reporting the illegal requirement to fill out an accommodation form at the interview. (*Id.* at 5 of 6.) He subsequently amended his charge to add Ron Ulibarri, Vandora Montoya, Jeff Lara, and Chasedy Vela for discriminating against him based on his disability by

---

[3] Plaintiffs referred to their NMHRB charges in their amended complaint and have not questioned their authenticity. The Court may thus consider the contents thereof without converting this motion into one for summary judgment.

making accusations against him regarding the frequency with which he used the restroom, with no evidence that he knocked on or opened the restroom doors as alleged. (*See id.* at 6 of 6.) He further asserted that Lucero and Rich found him guilty of sexual harassment in retaliation for his protected activity. (*Id.*)

Neither Plaintiff asserted a hostile work environment claim in his respective charge of discrimination. Nor did the narrative portion of Plaintiffs' respective charges adequately describe a hostile work environment, as opposed to discrete acts of discrimination, so the Court will focus its analysis of the NMHRA claims based on the type of discrete acts alleged. As for those discrete acts, Rodriguez exhausted his NMHRA claim based on theories of failure to promote based on his disability and termination of employment based on his disability and in retaliation for reporting disability discrimination. Rodriguez-Ortega exhausted his NMHRA claim based on the removal of his job duties and termination because of his disability. The Court will therefore not dismiss Plaintiffs' NHMRA claims in Count III arising from these theories.

Nevertheless, Defendants argue that this Court should dismiss the claims to the extent they rely on certain other discrete acts of discrimination set forth in the amended complaint. With respect to Rodriguez's NMHRA claim, in addition to the above allegations, he contends that Rich discriminated and retaliated against him for his protected activity "when he identified Mr. Rodriguez by name and work location to other DOH employees, including Defendant Lucero." (Am. Compl. ¶ 125, ECF No. 18.) This allegation appears to arise from the January 15, 2020, email Rich sent to Lucero and others, identifying Rodriguez and discussing his allegations of illegal discrimination. (*Id.* ¶ 22.) To the extent Plaintiff is alleging the January 15, 2020, email constitutes a discrete act of discrimination, the Court agrees Plaintiff did not administratively exhaust that claim. Nevertheless, this determination does not exclude the email as evidence pertaining to

Rodriguez's exhausted claims, as a plaintiff may use other acts as background evidence to support an exhausted claim. *See Morgan*, 536 U.S. at 113 (explaining that Title VII's statutory exhaustion requirement does not "bar an employee from using the prior acts as background evidence in support of a timely claim"). The Court makes no determination at this time regarding the admissibility of non-exhausted discrete acts.

Next, Defendants argue that Rodriguez did not exhaust his claim in paragraphs 127, 128, and 131 of the amended complaint, which state that Lucero discriminated and retaliated against him by conducting a biased investigation designed to terminate him by taking every inference against him, by adding extra allegations to make him appear as guilty as possible, and by violating NMDOH policy in failing to remove and then using years-old counseling statements to support termination. A reasonable interpretation of the charge was that the investigation was a pretext to terminate his employment and that the named individuals were responsible for the investigation and termination. The assertions in paragraphs 127, 128, and 131 fall within Rodriguez's allegations in his charge of discrimination that indicate the investigation of sexual harassment was a pretext for retaliation and disability discrimination. Defendants had notice sufficient to defend against the charge in the administrative process. Thus, the allegations, while not separate discrete acts, were exhausted as reasonably related to the allegations of retaliation and unlawful termination in his charge. *Cf. Taylor v. Western and Southern Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992) (explaining that Title VII plaintiff does not have to allege in an EEOC charge each and every fact that combines to form the basis of each claim).

Similarly, Defendants assert that Rodriguez did not exhaust his allegations that Defendants discriminated and retaliated against him by terminating him instead of suspending him and for applying disparate treatment compared to their treatment of other employees. Again, these

allegations are part of the retaliation and unlawful termination claims and are evidence in support of his assertion that his termination was really based on his disability and/or in retaliation for reporting prior discrimination.

