38

1   I didn't see any notes from that meeting at all.
2   Q.  So what happened in that meeting?
3   A.  Teresa and I talked to Jeremy about his
4   medical needs.  ==First thing I talked to him about==
5   ==was he needed to update his FMLA paperwork, because==
6   ==it was not current.==  And I also -- we also talked to
7   him about annual leave donations, because he was
8   very close to exhausting all of his accrued leave.
9   And remember, someone who's on FMLA can use any of
10  their accrued leave towards that FMLA time, so they
11  can use sick leave, annual leave, comp time,
12  whatever.  They can also use FMLA unpaid if they
13  would they want to spread out their paid leave for a
14  longer period of time.
15       Since he was so close to exhausting his
16  approved leave, we talked to him about donating
17  annual leave donations, and I approved that, of
18  course.  And then we also talked to him about had he
19  ever thought about retiring for medical reasons, and
20  he didn't -- he indicated to Teresa and I that he
21  did not know that was a possibility, and we --
22  Teresa explained to him that's a process that we
23  don't have control over.
24       So if an employee has serious medical
25  needs, and Jeremy has many of those, it's something

39

1   that if they've worked long enough for the State of
2   New Mexico, they might be eligible to do that.
3        So we told Jeremy if that was something he
4   wanted to look into, that we would support and help
5   him through that process if that's what he chose to
6   do.  And he actually looked into that process, and I
7   think he was eventually approved for medical
8   retirement with the state.
9        I don't know that for sure, because that
10  is completely outside our control.  We did provide a
11  lot of information to him for that in support of
12  his -- I guess he was researching that.  That
13  process is out of our control.
14  Q.  In that meeting, did you offer Jeremy any
15  accommodations paperwork?
16  A.  No, I didn't offer him any accommodations
17  paperwork.  He didn't request an ADA accommodation
18  the entire time he worked for us, nor did he ever
19  refer to his medical needs as a disability.
20  Q.  So the Department of Health never
21  accommodated Jeremy?
22  A.  The Department of Health --
23      MS. ACKERMANN:  Objection.
24      MS. BURKE:  What's that?
25      MS. ACKERMANN:  I said objection.

40

1   Foundation.
2       You can go ahead and answer.
3   A.  The Department of Health accommodated
4   Jeremy's every medical need the entire time he
5   worked for us.
6   Q.  How did you accommodate his medical needs?
7   A.  He had multiple FMLA submissions that he
8   submitted during his entire time of employment with
9   us.  Every one of those requests were approved
10  without any type of issue.  He was also approved and
11  utilized time off, which is also an accommodation
12  under the ADA.
13  Q.  So is it your belief that qualifying for
14  FMLA is an accommodation?
15  A.  No.  FMLA and ADA accommodation are two
16  different processes.  Jeremy never asked for an
17  accommodation.  He asked for FMLA.  He asked for
18  time off.  He asked for annual leave donations, and
19  all those things that Jeremy requested were
20  approved.
21  Q.  The Department of Health never engaged
22  Jeremy in an interactive process meeting?
23      MS. ACKERMANN:  Objection.  Foundation.
24  Q.  You never engaged Jeremy in an interactive
25  process meeting?

41

1   A.  No, I did not.  Jeremy never requested for
2   an ADA accommodation.  If he had, I would have
3   engaged him in that process.
4   Q.  Must the employee request an accommodation
5   to have notice of a need for accommodation?
6       MS. ACKERMANN:  Objection.  Form.
7   Q.  Does an employee need to make a request
8   for an accommodation in order for you to know they
9   might need one?
10  A.  No.  If we see an employee has medical
11  needs that have not been addressed, then we will
12  educate them on ADA accommodations and make them
13  aware they can request an accommodation.
14  Q.  Did you do this with Jeremy?
15  A.  There was no need to do that with Jeremy.
16  All of his medical needs that he requested
17  assistance with, support for, FMLA coverage for were
18  met by the department.
19      If Jeremy, at any point, requested
20  something that was medical related, we would have
21  done everything in our power to accommodate that.
22  We never deny ADA accommodations.  In my four years
23  of working for the Department of Health, we've never
24  denied an ADA accommodation.
25  Q.  So what happened after the meeting with