Page 110

1  A. He was eligible for FMLA, and his time --
2  I don't know what his time was coded at without
3  looking at it. Yes, he was eligible for FMLA.
4  Q. So once he had retroactive family medical
5  leave, was he still AWOL?
6  A. He was AWOL for the dates he didn't notify
7  me about. Under FMLA, you're still required to
8  notify your employer of your whereabouts. FMLA
9  doesn't relieve you of that obligation.
10  Q. So your -- it's your contention that
11  family medical leave requires there must always be
12  notification prior to taking FMLA?
13  A. You're required to notify us if you're
14  going to be out at least three business days in
15  advance for prescheduled appointments, treatments,
16  and therapies. And then if you're invoking FMLA for
17  the day or the week, whatever -- because remember,
18  you're on intermittent FMLA. It's not a continuous
19  period of time. You're required to notify your
20  employer of your whereabouts.
21  Q. When somebody's hospitalized, where are
22  they required to notify you?
23     MS. ACKERMANN: Objection. Form.
24     Go ahead and answer.
25  A. Employees are required to notify you at

Page 111

1  least 30 -- I think it's 30 minutes before your
2  shift starts or your schedule starts.
3  Q. Is that family medical leave or Department
4  of Health policy?
5  A. That's a Department of Health policy.
6  Q. So somebody is AWOL even when they have
7  intermittent FMLA if they don't notify you 30
8  minutes before their shift?
9  A. Correct. If they don't work in a facility
10  or do shift work, correct.
11  Q. So once you found out that
12  Mr. Rodriguez-Ortega was hospitalized --
13  A. I don't know that he was hospitalized. I
14  know that he wasn't at work.
15  Q. Okay. So let's look at Exhibit 5.
16  A. Exhibit 5. Okay.
17  Q. On page five, does it say, "Last admin,
18  February 20th through 23rd, 2020"?
19  A. Page five of 11, under medical facts?
20  Q. Yes. "Was the patient admitted for an
21  overnight stay in a hospital, hospice, or
22  residential medical care facility?" What's the
23  answer?
24  A. "Last admin, February 20th through
25  February 23rd," it looks like.

Page 112

1  Q. Okay. So does that give you notice that
2  Mr. Rodriguez-Ortega was hospitalized from
3  February 20th to February 23rd?
4  A. Yeah, looks like it.
5  Q. And yet he would still be marked AWOL for
6  that period of time?
7  A. I can't tell you if he was coded -- what
8  days he was coded AWOL without looking, and again,
9  you still have to notify your employer if you're
10  going to be out, whether you're under FMLA or not.
11  You're required, as an employee, to keep your
12  employer notified as to your whereabouts if you're
13  not working. FMLA does not relieve you of the
14  obligation to notify your employer.
15     And again, I don't know what days he was
16  AWOL without looking, so I can't tell you if he was
17  coded AWOL for these dates he was in the hospital or
18  not.
19  Q. Okay. So looking at Exhibit 1, where you
20  refer to three incidents of AWOL in February, late
21  February, you're contending these three incidents of
22  AWOL in late February were not the late February
23  hospitalization dates?
24  A. I can't tell you, because he was out
25  multiple days.

Page 113

1  Q. And so you go on to say, "The opportunity,
2  rather than face discipline, was to look into
3  medical retirement, et cetera." What is et cetera?
4  A. Where are you looking at now?
5  Q. About a third of the way down in that
6  third paragraph on page one of Exhibit 1.
7  A. Okay. Let me go back to Exhibit 1,
8  because you had me looking at Exhibit 5, which was
9  his FMLA.
10     MS. ACKERMANN: Which paragraph?
11     MS. BURKE: It's the third paragraph of
12  page one. It's one, two, three -- about five
13  sentences in.
14  A. Okay. On Exhibit 1, and you said the
15  third paragraph?
16  Q. That's correct, of page one.
17  A. Okay.
18  Q. And you say, "the opportunity, rather than
19  face discipline, was to look into medical
20  retirement, et cetera, versus facing up to a
21  five-day suspension for your AWOLs." What do you
22  mean by et cetera?
23  A. Okay. Here we go. Et cetera. Well,
24  we've talked about multiple things in that
25  conversation. We talked to him about he's got to

