**Page 116**

1  Q. But you can't actually prove that he wasn't
2  honest, you just feel that he wasn't honest?
3  MS. ACKERMANN: Objection, form.
4  Q. (By Ms. Burke) Can you prove he wasn't
5  honest?
6  A. Well, lacking camera footage or actual
7  recordings of him having said these things, we don't --
8  we rarely have that in these types of cases. But we do
9  have the testimony of witnesses and the complainants and
10 all of them were consistent in that they all had
11 experienced very similar types of activities. So I'd
12 say it's not proof beyond a reasonable doubt, like a
13 criminal trial, but this is administrative and I think
14 it was more likely than not that it did in fact occur.
15 Q. So each statement that was made that involved
16 more than one person, none of those were corroborated
17 but you still believed that they were true?
18 MS. ACKERMANN: Objection, form.
19 Q. (By Ms. Burke) Do you still believe that even
20 when you fail to corroborate a statement that supposedly
21 had witnesses to it or was supposedly reported to a
22 manager that the statement was true?
23 MS. ACKERMANN: Objection, foundation.
24 Q. (By Ms. Burke) Go ahead.
25 A. Yes, because although I don't have the direct

**Page 117**

1  corroboration in that another person heard it or
2  witnessed it, I have several incidents having occurred
3  with several women in that office that they also
4  experienced equal if not worse behavior.
5  Q. Assuming that each of those was true did you
6  ask any of the witnesses if they had any improper
7  reasons to give testimony?
8  A. No, I didn't ask that question.
9  Q. Did any of the witnesses give testimony to you
10 that they felt that any of the other people who were
11 giving testimony might feel picked on?
12 MS. ACKERMANN: Objection, form.
13 Q. (By Ms. Burke) Go ahead and answer.
14 A. Other than the fear of having to report this
15 to begin with and the fear that they're hopeful that
16 their jobs aren't somehow impacted, that would be the
17 only -- when you say picked on, not really picked on but
18 just concern that they have that coming forward when
19 nothing had been done in the past.
20      That was communicated to me, that nothing had
21 been done in the past, and their only fear was nothing
22 would happen now either. So I guess, in that respect,
23 they weren't picked on but rather fearful that their
24 jobs could be impacted.
25 Q. Were you able to substantiate that anything

**Page 118**

1  had ever been reported?
2  MS. ACKERMANN: Objection, form.
3  Q. (By Ms. Burke) Had you ever been able to
4  substantiate that any of these witnesses had ever
5  reported Mr. Rodriguez?
6  A. Well, they did say they went to Mr. Ulibarri.
7  Q. Did he say that they did?
8  A. He denied in most cases that they did. And
9  some I thought he did say that they did, he resolved it.
10 And then most of them he said he never heard of it
11 before.
12 Q. Do you have any evidence that Mr. Rodriguez
13 was ever notified about any of these complaints?
14 A. I thought Mr. Ulibarri said that he had talked
15 to him about inappropriate behavior in the past and gave
16 him two counseling statement forms.
17 Q. About sexual harassment?
18 A. I think inappropriate, unprofessional
19 behavior. I'm not sure if they had sexual in them or
20 not.
21 ==Q. What role did Mr. Rich play in the decision==
22 ==for discipline?==
23 ==A. He's the labor manager. So ultimately he will==
24 ==probably be the one who would -- who would have to==
25 ==either say, yes, we're going to move forward with==

**Page 119**

1  ==discipline or something of a lesser level or more in==
2  ==some cases. But ultimately it stops with him. But he==
3  ==consults OGC, but, yes, he does -- he pretty much has==
4  ==the final word.==
5  Q. What about Jeff Lara?
6  A. So Jeff Lara is the division director and he
7  is -- so he's my supervisor but he's also Dr. Novak's
8  supervisor. And Dr. Novak is Mr. Ulibarri's supervisor.
9  And, of course, Mr. Ulibarri is Joshua's supervisor. So
10 he's the Director for the whole agency. He may not know
11 the ins and outs of everything that is going on, but
12 ultimately he would be a signatory on a final action
13 because he's the Division Director.
14 Q. Before he signs on a document like this does
15 he verify that you have corroborated the facts in the
16 Notice of Final Action?
17 MS. ACKERMANN: Objection foundation.
18 Q. (By Ms. Burke) Do you know, is there a
19 process by which it is verified, the investigation
20 results?
21 A. I think that Mr. Lara he's the head of the
22 entire agency, we have over almost 700 employees, I
23 think he relies on his directors and his HR budget, et
24 cetera, to make sound decisions. And -- but did he ever
25 ask me if I corroborated or what you're referring to?