**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JEREMY RODRIGUEZ-ORTEGA AND**

**JOSHUA RODRIGUEZ,**

        **Plaintiffs,**

**v.**                            **No. 1: 21-cv-01129-JCH-KK**

**DAVID RICH, KENNETH LUCERO,**
**in their official and individual capacities, L. TERESA**
**PADILLA, in her individual capacity,**
**AND NEW MEXICO DEPARTMENT OF HEALTH**

        **Defendants,**

**COMPLAINT FOR VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT,
THE NEW MEXICO HUMAN RIGHTS ACT, BREACH OF IMPLIED CONTRACT,
BREACH OF GOOD FAITH AND FAIR DEALING, WHISTLEBLOWER
PROTECTION ACT, PETITIONS FOR WRIT OF CERTIORARI AND VIOLATION OF
42 U.S.C. §1983**

**I.**        **Nature of the Action**

COMES NOW Plaintiffs Jeremy Rodriguez-Ortega and Joshua Rodriguez, by and through

their counsel of record, Heather Burke, to file this complaint for violations of Family and

Medical Leave Act 29 U.S.C. § 2601   ("FMLA," herein) and the New Mexico Human Rights

Act, NMSA 1978 § 28-1-7 et seq ("NMHRA", herein), Breach of Implied Contract, Breach of

1

Good Faith and Fair Dealing, the Whistleblower Protection Act and for a Petition for Writ of

Certiorari and Judicial Review of Administrative Decision, and Violation of 42 U.S.C. §1983.

## II.      Parties

1.  Jeremy Rodriguez-Ortega is a resident of Santa Fe County, New Mexico and Joshua

    Rodriguez is a resident of San Miguel County, New Mexico. They are employees

    within the meaning of the FMLA, New Mexico Human Rights Act, NMSA 1978 §

    28-1-7 et seq, the Whistleblower Protection Act and New Mexico Common Law.

2.  Jeremy Rodriguez-Ortega and Joshua Rodriguez were both employed by New

    Mexico Department of Health in Santa Fe, New Mexico.

3.  New Mexico Department of Health, is located in Santa Fe, NM in Santa Fe County.

    They are employers within the meaning of the FMLA, New Mexico Human Rights

    Act, NMSA 1978 § 28-1-7 et seq, the Whistleblower Protection Act and New Mexico

    Common Law.

4.  David Rich, Kenneth Lucero and L. Teresa Padilla live and/or work in Santa Fe, NM

    in Santa Fe County.  They are employers within the meaning of the FMLA, New

    Mexico Human Rights Act, NMSA 1978 § 28-1-7 et seq, and New Mexico Common

    Law.  As director and deputy director of SPO, Defendant Padilla acted under color of

    law in her individual capacity.

### III.   <u>Jurisdiction</u>

5.   The New Mexico Human rights Act, NMSA 1978 § 28-1-7 et seq, confers

jurisdiction in the State of New Mexico, Santa Fe County, First Judicial District

Court, where defendants do business.  All relevant events that form the causes of

action in this litigation occurred within the State of New Mexico.

6.   The Court has personal jurisdiction over Defendants because it was at all times

herein alleged conducting business in Santa Fe County, New Mexico.

7.   Defendants took the unlawful, retaliatory, and/or tortious acts herein alleged within

this Judicial District and/or took wrongful acts that had effects in this Judicial

District.

8.   Venue is proper under NMSA 38-3-1

9.   Venue in this Court is proper because the Defendants engaged in the unlawful,

retaliatory, and/or other tortious conduct giving rise to this Complaint in Santa Fe

County, New Mexico, which is within this Judicial District.

### IV.  <u>Exhaustion of Administrative Procedures</u>

10.  Plaintiffs timely filed charges of discrimination with the New Mexico Human Rights

Bureau, which was cross filed with the EEOC.  They satisfied all administrative

requirements and received an order of non-determination dated July 15, 2021, which

allows them 90 days to file their complaint in state district court.

### <u>Facts</u>

11.  Plaintiffs are twin brothers who both suffer from a congenital kidney disease.

12. Jeremy Rodriguez-Ortega began employment with the State of New Mexico in 1999. He began working for Defendant Department of Health(DOH) in or around June 2018.

13. Jeremy Rodriguez-Ortega worked in HR at DOH and reported directly to David Rich.

14. Jeremy Rodriguez-Ortega applied for and was granted FMLA from July 2018 to July 2019.

15. Although he continued taking leave related to his conditions, Mr. Rodriguez-Ortega was not asked to submit another application for FMLA in July 2019.

16. Joshua Rodriguez began working for Defendant DOH in July 2011

17. Joshua Rodriguez applied for a promotion with the Immune Division at DOH as a Vaccine Outreach Manager in or around December 2019.

18. On December 16, 2019 Mr. Rodriguez arrived for his interview, and he was immediately asked to fill out ADA accommodations paperwork which requested disclosure of his health condition.

19. Mr. Rodriguez refused to fill this paperwork out, believing it to be a violation of law. He was not offered the promotion.

20. On or around December 30, 2019 Mr. Rodriguez sent an email to David Rich reporting what he believed to be hiring practices which were in violation of law.

21. On January 7, 2020, Mr. Rodriguez again reported this incident via email to David Rich, DOH HRB Labor Relations Manager and ADA Coordinator.