Turning to Rodriguez-Ortega's additional theories of NMHRA liability, Defendants first contend that he did not identify his specific serious medical condition. Rodriguez-Ortega, however, alleged discrimination based on his serious medical condition, and there is no suggestion that the agency or Defendants considered a medical condition different from his PKD and pancreatitis. Indeed, Defendants' response to the charge indicated that they understood that the serious medical condition was the same one underlying his FMLA leave, and thus, they had notice of the condition sufficient to respond to it. (*See* Pls.' Ex. 2, ECF No. 24-2 at 1-2.) The Court therefore rejects the argument that he failed to exhaust his claim of disability discrimination based on his medical conditions for PKD and pancreatitis.

Next, Defendants argue that Rodriguez-Ortega did not exhaust a discrete claim against Rich for threats, statements, and action arising from his February 2020 hospitalization. According to Defendants, Plaintiff did not exhaust his allegations that Rich pressured him to take early disability retirement, that Rich told him he would have to seek early retirement in lieu of being suspended, and that Rich reassigned his job duties after the February 2020 hospitalization. (*See* Defs.' Mot. 19, ECF No. 23.) The Court disagrees with Defendants that these allegations were not included in the HRB charge. Plaintiff exhausted those claims as they fall within his charged allegations that Rich and Ms. Padilla distributed his job duties to other analysts so that he would proceed with early disability retirement. For similar reasons, the Court finds that Plaintiff's allegation that Rich terminated his employment while Rodriguez-Ortega was hospitalized and recovering from hospitalization, (Am. Compl. ¶ 139, ECF No. 18), falls within the scope of his

charged allegation that Rich unlawfully terminated his employment because of his health condition.

As for the additional allegations, it is not clear that Plaintiff intended to allege each as its own discrete act, rather than as evidence in support of other discrete acts of retaliation. Defendants assert that the following allegations were not included in the HRB Charge: Rich threatened to suspend Rodriguez-Ortega for 5 days for allegedly being AWOL while in the hospital and recovering (*see* Am. Compl. ¶ 134, ECF No. 18); Rich said that he must comply with NMDOH's Absence and Leave policy and, if he did not notify Rich that he would be absent within 30 minutes of his shift, he would be marked AWOL and subject to discipline up to and including termination (*id.* ¶ 28), Rich marked him AWOL for several days of his hospitalization and recovery period for being in violation of this policy (*id.*); Rich placed him under increased scrutiny because his disability application was not being processed fast enough (*id.* ¶ 136); Rich failed to provide him with larger monitors for telework to accommodate his disability related vision problems (*id.* ¶ 137); and Rich ridiculed and disciplined him for not being able to see that his password expired on his small personal laptop screen (*id.* ¶ 138). Once again, to the extent Plaintiff is asserting that the acts in paragraphs 28, 134, and 136-138 are separate discrete acts, Plaintiff failed to exhaust those acts as adverse actions, because the allegations did not give Defendants sufficient notice in the charge that these identified actions were alleged to be discrete acts of discrimination. Nonetheless, these allegations also may support Plaintiff's exhausted claim for unlawful discrimination resulting in his termination, so the evidence may be potentially admissible.[4]

In sum, Count III will remain in the case for both Plaintiffs against Defendants as to the discrete acts discussed herein that were fully exhausted. To the extent Plaintiffs were attempting

---

[4] The Court will not make determinations of admissibility at this time.

to allege theories of liability based on discrete acts that were not exhausted, those theories will be dismissed.

### D. Rodriguez-Ortega stated an FMLA interference claim, but not on a lack-of-notice theory[5]

The FMLA provides eligible employees with twelve weeks of leave, including taking leave intermittently or on a reduced leave schedule when medically necessary, during any twelve-month period if a "serious health condition" prevents such an employee from performing the functions of his job. *See* 29 U.S.C. § 2612(a)(1)(D), (b)(1), (d)(1). "The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under the FMLA." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012) (citing 29 U.S.C. § 2615(a)(1)). To succeed on an FMLA interference claim, "an employee must show that (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." *Id.* A plaintiff may satisfy the second element by showing that he was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007).