**114**

1  go -- going forward, he cannot not notify us where
2  he is, because he didn't notify me.  That was when I
3  had to try to figure out what was going on with him,
4  because he wasn't being responsive, so I ended up
5  reaching out to his brother.  So we talked to him
6  about making sure that going forward, if he was
7  going to be out, that he notify me, and he was --
8  apologized for that and told me he wouldn't do it
9  again.
10          And then we talked about to him about
11  medical retirement so that he could focus on his
12  medical needs, and we talked to him about making
13  sure that he had current FMLA paperwork in.  We
14  talked to him about the possibility of annual leave
15  donations.  That's what the et cetera is about.
16      Q.  That's what the ALD in the next sentence
17  is, annual leave donations, correct?
18      A.  Annual leave donations, correct.
19      Q.  And so he was facing a five-day suspension
20  because he didn't notify you he was in the hospital?
21      A.  He was -- it's not about him being in the
22  hospital.  It's about him not notifying us, per
23  policy, and as a professional courtesy, as to his
24  whereabouts.  If you don't notify your employer
25  where you are, regardless of the reason, you're

**115**

1  absent without leave.
2          He is an HR person.  He's well-aware of
3  our policies.  It wasn't because he was in the
4  hospital that he was being punished or coded as
5  AWOL.  He was coded as AWOL, and again, I don't know
6  the dates without looking specifically what days he
7  was coded as AWOL.
8      Q.  Okay.  Do you believe that the Department
9  of Health attendance and notice policy supersedes
10  the Family Medical Leave Act?
11          MS. ACKERMANN:  Objection.  Foundation.
12      Q.  Do you believe that the Department of
13  Health policy requirements came before the
14  requirements of the Family Medical Leave Act?
15      A.  I'm -- I don't understand your question.
16      Q.  You said that the Department of Health had
17  a notice policy of 30 minutes before a shift,
18  correct?
19      A.  Correct.  That's -- absence is another
20  leave policy.
21      Q.  To your knowledge, that policy stays the
22  same even with intermittent Family Medical Leave
23  Act?
24      A.  The requirement to notify your employer
25  is -- it's dependent on the employer and what their

**116**

1  policies are.  FMLA does not relieve you of the
2  obligation to notify your employer of your
3  whereabouts.
4      Q.  So to avoid that five-day suspension, he
5  had the option of looking at medical retirement?
6      A.  No, I did -- the five-day suspension
7  wasn't an option.  It wasn't an option or -- it
8  wasn't something I was pursuing, because I was fully
9  aware of his serious medical conditions, and I
10  didn't feel it was appropriate to discipline him at
11  that time because of his medical condition.
12      Q.  So it says here, "The opportunity, rather
13  than face discipline, was to look into medical
14  retirement, et cetera, versus facing up to a
15  five-day suspension for your AWOLs."
16      A.  Yeah, he could have --
17          MS. ACKERMANN:  I'm sorry.  Is there a
18  question pending?
19      Q.  What did you mean by that?
20          MS. ACKERMANN:  If you could refer us to
21  what paragraph you're --
22          MS. BURKE:  Exhibit 1, paragraph three,
23  the same sentence we were looking at last time,
24  about five sentences down.
25          MS. ACKERMANN:  The one that begins "The

**117**

1  opportunity"?
2          MS. BURKE:  Exactly.
3      A.  Okay.  So what's the question?
4      Q.  You say here that his opportunity was
5  rather than to face discipline was to look at
6  medical retirement.  If he wasn't facing discipline,
7  why was that his option?
8      A.  The opportunity was for him to look at a
9  multitude of things, including his conduct at the
10  time, which was not notifying me, as his supervisor,
11  as to his whereabouts and to correct that.  So that
12  was one of many opportunities he had, and rather
13  than face discipline, because I wasn't going to
14  discipline him, because I didn't think it was
15  appropriate.  And he didn't get disciplined for
16  those periods -- or however many days he was AWOL.
17  Again, I don't know if he was AWOL, and how many --
18  was it for a full day?  Part of a day?  Because
19  again, I don't have that information in front of me.
20          So Jeremy had an opportunity to correct
21  the behavior and notify me as a supervisor when he
22  was going to be out from work for whatever reason.
23  He also had the opportunity to apply for annual
24  leave donations, which he did, which I talk about in
25  the next sentence, and I approved that.