22. On January 15, 2020 David Rich sent an email to Kenneth Lucero and others discussing Mr. Rodriguez's complaint, identifying him by name and work location

stating "The employee is using words like "discrimination," "illegal," et cetera. I'm trying to resolve this so that he doesn't file an EEOC complaint which he would probably win! His name is Joshua Rodriguez and he currently works for PHD in the pharmacy warehouse."

23. About a month later, on February 21, Jeremy Rodriguez-Ortega was suddenly and unexpectedly hospitalized for 3 days due to his medical condition, and was heavily medicated after being released to recover at home.

24. As he was incapacitated, Mr. Rodriguez-Ortega was unable to notify Defendants of his whereabouts.

25. While Mr. Rodriguez-Ortega was hospitalized, David Rich contacted Joshua Rodriguez at work sometime on or around February 21 to ask where Jeremy Rodriguez-Ortega was.  Joshua Rodriguez informed Mr. Rich that Jeremy Rodriguez-Ortega had been in the hospital.

26. Mr. Rodriguez-Ortega was absent from work due to his health condition from February 21 to March 1, 2020.

27. Jeremy Rodriguez-Ortega was recovered enough to return to work on March 2. Shortly after his return, David Rich called him into a meeting with Teresa Padilla. Mr. Rich told Jeremy Rodriguez-Ortega that it was unacceptable that he had not notified them of his whereabouts during his absence and that if it happened again, he would be marked AWOL and disciplined up to and including termination.

28. David Rich told Mr. Rodriguez-Ortega that without exception, he must comply with DOH's Absence and Leave policy.  Mr. Rich marked Mr. Rodriguez-Ortega AWOL for several days of his hospitalization and recovery period for being in violation of

this policy.  Mr. Rich stated that if he did not notify Mr. Rich that he would be
absent within 30 minutes of the start of his shift going forward, he would be marked
AWOL and subject to discipline up to and including termination.

29. Mr. Rodriguez-Ortega was also informed in this meeting that his job duties were
    being reassigned, and from then on, his primary responsibility would be qualifying
    for early disability retirement in lieu of being suspended for 5 days for being AWOL
    while he was hospitalized and recovering.  David Rich told him how terrible he
    looked and that he should be focusing on his health instead of working.

30. Mr. Rodriguez-Ortega did not wish to retire before he reached his 25 years of
    service, and told David Rich that he felt that he would be "failing himself" if he did.

31. It was also suggested that Mr. Rodriguez-Ortega apply for FMLA, which would be
    applied retroactively back to July 2019, from the time it had previously expired.

32. Mr. Rodriguez-Ortega had taken leave related to his condition more than 12 times
    between July 2019 and February 2020 but had never been asked or expected to re-
    apply.

33. Mr. Rodriguez-Ortega submitted his FMLA application dated March 5, 2020. This
    application clearly states that Mr. Rodriguez-Ortega was hospitalized for FMLA
    qualifying condition February 20-23 2020.

34. This certification also stated that Mr. Rodriguez-Ortega's medical condition would
    cause flareups during which he was unable to work and potential hospitalizations.

35. Despite actual knowledge and medical certification in the FMLA application that
    Mr. Rodriguez-Ortega was absent due to hospitalization and recovery for his FMLA
    covered condition, David Rich marked Mr. Rodriguez-Ortega Absent Without Leave

(AWOL) on February 21, part of February 27, and all of Feb 28.  The other days Mr. Rodriguez-Ortega was absent were designated FMLA.

36. David Rich testified in his deposition and in Mr. Rodriguez-Ortega's State Personnel Appeal Hearing that he marked Mr. Rodriguez-Ortega AWOL because he had not called in within 30 minutes of his shift.

37. David Rich directed Mr. Rodriguez-Ortega to complete a second intermittent leave application, which was dated March 16, 2020, for the same health condition as the first.

38. David Rich marked the later March 16 FMLA as FMLA #1, while marking the earlier application as FMLA #2.  David Rich designated FMLA #1 to be from July 2019 to July 2020, and FMLA #2 to be from March 2020 to July 2020.

39. On March 9, 2020, Joshua Rodriguez observed Vandora Montoya and Chasedy Vela with a stun gun in the office and was directed by his manager to address a violation of the DOH Weapons Policy with them.

40. On March 9, 2020 Vandora Montoya allegedly contacted Ken Lucero to discuss a violation of DOH Weapons policy by herself and another employee.  For unknown reasons, this conversation somehow turned into an allegation of sexual harassment by Joshua Rodriguez.

41. Violation of the DOH Weapons policy is the same level violation as sexual harassment, and can result in immediate termination.

42. Ken Lucero asked David Rich for permission to investigate Joshua Rodriguez for sexual harassment.  He did not ask for permission to investigate the violation of weapons policy.  David Rich gave permission to investigate Joshua Rodriguez only

approximately two weeks after Joshua Rodriguez had informed him of Jeremy Rodriguez-Ortega's hospitalization.

43. At the time of their interviews, none of the witnesses were even asked to corroborate each other's stories, yet Mr. Lucero treated each allegation as though it had been substantiated.