"If the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse decision was not 'related to the exercise or attempted exercise of [the employee's] FMLA rights.'" *Dalpiaz v. Carbon County*,

---

[5] Plaintiffs oppose the motion to dismiss Rodriguez-Ortega's FMLA interference claim and additionally argue that they "can, in fact, move for summary judgment on this claim due to the nature of the undisputed facts." (Pls.' Resp. 9, ECF No. 24.) Plaintiffs also reference their "Motion for Partial Summary Judgement" (*id.* at 11), but they do not appear to have filed that motion. It is not clear by the limited argument in Plaintiffs' response that they were indeed moving for partial summary judgment in their response brief, but to the extent the response could be construed as a request for partial summary judgment, it is denied for lack of presenting evidence and argument in accordance with D.N.M. Local Rule 56.1(b).

760 F.3d 1126, 1132 (10th Cir. 2014) (quoting *Campbell*, 478 F.3d at 1287). "A deprivation of these rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden-shifting analysis does not apply." *Brown*, 700 F.3d at 1226-27. An indirect causal link between an FMLA leave request and dismissal is not enough to establish liability. *Dalpiaz*, 760 F.3d at 1132. An employer can defend against the interference claim by demonstrating that it would have terminated the employee anyway, regardless of the request for FMLA leave. *Brown*, 700 F.3d at 1227. For example, "if an employer presents evidence that an employee was dismissed for her failure to comply with the employer's absence-notification policy, this is sufficient to demonstrate the termination was not legally 'related to' the exercise of FMLA leave, even if the employee's absences were caused by a requested medical leave." *Dalpiaz*, 760 F.3d at 1132-33. Similarly, even if work-performance issues are related to the illness for which the employee requests FMLA leave, the employer may fire the employee for work-performance problems, regardless of the indirect link between the FMLA leave and adverse decision. *Id.* at 1132.

In Count I, Rodriguez-Ortega brings a claim against Rich in his individual capacity for FMLA interference. (Am. Compl. 15, ECF No. 18.) Plaintiff alleges that he worked 1250 hours in the previous 12 months in or around July 2019 and was eligible for a new year of FMLA coverage (*id.* ¶ 98), satisfying his burden on a motion to dismiss regarding the first element for an FMLA interference claim. As for the second element, Rodriguez-Ortega alleges that Rich interfered with his FMLA in multiple ways. He alleges that Rich (i) failed to provide him notice within five business days of when he first learned Rodriguez-Ortega was taking leave related to his medical condition after July 2019 (*id.* ¶ 102); (ii) unlawfully interfered with his rights by telling him he must call in each day within 30 minutes or he would not be able to invoke his FMLA leave (*id.* ¶ 106); (iii) unlawfully marked him AWOL while he was in the hospital and recovering from

hospitalization, preventing him from using annual or donated leave for those periods (*id.* ¶ 107); (iv) unlawfully gave him the choice between a 5-day suspension for being AWOL or taking early disability retirement (*id.* ¶ 108); (v) unlawfully caused Plaintiff to believe he could not invoke his FMLA rights for his May 2020 hospitalization and recovery (*id.* ¶ 109); and (v) terminated him before he could apply for a new year of FMLA coverage (*id.* ¶ 110). Defendants argue that Plaintiff failed to state an interference claim based on lack-of-notice or unlawful termination.

### 1. Plaintiff failed to state an FMLA interference claim based on lack of notice

Under FMLA regulations, "when the employer acquires knowledge that an employee's leave may be for an FMLA–qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b)(1). Plaintiff asserts that Rich approved his leave for medical appointments between July 2019 and February 2020 "without properly noticing Mr. Rodriguez-Ortega of his *continuing* right to FMLA." (Pls.' Resp. 10, ECF No. 24 (italics added).) He had previously applied for and was granted FMLA until July 2019; he took leave related to his condition more than 12 times between July 2019 and February 2020; and each time he took such leave, Defendants were on notice of his need for additional FMLA leave. (*See* Am. Compl. ¶¶ 14, 32, 100-02, ECF No. 18.) According to Defendants, Plaintiff failed to state a claim because he did not allege a date for computation of the notice period, because "in or after July 2019" is insufficient notice. Moreover, Defendants contend that Rich or Ms. Padilla notified him of his eligibility for leave during the March 2020 meeting, which may have occurred within the notice period. Defendants further argue that, even if Plaintiff is permitted to amend the complaint to provide a date, Plaintiff was not prejudiced by the lack of notice because he previously had taken FMLA

leave and was terminated for reasons unrelated to FMLA leave. The Court finds the lack of prejudice argument dispositive, but for a slightly different reason.