44. By the time Mr. Lucero interviewed Mr. Rodriguez on March 12, 2020, it was clear that he had already decided Mr. Rodriguez was guilty of all allegations by the way he conducted his "interview."  He even claimed in this interview to have recordings as evidence against Mr. Rodriguez, which was not true.

45. There was no actual evidence that Mr. Rodriguez had done any of the things he was accused of doing, and the complaints against him came from two of his employees who he had just confronted about a dangerous weapons policy violation for which they may be disciplined, up to and including termination, and an ex-employee who was known not to like him.

46. Witness Julie Roybal has since stated that she felt coerced into saying negative things about Mr. Rodriguez, and refused to be involved with Defendants State Personnel action against him.

47. By accusing Mr. Rodriguez of harassment, Ms. Montoya and Ms. Vela avoided any attention or investigation of their weapons policy violation, and received no discipline.

48. On or about March 17, Governor Michelle Lujan Grisham enacted a stay at home order, and all state employees began working from home.

49. Jeremy Rodriguez-Ortega received no communication or email from David Rich or any of his coworkers while he was working from home.  He was assigned no work as his coworkers had been assigned his job duties.

50. Although he dutifully logged into the DOH VPN Service "Apache Guacamole" He became used to receiving no email and did not notice when his email password expired, and observed no prompts which would alert him to any issue.

51. Defendant Lucero completed his investigation of Joshua Rodriguez on or around April 14, 2020.  His report contained many misrepresentations and fraudulent statements, all of which went against Mr. Rodriguez.  This report specifically recommended Mr. Rodriguez's termination.

52. The report also found that Ron Ulibarri and Dr. Chris Novak had also violated DOH policy, but made no specific recommendation as to discipline for their infractions.  Neither received any discipline.

53. None of Mr. Rodriguez's management listened to any of the investigation interviews or otherwise confirmed Defendant Lucero's investigation findings, and all of them relied completely on his representations.

54. On April 24, 2020 at 2:31pm, David Rich approved a Notice of Contemplated Action to be issued to Joshua Rodriguez intending to terminate him from employment for alleged substantiation of sexual harassment.  To support this action, Defendants used two unrelated verbal counseling statements from 2016.

55. DOH Discipline Policy specifically only allows counseling statements to be retained for only one year, and may be used for progressive discipline only during this time.  Defendants retained and used these records in clear violation of policy.

56. Just after this, also on April 24, 2020 at 4:30pm David Rich sent an angry email to Jeremy Rodriguez-Ortega, claiming that Mr. Rodriguez-Ortega had failed to complete an NCA he was assigned.  In this email, Mr. Rich tells Mr. Rodriguez-Ortega that he can no longer use Flex time saying "FLEX time is available when a staff member has the workload to support the flexing of time but you do not. The other team members picked up 99% of your job assignments when your health degraded. Now you are doing better but there is absolutely no measurable work output from you."

57. He ends this email with the statement "The ERD NCA needs to be resolved, edited correctly, and well documented and on my desk by the end of the day on Monday, April 27."

58. David Rich sent no earlier emails to Mr. Rodriguez-Ortega while he was working from home.

59. Mr. Rodriguez-Ortega was not aware that he was not receiving emails, and so didn't receive and couldn't respond to the April 24 email.

60. On April 28, 2020, Joshua Rodriguez was issued his NCA intending to terminate him.

61. Instead, on May 1, 2020, David Rich sent another angry email, stating he had had no response to the email from a week earlier and that he was advised to have an NCA to him by April 20 instead of the real date of April 27 in the only other email Rich had sent to Mr. Rodriguez-Ortega.

62. Although David Rich was aware that Mr. Rodriguez-Ortega suffered from a serious health condition, he did not attempt to call or text Mr. Rodriguez-Ortega when he did not receive a response to this email.

63. The email states "You have now been working from home at least seven (7) weeks with literally no work results to speak of nor have you communicated with me or the team as to what you are doing."

64. It continues "You were given a huge opportunity, out of our concern for your rapidly deteriorating health, in late February when you had at least 3 incidents of AWOL. The opportunity, rather than face discipline, was to look into medical retirement, et cetera vs. facing up to a 5-day suspension for your AWOLs. You were then provided time to research and look into all these matters and the only option you pursued was ALD and to update your FMLA. My extreme leniency with you is coming to end."

65. The 3 incidents of AWOL that David Rich refers to in his email are days that Mr. Rodriguez-Ortega was hospitalized and absent due to his FMLA covered condition.

66. It continues "Unfortunately your conduct and lack of work effort has left are extremely busy office to be handled by four rather than five employees. Your teammates have picked up **all** your work assignments, without complaint and we are all having to work harder because you are not. Going forward you are to send me an appointment invite in Outlook for any and all medical appointments with an explanation as to how you code your time in SHARE for the appointment."

67. On May 4, 2020, Mr. Rodriguez-Ortega sent David Rich a text notifying him that Mr. Rodriguez-Ortega had just arrived at the Emergency Department at Santa Fe

Presbyterian Hospital. Mr. Rodriguez-Ortega was given heavy duty painkillers while in the ER.

68. After being released, Mr. Rodriguez-Ortega was prescribed a continuing dose of heavy-duty narcotic painkillers which helped make him more comfortable but also kept him incapacitated.

69. Mr. Rodriguez-Ortega returned to the ER on May 8, 2020, and was again stabilized enough to be released home while under continued narcotic pain treatment which kept him incapacitated.