The FMLA's enforcement provision gives no relief to a plaintiff unless he was prejudiced by the violation. *Branham v. Delta Airlines*, 678 F. App'x 702, 706 (10th Cir. Feb. 3, 2017) (unpublished) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). An FMLA violation prejudices an employee only when the employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief. *Ragsdale*, 535 U.S. at 89.

Defendants rely on *Branham* for their assertion that Plaintiff cannot show prejudice from the lack of timely notification. In *Branham*, the plaintiff alleged an FMLA interference claim based in part on her employer's failure to notify her that she could apply for FMLA leave in connection with a work absence. *See* 678 F. App'x at 705-06. The Tenth Circuit, assuming that her employer was on notice that she might be entitled to FMLA leave, nonetheless rejected her argument that the employer failed to meet its notification obligations. *Id.* at 706. The Tenth Circuit reasoned that, because the employee already requested and received FMLA leave multiple times during her employment for herself and to care for family members, she could not show that her employer failed to meet its notification obligations. *Id.* Moreover, it concluded that the plaintiff did not show prejudice from the defendants' alleged failure to better inform her of her FMLA rights where her employer terminated her for reasons unrelated to FMLA leave. *Id.*

Even assuming that Defendants' notice was inadequate until early March 2020, Plaintiff's allegations do not show prejudice from the lack of notice. Plaintiff alleges in his amended complaint that he took FMLA leave from July 2018 to July 2019, and that he was notified in a

meeting on or around March 2, 2020, that he could apply for additional FMLA leave, which would

be applied retroactively back to July 2019. (Am. Compl. ¶¶ 14, 27-31, ECF No. 18.) Plaintiff then

applied for FMLA leave on March 5, 2020, and Rich designated FMLA leave for him from July

2019 to July 2020. (*See id.* ¶¶ 31-33, 35, 38.) As for the 12 days prior to his February 2020

hospitalization, he was permitted to take leave. (*See id.* ¶ 32.) Rich designated all but three of the

days during which Plaintiff was absent as FMLA leave. (*See id.* ¶¶ 26, 31-33, 35.) Rich marked

Plaintiff as AWOL for February 21 and 28 and part of February 27, 2020, because Plaintiff failed

to call-in within 30 minutes of his shift. (*Id.* ¶¶ 35-36.) The alleged harm Rodriguez-Ortega

sustained thus arose from Rich's marking him AWOL for not calling in to his employer in a timely

fashion, not from the lack of notice. According to Plaintiff, he was incapacitated and unable to call

in timely on February 21, 27, and 28, so even if he had better prior notice of his FMLA rights, he

would have sustained the same harm. Because Plaintiff's allegations do not establish prejudice

from the alleged lack of notice, Defendants are entitled to dismissal of that stand-alone theory of

FMLA interference. The Court will examine Rich's application of the AWOL policy in the next

section.

### 2. Plaintiff stated an FMLA interference claim based on allegations that Rich applied NMDOH's AWOL policy for absences that occurred when Rodriguez-Ortega was incapacitated

Defendants further contend that Plaintiff's FMLA interference claim based on his

termination must be dismissed because their stated reasons for firing him were unrelated to his use

of FMLA leave. In his amended complaint, Plaintiff acknowledges that he was terminated effective

July 25, 2020, for being AWOL, negligent in his duties, failing to be ready to work, and for

insubordination. (Am. Compl ¶¶ 80-83, ECF No. 18.)[6] Defendants contend that they have met their

---

[6] Plaintiff referred in the amended complaint to the June 30, 2020, Notice of Contemplated Action, and the July 22, 2020, Notice of Final Action (*see* Am. Compl. ¶¶ 80, 83, ECF No. 18), which Defendants then attached to their brief

burden on the third prong for an FMLA interference claim because they established that Plaintiff was dismissed for being AWOL for nine days in May 2020 in violation of their notice-of-leave policy, a reason unrelated to the exercise of his FMLA rights.[7] Plaintiff nonetheless asserts that Rich cannot avoid FMLA liability by applying a policy that is contrary to the FMLA.