70. On May 13, Mr. Rodriguez-Ortega returned to the hospital for treatment and was admitted for 3 days, and was released on May 15th.

71. David Rich did not attempt to contact Mr. Rodriguez-Ortega during his absence to find out how he was doing or when he would be back to work, or whether he was invoking FMLA for the duration of his absence.

72. David Rich also did not try to contact Joshua Rodriguez, who was still employed by NMDOH to find out where Mr. Rodriguez-Ortega was, as he had done in February.

73. Instead, David Rich waited 11 days until the late afternoon on May 15, 2020 before he called Mr. Rodriguez-Ortega to yell at him about being AWOL.  He did not ask whether Mr. Rodriguez-Ortega had invoked FMLA, or ask how he was doing, but threatened Mr. Rodriguez-Ortega with termination for being AWOL.

74. David Rich had told Mr. Rodriguez-Ortega that if he didn't call in within 30 minutes of his shift that he couldn't use FMLA, and would be marked AWOL.

75. Mr. Rodriguez-Ortega had been too incapacitated to call in within 30 minutes of his shift each day, and he had been explicitly told by David Rich that he would be marked AWOL if he tried to use his FMLA without having done so.

76. As Mr. Rodriguez-Ortega had just been released from the hospital, and he was still under the influence of heavy duty narcotic medication at the time of this phone call, he instead told Mr. Rich that he had been teleworking, not in the hospital, to try to avoid being marked AWOL and getting terminated for not calling in each day within 30 minutes of his shift.

77. Defendant Rich's actions created a situation where Mr. Rodriguez-Ortega could not invoke his FMLA for additional recovery even though he had just been released from the hospital.

78. On May 19, 2020 Joshua Rodriguez was issued a Notice of Final Action, terminating his employment with DOH. There was no actual evidence that Mr. Rodriguez had committed any of the alleged violations of policy. Mr. Rodriguez appealed to the State Personnel Board.

79. The same day, David Rich emailed Mr. Rodriguez-Ortega thanking Mr. Rodriguez-Ortega for contacting PERA about early retirement.

80. Only a few weeks later, on June 30, 2020, Defendant Rich issued a Notice of Contemplated Action to Mr. Rodriguez-Ortega for being AWOL, Negligent in his duties. Failure to be ready to work, and insubordinate.

81. The AWOL dates used to support the NCA were the dates Mr. Rodriguez-Ortega was hospitalized and incapacitated in May 2020.

82. Mr. Rodriguez-Ortega's new FMLA year would have started again in July.

83. Jeremy Rodriguez-Ortega was terminated effective July 25, 2020 for being AWOL, Negligent in his duties. Failure to be ready to work, and insubordinate.

84. The State Personnel Board accepted Joshua Rodriguez's appeal of his termination on June 12, 2020.

85. ALJ Haught issued her recommended decision to uphold Mr. Rodriguez's termination on August 18, 2021

86. Mr. Rodriguez filed the following and other objections and exceptions to the recommended decision.

87. In the absence of actual evidence, the Board's determination was largely based on a subjective finding of credibility.  However, ALJ Haught's rulings artificially and improperly guaranteed that the accusers would appear more credible.

88. ALJ Haught allowed complainant Vandora Montoya to testify while holding her newborn.  This made Ms. Montoya seem particularly honest and vulnerable, and made cross examination more difficult.

89. In his hearing, Joshua Rodriguez was prevented from attacking the credibility of his accusers as they were "not on trial."  This violated Mr. Rodriguez's due process rights.

90. In addition to these and other unfair rulings, ALJ Haught incorrectly determined that one of Mr. Rodriguez's comparators had not been found to have harassed anyone, when the investigation report clearly finds that he had.

91. Defendants produced hundreds of pages of records of similarly situated employees who were accused and investigated for sexual harassment.  Not a single one showed a career employee being terminated on a single finding of sexual harassment.

92. Even if the finding was proper that Mr. Rodriguez had more likely than not done what he was accused of, it is per se unreasonable to discipline him more harshly than ALL others in his position.

93. Mr. Rodriguez was denied notice and an opportunity to address any shortcomings, and received no progressive discipline.

94. ALJ Haught received a raise after the hearing, but before she issued her decision.

95. This raise required a change in position title from admin law judge/adjudicator supervisor to Attorney Supervisor.  This would require approval by SPO Directors.

96. The State Personnel Board issued its final decision for Joshua Rodriguez on September 17, 2021.  Mr. Rodriguez appeals that decision herein.

97. The following day, on September 18, 2021, Defendant Padilla started as SPO Deputy Director.

98. While the decision to appoint her was being made, SPB was adjudicating Mr. Rodriguez's appeal.

99. At no time did Defendants disclose Defendant Padilla's appointment to SPO to Plaintiff or to the Court.

100. Defendant Padilla was a material witness for the defense in Mr. Rodriguez-Ortega's appeal.

101. ALJ Baca received a raise after working only 5 months at SPB, after the appeal hearing, but before he made his decision.  It is exceedingly unusual to receive a raise so soon after starting in a new position in state government.

102. His raise required changing his position title from Admin Law Judge to Attorney III, which would require approval by the SPB directors.