As the Tenth Circuit explained, a request for FMLA leave does not shelter an employee from his obligation, which is the same as for all other employees, to comply with the employer's employment policies, including its absence policy. *Bones v. Honeywell Intern., Inc.*, 366 F.3d 869, 878 (10th Cir. 2004) (concluding district court properly granted summary judgment to employer on employee's FMLA claim where it was uncontroverted that employee did not comply with employer's absence policy on dates for which she was terminated where she never notified employer about her absences). An "employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, *even if the absences that the employee failed to report were protected by the FMLA*." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008-09 (10th Cir. 2011) (emphasis in original). The "notice-of-absence policies serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations." *Id.* at 1009. Rich contends that he carried his burden of proving that Rodriguez-Ortega was dismissed for reasons unrelated to exercising his FMLA rights, because he was terminated for being AWOL for nine days in May 2020, and that the sanction under NMDOH policy for four or more AWOLs in a 12-month period is dismissal. *Cf. Branham*, 678 F. App'x at 705 (concluding that employer

---

(Defs.' Ex. B & Ex. C, ECF No. 23-2 & 23-3). For reasons given *supra*, the Court may consider these documents without converting this motion into one for summary judgment.

[7] Although Rodriguez-Ortega's notice of termination gave multiple reasons for his dismissal, Rich focuses in his briefing on only Rodriguez-Ortega's violations of NMDOH's notice-of-absence policy. The Court will therefore limit its analysis herein to that stated reason only.

carried its burden of proving it dismissed employee for reasons unrelated to any FMLA leave where plaintiff was on final warning, called in sick for her latest absence just hours after having accepted assignment, and was absent on short notice just weeks before).

Plaintiff, however, relies on *Ortega v. San Juan Coal Co.*, No. 12cv0501 MV/RHS, 2013 WL 12116377 (D.N.M. Oct. 3, 2013), to support his argument that Rich's marking him AWOL in May 2020 violated the FMLA because the policy of deeming an employee AWOL for failing to call in within 30 minutes of his shift regardless of the reason violates the FMLA. In *Ortega*, the plaintiff, a severe migraine sufferer, filed suit under the FMLA after being terminated for unreported work absences in violation of the attendance policy, and the defendants, relying on *Bones* and *Twigg*, moved for summary judgment. *See id.* at *1-4, 19. The *Ortega* court denied the motion, holding that the evidence created a question of fact about whether "unusual circumstances" within the meaning of 29 C.F.R. § 825.303(c) prevented the plaintiff from complying with the defendant's attendance policy, and thus, whether the defendant's application of that policy violated the FMLA. *See id.* at *17. The district court explained that § 825.303(c) contemplates that an employer may require employees to comply with "usual and customary notice and procedure requirements for requesting leave," but that "it does not authorize an employer to require its employees to comply with policies that are *inconsistent* with the rights granted to employees in that section." *Id.* at 21-22. Section 825.303(c) provides:

> When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer's internal rules and procedures may not be required when FMLA leave is involved.

29 C.F.R. § 825.303(c). Distinguishing the *Bones* and *Twigg* cases, which addressed policies consistent with § 825.303(c), the *Ortega* court determined the plaintiff raised an argument calling into question the legitimacy of the employer's enforcement of the policy, given the evidence that the plaintiff was unable physically to follow the call-in procedures because of his debilitating migraine. *See id.* at 22-23.