103. ALJ Baca judged the credibility of his boss, Defendant Padilla's testimony.

104. SPB ignored Mr. Rodriguez's requests to transmit his administrative record to the court. Defendant Padilla was deputy director at that time.

105. The State Personnel Board issued its final decision for Jeremy Rodriguez-Ortega upholding his termination on December 10, 2021. Defendant Padilla was deputy director at that time. Mr. Rodriguez appeals that decision herein.

106. SPB ignored Mr. Rodriguez-Ortega's request to transmit the administrative record to the court. Defendant Padilla was deputy director at that time.

107. Defendant Padilla was promoted to SPB Director in July 2022.

108. SPB intentionally transmitted the administrative records to the closed state court case, before finally transmitting the records to this federal court on September 27, 2023.

## COUNT I: FMLA INTERFERENCE

(Defendant Rich in his individual capacity)

109. Plaintiffs reincorporate and reallege the paragraphs above as though set forth fully herein.

110. 29 C.F.R. § 825.220 "An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act."

111. Defendant Rich was Mr. Rodriguez-Ortega's direct supervisor, acts in the interest of Defendant DOH, supervised and controlled his work schedules and conditions of employment including making the termination decision and signing his termination notice. Defendant Rich qualifies as an employer under the FMLA.

112. Mr. Rodriguez-Ortega had worked more than 12 months for the State of New Mexico, and had worked 1250 hours in the previous 12 months in or around July 2019 when he was eligible for a new year of FMLA coverage.

113. 29 C.F.R. § 825.300(b)(1) requires "when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days…. Employee eligibility is determined (and notice must be provided) at the commencement of the first instance of leave for each FMLA-qualifying reason in the applicable 12-month period."

114. Mr. Rodriguez-Ortega took leave related to his medical condition at least 12 times before February 2020, which gave Defendants actual notice of his qualifying condition.  In addition, he had qualified for FMLA during the previous year for the same condition.

115. Each time Mr. Rodriguez-Ortega took leave related to his conditions, it put Defendants on notice of his need for FMLA leave.

116. 29 C.F.R. § 825.303(a) "When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case."

117. 29 C.F.R. § 825.303(c) "[I]f an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone."

118.   29 C.F.R. § 825.220 "Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave."

119.   Defendant Rich unlawfully interfered with Mr. Rodriguez-Ortega's FMLA rights by telling Mr. Rodriguez-Ortega that he must call in each day within 30 minutes or he would not be able to invoke his FMLA leave.

120.   Defendant Rich unlawfully interfered with Mr. Rodriguez-Ortega's FMLA rights when they marked Mr. Rodriguez-Ortega AWOL while Mr. Rodriguez-Ortega was in the hospital, and while he was recovering from hospitalization, preventing Mr. Rodriguez-Ortega's ability to use paid annual or donated leave for those periods.

121.   Defendant Rich unlawfully interfered with Mr. Rodriguez-Ortega's FMLA rights when they gave him the choice between a 5-day suspension for being AWOL or taking early disability retirement.

122.   Defendant Rich unlawfully interfered with Mr. Rodriguez-Ortega's FMLA rights by making Mr. Rodriguez-Ortega believe that he could not invoke his FMLA rights for his May 2020 incapacitations, hospitalization, and recovery if he did not call in every day within 30 minutes of his shift.

123.   Defendant Rich unlawfully interfered with Mr. Rodriguez-Ortega's FMLA rights when they terminated him for his FMLA protected absences.

124.   Defendant Rich unlawfully interfered with Mr. Rodriguez-Ortega's FMLA rights when they terminated him before he could apply for a new year of FMLA coverage.

125.   As a result of Defendant Rich's illegal retaliation, Mr. Rodriguez-Ortega suffered, and continues to suffer, damages.

## COUNT II: FMLA RETALIATION

(Defendant Rich in his individual capacity)

126. Plaintiffs reincorporate and reallege the paragraphs above as though set forth fully herein.

127. 29 C.F.R. § 825.220  "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies."

128. Defendant Rich unlawfully retaliated against Mr. Rodriguez-Ortega for exercise of his FMLA rights when he gave Mr. Rodriguez-Ortega the choice between a 5-day suspension for being AWOL during his FMLA leave or taking early disability retirement.

129. Defendant Rich unlawfully retaliated against Mr. Rodriguez-Ortega for exercise of his FMLA rights by taking away his job duties and reassigning them to other staff after his February 2019 hospitalization.

130. Defendant Rich unlawfully retaliated against Mr. Rodriguez-Ortega for exercise of his FMLA rights by terminating his employment.

131. As a result of Defendant Rich's illegal retaliation, Mr. Rodriguez-Ortega suffered, and continues to suffer, damages.

## COUNT III: VIOLATION OF HUMAN RIGHTS ACT: DISABILITY AND SERIOUS MEDICAL CONDITION

(Defendants Rich, Lucero and DOH)

132. Plaintiffs reincorporate and reallege the paragraphs above as though set forth fully herein.

133. The New Mexico Human Rights Act (NMHRA) NMSA 1978 § 28-1-7(A) states that it is an unlawful discriminatory practice for "an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition"

134. Mr. Rodriguez-Ortega has PKD and pancreatitis which qualify as disabilities and/or serious medical conditions under the HRA.