Although Defendant Rich does not challenge the underlying reasoning of the *Ortega* opinion, he attempts to distinguish it on the grounds that Rodriguez-Ortega asserts a claim against Rich in his individual capacity and does not allege that NMDOH's attendance policy violates the FMLA. Plaintiff's FMLA claims are specifically alleged against "Defendant Rich in his individual capacity," rather than the employer, as in *Ortega*. (*Compare* Am. Compl. 15, 17, ECF No. 18, *with Ortega*, 2013 WL 12116377, at *1.) The Court is not convinced this difference renders the reasoning of *Ortega* inapplicable, because the complaint alleges that Rich is an employer within the meaning of the FMLA. (*See* Am. Compl. ¶ 4, ECF No. 18.) Section § 2611(4)(A) of the FMLA authorizes a cause of action against "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." *Baca v. New Mexico Office of Secretary of State*, No. 10cv0096 JCH/LFG, 2011 WL 13284605, at * 6 (D.N.M. Sept. 30, 2011) ("if a public employee, in this case Defendant Herrera, 'acts directly or indirectly, in the interest of an employer'—in this case, the State of New Mexico Office of the Secretary of State—she satisfies the definition of employer under the FMLA and may be subject to liability in her individual capacity").

Applying *Ortega*'s reasoning, Plaintiff relies on the provisions of 29 C.F.R. § 825.303(a) and (c) and § 825.220 in arguing that Rich interfered with his FMLA rights by marking him AWOL and telling him he must call in each day within 30 minutes or he could not invoke his FMLA leave.

(*See* Am. Compl. ¶¶ 67-75, 103-09, ECF No. 18). Section 825.220(b) instructs that FMLA interference would include "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave," 29 C.F.R. § 825.220(b), and section 825.303(a) says that, for unforeseeable leave, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." Rodriguez-Ortega alleges that at the time of his February and May 2020 hospitalizations, he was on such heavy-duty medication both in the hospital and upon release, that he was incapacitated, rendering him too incapacitated to call his employer within 30 minutes of his shift each day. (*See id.* ¶¶ 23-24, 67-76). From these allegations, it is reasonable to infer that Plaintiff is asserting that Rich violated the FMLA by adhering to a NMDOH policy that is inconsistent with FMLA regulations as applied to the circumstances of Rodriguez-Ortega's physical condition, making this case, as alleged, more like *Ortega* than *Bones* and *Twigg*. The Court finds *Ortega*'s reasoning to apply here, and Plaintiff has stated a plausible FMLA interference claim. Accordingly, the Court will deny Defendants' motion to dismiss Plaintiff's FMLA interference claim that arises from Rich marking him AWOL for failing to call in while incapacitated and subsequently terminating him on those grounds.[8]

**IT IS THEREFORE ORDERED** that Defendants' *Motion to Dismiss* (**ECF No. 23**) is **GRANTED IN PART AND DENIED IN PART** as follows:

---

[8] The Court is aware of evidence in the record, not specifically cited, in which ALJ Baca found that Rodriguez-Ortega claimed in an email that he had been ready to work since May 5 (Defs.' Ex. E at 19, ECF No. 23-5), and that he "was ready to work from May 5 onward" (*id.* at 11, ¶ 41). According to Plaintiff's own allegations, he falsely told Rich he had been teleworking because he was still heavily medicated during the call, he had been too incapacitated to call in within 30 minutes of his shift each day, and Rich had told him he could not use his FMLA under those circumstances. (Am. Compl. ¶¶ 76-77, ECF No. 18.) The parties, however, did not rely on these portions of the record in their briefing on the FMLA issue, so the Court also will not rely on them in ruling on the FMLA claim on this motion to dismiss. As discussed *supra*, because the appeal is still pending, it is premature to give any administrative findings preclusive effect.

1. Defendants' request to dismiss Counts VII and VIII is **DENIED**. Plaintiffs have **14 days from entry of this Memorandum Opinion and Order to file a notice** providing the status of the preparation and any payment necessary to ensure delivery of the administrative record to this Court.

2. Defendants' request to apply collateral estoppel to certain factual and legal issues is **DENIED WITHOUT PREJUDICE**.

3. Defendants' request to dismiss Plaintiffs' NMHRA claim (Count III) is **DENIED**, but the request to dismiss certain theories of liability is **GRANTED** as to the identified unexhausted discrete acts discussed herein.

4. Defendants' request to dismiss Plaintiff Rodriguez-Ortega's FMLA interference claim (Count I) is **GRANTED** as to the theory of liability based on a lack of notice but is otherwise **DENIED**.

_____

SENIOR UNITED STATES DISTRICT JUDGE