135. Mr. Rodriguez has PKD which qualifies as a disability and/or serious medical condition under the HRA.

136. Defendants discriminated against Mr. Rodriguez when they unlawfully asked him to disclose his disability before he was interviewed for a promotion in December 2018.

137. Defendants unlawfully discriminated and retaliated against Mr. Rodriguez when they failed to promote him after he refused to disclose his disability.

138. Mr. Rodriguez engaged in protected activity when he reported to Defendant Rich discrimination surrounding his interview for a promotion in December 2018.

139. Defendant Rich Discriminated and Retaliated against Mr. Rodriguez for his protected activity when he identified Mr. Rodriguez by name and work location to other DOH employees, including Defendant Lucero.

140. Defendant Lucero discriminated and retaliated against Mr. Rodriguez when he only sought approval to investigate Mr. Rodriguez and did not seek approval to investigate Ms. Montoya or Ms. Vela when all three employees were accused of violating group 3 offenses which could also result in termination.

141. Defendant Lucero discriminated against Mr. Rodriguez when he conducted a biased investigation designed to terminate him in which every inference immediately went against him.

142. Defendant Lucero discriminated against Mr. Rodriguez when he added extra allegations to Mr. Rodriguez's NCA and NFA that no witness had actually accused him of.   This demonstrated that Mr. Lucero wanted Mr. Rodriguez to appear as guilty as possible.

143. Defendants discriminated against Mr. Rodriguez when they only disciplined him, and none of the others who were alleged to have facilitated and/or ignored his alleged behavior.

144. Defendants discriminated against Mr. Rodriguez when they used the frequency of his bathroom trips to determine that he was responsible for knocking on the women's bathroom door.

145. Defendants Lucero and Rich discriminated and retaliated against Mr. Rodriguez when they violated DOH policy by failing to remove and then using years old counseling statements to support their termination desire.

146. Defendants discriminated and retaliated against Mr. Rodriguez when they disparately applied discipline, terminating him instead of suspending him for his first alleged violation.

147. Defendants Rich and Padilla discriminated and retaliated against Mr. Rodriguez-Ortega when they stripped and reassigned Mr. Rodriguez-Ortega's job duties to other staff after Mr. Rodriguez-Ortega's hospitalization in February 2020.

148. Defendants Rich and Padilla Discriminated and retaliated against Mr. Rodriguez-Ortega when they threatened to suspend Mr. Rodriguez-Ortega for 5 days for allegedly being AWOL while in the hospital and recovering.

149. Defendants Rich and Padilla Discriminated against Mr. Rodriguez-Ortega when they pressured Mr. Rodriguez-Ortega to take early disability retirement "out of our concern for your rapidly deteriorating health."

150. Defendant Rich Discriminated against Mr. Rodriguez-Ortega when he placed Mr. Rodriguez-Ortega under increased scrutiny because Mr. Rodriguez-Ortega's disability application and/or approval was not happening quickly enough.

151. Defendant Rich Discriminated against Mr. Rodriguez-Ortega by failing to provide larger monitors for telework to accommodate Mr. Rodriguez-Ortega's disability related vision problems.

152. Defendant Rich Discriminated and retaliated against Mr. Rodriguez-Ortega by ridiculing and disciplining Mr. Rodriguez-Ortega for not being able to see that his password was expired on his small personal laptop screen.

153. Defendant Rich Discriminated and retaliated against Mr. Rodriguez-Ortega by terminating his employment for leave while hospitalized and recovering from hospitalization.

154. Defendant decisionmakers relied completely on Defendant Lucero's retaliatory recommendation and biased report of investigation when making the decision to terminate Mr. Rodriguez.

155. Plaintiffs, twin brothers who had worked a combined 33+ years for the State of New Mexico, and who both suffered from the same disabling health condition, were fired within only 2 months of each other.

156. As a result of Defendants' illegal actions, Plaintiffs suffered, and continue to suffer, damages.

## COUNT IV: BREACH OF IMPLIED CONTRACT

### (Defendant DOH)

157. Plaintiffs reincorporate and reallege the paragraphs above as though set forth fully herein.

158. Joshua Rodriguez was issued two counseling statements for failing to report an altercation between two employees in 2016.  It remains unclear why two were issued for the same infraction.

159. Mr. Rodriguez signed a policy acknowledgement for the DOH Disciplinary Action Policy on October 20, 2014.

160. Defendant DOH's Disciplinary Action Policy Policy defines counseling statements "Counseling statements may be either verbal or written. Verbal counseling statements must be documented by the supervisor. Written statements may be on the DOH counseling form and should include generalized information about the concern or infraction and expected correction."

161.  It requires that "A copy of the documented counseling is to be retained in the supervisor's soft file for the employee for **up to one year and may be used as the basis for progressive discipline <u>during this time frame</u>**." (emphasis added)

162.  There is no requirement that an employee must request that a counseling statement be removed from their file after one year for this to apply.

163.  Defendants termination attempt came nearly 4 years after these counseling statements were issued.

164.  These counseling statements should no longer have existed, nor could they be used to support a termination.

165.  This policy created an implied contract between Defendants and Mr. Rodriguez as it included obligations and benefits for both parties and Mr. Rodriguez reasonably relied on the terms being equitably and consistently applied.

166.  Defendants breached their implied contract with Mr. Rodriguez when they used these statements to support counseling in violation of their written policy prohibiting this use.

167.  Defendants breach their implied contract when they did not equitably apply discipline and only disciplined Mr. Rodriguez for alleged violations.

168.  As a result of Defendants' breach, Mr. Rodriguez suffered, and continues to suffer, damages.

## COUNT V: BREACH OF GOOD FAITH AND FAIR DEALING

(Defendant DOH)

169.  Plaintiffs reincorporate and reallege the paragraphs above as though set forth fully herein.

170.  Defendants owe Mr. Rodriguez a duty of good faith and fair dealing.

171.  Defendants breached this duty when they used past counseling statements after more than a year and failed to timely remove them from his file as required.

172.  Defendants breached this duty when they disparately applied discipline more harshly to Mr. Rodriguez than to other similarly situated employees.

173.  As a result of Defendants' breach, Mr. Rodriguez suffered, and continues to suffer, damages.

## COUNT VI: VIOLATION OF THE WHISTLEBLOWER PROTECTION ACT

(Defendant DOH)

174.  Plaintiffs reincorporate and reallege the paragraphs above as though set forth fully herein.

175.  The New Mexico Whistleblower Protection Act states: "A public employer shall not take any retaliatory action against a public employee because the public employee:   A.   communicates to the   public employer or a third-party information about an action or a failure to act that the public employee believes in good faith constitutes an unlawful or improper act;"

25

176. Joshua Rodriguez reported to Defendants that he, and potentially others, were being asked to disclose their medical conditions before being interviewed for positions at DOH.

177. Mr. Rodriguez believed, in good faith, that this was a violation of law and/or policy.

178. Decisionmakers relied completely on Defendant Lucero's recommendation and biased report of investigation when making the decision to terminate Mr. Rodriguez.

179. Defendants shared Mr. Rodriguez's name and work location and the fact that he might sue them in emails to each other.

180. Defendants illegally retaliated against Mr. Rodriguez by singling him out for investigation while simultaneously ignoring the violations of others.

181. Defendants conducted a biased, inaccurate and heavily one-sided interview with the purpose of finding Mr. Rodriguez guilty of policy violations.

182. Defendants terminated Mr. Rodriguez from his employment, in direct violation of law.

183. As a result of Defendants' breach, Mr. Rodriguez suffered, and continues to suffer, damages.

### COUNT VII: PETITION FOR WRIT OF CERTOIARI

(Plaintiff Joshua Rodriguez)

184. Plaintiffs reincorporate and reallege the paragraphs above as though set forth fully herein.

185. Pursuant to NMSA 1978 § 39-3-1.1, Rule 1-074 NMRA, and NMSA 1978 § 10-9-18, Plaintiff Joshua Rodriguez hereby appeals his termination to District Court.

186.  NMSPB has no jurisdiction over the NMHRA.

187.  Joshua Rodriguez was a career state employee, and had been employed by
      NMDOH for 12 years at the time of his termination.

188.  The State Personnel Board's decision was upheld Josh Rodriguez's Termination on
      September 17, 2021.

189.  It adopted Judge Janelle Haught's findings of fact and her conclusions of law.

190.  Judge Haught allowed Mr. Rodriguez's accuser to hold, cuddle and care for her
      newborn child while giving testimony and while her credibility was being
      determined by Judge Haught.

191.  In the hearing, Judge Haught repeatedly prevented Mr. Rodriguez from attacking
      his accuser's credibility, but then expressly found her to be more credible than Mr.
      Rodriguez.

192.  There was no actual evidence of any wrongdoing on Mr. Rodriguez's part, and no
      evidence he had ever been given notice or given an opportunity to correct his
      behavior.

193.  Mr. Rodriguez demonstrated that Defendants had not terminated other similarly
      situated employees who had been found to have likely committed the same
      violations as Mr. Rodriguez.

194.  The SPB decision was arbitrary and capricious that Defendant DOH's discipline
      was reasonable when it terminated Mr. Rodriguez more harshly than ALL other
      similarly situated employees.

195.  All other career employees at NMDOH were given notice and a chance to correct
      their behavior.

196. Mr. Rodriguez has the right to equitable application of discipline.

197. DOH policy requires discipline to be applied in a fair and equitable manner.

198. Defendant DOH produced no evidence that Mr. Rodriguez's termination was fair or equitable.

199. Due process guarantees equitable treatment and uniform application of discipline.

200. Mr. Rodriguez was the only employee Defendants terminated for the alleged infractions without first applying progressive discipline, and Defendants violated their own policy by using old and unrelated counseling statements that could only be used with a year of their issue.

201. The SPB Decision that Defendant DOH's inequitable discipline was reasonable is not supported by substantial evidence and is contrary to law.

## COUNT VIII: PETITION FOR WRIT OF CERTOIARI

(Plaintiff Jeremy Rodriguez-Ortega)

202. Plaintiffs reincorporate and reallege the paragraphs above as though set forth fully herein.

203. Pursuant to NMSA 1978 § 39-3-1.1, Rule 1-074 NMRA, and NMSA 1978 § 10-9-18, Plaintiff Jeremy Rodriguez-Ortega hereby appeals his termination to District Court.

204. The SPB does not have jurisdiction over violations of the NMHRA.

205. Jeremy Rodriguez-Ortega was a career State Employee for around 21 years, and at the time of his termination, was employed by NMDOH.

206. He timely appealed his termination to the State Personnel Board.

207. On October 14, 2021, Administrative Law Judge Aaron Baca erroneously, and in conflict with federal law, determined that there was good cause for termination and recommended this finding to the State Personnel Board.

208. On December 10, 2021, the New Mexico State Personnel Board approved Judge Baca's Recommended Decision that there was just cause for Mr. Rodriguez-Ortega's termination.

209. This decision, and the conclusions of law and fact relied on in reaching it, are contrary to law, clearly erroneous and not supported by substantial evidence.

210. Judge Baca made no finding on whether or not Plaintiff's FMLA rights had been violated in reaching his conclusion, and it does not appear that they have jurisdiction to make such a determination.

211. Defendants did not establish by a preponderance of the evidence that there was no need for progressive discipline, that Mr. Rodriguez-Ortega had any notice or opportunity to correct any deficiencies.

212. Defendants did not establish by a preponderance of the evidence that any of Mr. Rodriguez-Ortega's alleged infractions, even if true, were sufficiently serious to terminate him.

213. Mr. Rodriguez-Ortega's termination was because of and in directly in violation of his rights under the FMLA, and because of his disability and serious health condition, and as a matter of law, cannot lawfully be used as a reason to terminate him.

## COUNT IX: VIOLATION OF 42 U.S.C. § 1983

(L. Teresa Padilla, individual capacity)

214. Plaintiffs reincorporate and reallege the paragraphs above as though set forth fully herein.

215. Plaintiffs have a well-established property interest in their state jobs.

216. Plaintiffs have a well-established due process right to fair and impartial triers of fact in the adjudication of their appeals.

217. 1.7.12.10(A) NMAC requires "The hearing officer shall not participate in any adjudicatory proceeding if, for any reason, the hearing officer cannot afford a fair and impartial hearing to either party. Either party may ask to disqualify the designated hearing officer for cause by filing an affidavit of disqualification within 14 calendar days of the order. The affidavit must state the particular grounds for disqualification. The designated hearing officer shall rule on motions for disqualification and an appeal of the ruling may be made to the board within 14 calendar days of the hearing officer's ruling."

218. Defendant Padilla's undisclosed new employment with SPB while they were adjudicating employment decisions by her and/her subordinates creates the appearance of impropriety and bias.

219. Janelle Haught, hearing officer for Mr. Rodriguez's appeal, allowed Mr. Rodriguez's accuser to hold and feed her newborn baby while testifying against him. This denied him a fair trial by biasing the determination of credibility. A young mother breastfeeding her newborn will seem more credible and sympathetic.

220. In addition, this witness was on continuous FMLA leave at the time Defendants required her to give testimony, which is interference with her federal rights.

221. Both ALJ's, at different times, received raises after hearing Plaintiffs' appeals, but before making their decision to uphold their terminations. These raises required fundamental changes to their job titles, and required the involvement of SPO directors. This creates the unmistakable appearance of impropriety.

222. Plaintiffs had a well-recognized due process right to their public employment.

223. Procedural due process requires a fair and impartial hearing before a trier of fact who is disinterested and free from any form of bias or predisposition regarding the outcome of the case.

224. Defendant Padilla acted under color of law when she knowingly accepted a transfer to SPO while it was adjudicating decisions made by herself and her direct subordinates.

225. Neither Defendant Padilla nor her agents informed Plaintiffs of this transfer.

226. Both SPO Hearing Officers received raises after hearing Plaintiff's appeal, but before issuing their decisions.

227. SPO Hearing Officers became the subordinates of Defendant Padilla.

228. Judging the credibility of the testimony of one's own superior creates the appearance of bias and impropriety.

229. Defendants repeated failure to disclose Defendant Padilla's new roles at SPO creates the appearance of impropriety and bias at SPO.

230. SPO Staff involved with Plaintiffs adjudications are subordinates of Defendant Padilla and act in her interest.

231. SPO's otherwise inexplicable refusal to transmit Plaintiffs' administrative records to the federal court, in a clear effort to interfere with this litigation, creates the appearance of impropriety.

232. SPO's refusal, under Defendant Padilla's leadership, to transmit the records of appeals in this case intentionally interferes with Plaintiff's due process appeal rights.

233. Only after Defendant Padilla retired did SPO finally transmit the records to this Court on September 27, 2023 after first inexplicably and intentionally filing them into the closed state court case.

234. Defendant Padilla's involvement and/or interference with SPO's adjudication and handling of Plaintiffs' administrative records denied Plaintiffs' due process to which they were entitled.

235. Plaintiffs have suffered damages from this violation of their constitutional rights.

## **Prayer For Relief**

Wherefore, Plaintiffs respectfully request:

A.  A trial by a jury of 6 persons on all issues so triable;

B.  Judgement against Defendants;

C.  Back pay;

D.  Compensatory Damages;

E.  Liquidated Damages;

F.  Punitive Damages;

G.  Attorney's fees, expenses, costs, pre-judgement and post-judgement interest as may

be provided by law

H.  Any other relief this court deems just or proper.

Respectfully Submitted.

Heather Burke
Attorney at Law
1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com