IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY RODRIGUEZ-ORTEGA AND
JOSHUA RODRIGUEZ,

       Plaintiff,

v.                                                          No. 1:21-cv-01129-JCH-KK

DAVID RICH, KENNETH LUCERO,
in their official and individual capacities,
L. THERESA PADILLA, in her individual capacity,
AND NEW MEXICO DEPARTMENT OF HEALTH

       Defendants.

## DEFENDANTS DAVID RICH, KENNETH LUCERO, AND NEW MEXICO DEPARTMENT OF HEALTH'S MOTION FOR SUMMARY JUDGMENT ON JEREMY RODRIGUEZ-ORTEGA'S CLAIMS

Defendants David Rich and Kenneth Lucero in their official and individual capacities, and

the New Mexico Department of Health ("DOH") (collectively, "DOH Defendants"), respectfully

move by and through counsel, Miller Stratvert P.A. (Paula G. Maynes and Andrew Q. Varan), for

summary judgment on Plaintiff Jeremy Rodriguez-Ortega's claims of Family Medical Leave Act

("FMLA") Interference [Doc. 106, pp. 16-18], FMLA Retaliation [Doc. 106, p. 18], and violations

of the New Mexico Human Rights Act ("NMHRA") [Doc. 106, p. 19-23].[1]  A party may move for

summary judgment, demonstrating "that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  This case presents no

genuine dispute over the material facts that Plaintiff Rodriguez-Ortega's failed to exercise or

---

[1] As part of his Amended Complaint, Plaintiff Rodriguez-Ortega also brings a Petition for Writ of Certiorari pursuant to NMSA 1978, Section 39-3-1.1 and Rule 1-074 NMRA. [Doc 106, pp. 28-29]  DOH Defendants address that petition in their separate Response to Plaintiffs' Statement of Appellate Issues [Doc. 151].

1

attempt to exercise his FMLA rights for his time absent without leave ("AWOL") during May 2020, and his subsequent termination for it. Accordingly, Plaintiff cannot demonstrate FMLA Interference or Retaliation, and Defendants are entitled to judgment on those claims as a matter of law. Likewise, this case presents no genuine questions of fact regarding Plaintiff's NMHRA claim that he was terminated for the legitimate, nondiscriminatory reason of failing to report for work during a period he claimed he could work. Therefore, DOH Defendants are entitled to judgment as a matter of law on the claims of Plaintiff Jeremy Rodriguez-Ortega.

## I.    UNDISPUTED MATERIAL FACTS

In support of their Motion for Summary Judgment, DOH Defendants proffer the following undisputed material facts ("UMFs"):

(1)    Plaintiff Rodriguez-Ortega was employed by the New Mexico DOH Human Resources ("HR") starting in June 2018. [Doc. 106, ¶¶ 1-2, 12-13] As part of his duties with HR, Mr. Rodriguez would assist in preparing disciplinary actions for individuals for reasons including time fraud. [Ex. A, Deposition of Jeremy Rodriguez-Ortega ("Plaintiff's Deposition"), 19:2-25]

(2)    Plaintiff Rodriguez-Ortega suffers from a congenital kidney disease. [Doc. 106, ¶ 11] Accordingly, Plaintiff Rodriguez-Ortega requested and received intermittent FMLA leave certifications from DOH in July 2019, and again in March 2020. [Doc. 106, ¶¶ 14, 37-38]

(3)    At no point in his DOH employment did Mr. Rodriguez-Ortega ever ask for an accommodation, including a larger computer monitor while teleworking. [Ex. A, Plaintiff's Deposition, 97:16-21; 191:7-12]

(4)    In February 2020, Plaintiff Rodriguez-Ortega was hospitalized for several days. During this period, he did not notify DOH or his supervisor, Mr. David Rich. [SPO Appellate

Record 20-028 RP ("20-028 RP") 132 ¶¶ 11-12]  DOH marked Plaintiff as being Absent Without Leave ("AWOL") for one day.  [*Id.* ¶ 13]

(5)     In March 2020, Mr. Rich and Ms. Padilla, the DOH Director of Human Resources met with Plaintiff to discuss his job, his medical needs, and the benefits available to him, including FMLA and medical retirement.  [20-028 RP 132 ¶ 14]  Neither Mr. Rich nor Ms. Padilla instructed Plaintiff he had to medically retire.  [20-028 RP 133 ¶ 15]

(6)     During March 2020, Mr. Rich directed Plaintiff to inform DOH of his whereabouts and when he would be using FMLA benefits.  [20-028 RP 133 ¶ 18]

(7)     In March 2020, the public health emergency caused by the COVID-19 pandemic caused DOH to instruct many of its employees to begin teleworking.  [20-028 RP 133 ¶¶ 21, 23] DOH adopted teleworking policies, which Plaintiff Rodriguez-Ortega agreed to including working an eight-hour schedule Monday to Friday and being accessible by phone and internet within a reasonable time period.  [20-028 RP 133-34 ¶¶ 22, 25-26]  Plaintiff was provided instructions on how to connect remotely to Department computers, though he was not provided a department computer for home use.  [*Id.* ¶¶ 24, 27]  As part of the teleworking acknowledgement, Plaintiff agreed to report any equipment failure to DOH IT staff. [20-028 RP 134 ¶ 29]

(8)     On April 21, 2020, Plaintiff Rodriguez-Ortega's email password expired.  [20-028 RP 134 ¶ 30]  He did not report that his email had expired to IT nor take steps to renew his password for 24 days, only re-establishing email communications on May 15, 2020.  [*Id.* ¶¶ 30-31]

(9)     At some point in late March or early April, Plaintiff Rodriguez-Ortega was assigned a disciplinary action on behalf of the DOH Epidemiology and Response Division, which was due on April 20, 2020.  [20-028 RP 135 ¶¶ 33, 35]  Plaintiff missed the deadline, which prompted Mr.

3

Rich to follow up by email on May 1, providing a new deadline on May 4, 2020. [20-028 RP 135 ¶ 37]

(10)     On May 4, 2020, Plaintiff Rodriguez-Ortega went to Santa Fe Presbyterian Hospital's Emergency Department for treatment of his kidney disease. Plaintiff Rodriguez-Ortega notified his supervisor, Mr. David Rich, via text of the following: "It's a given I won't be able to telecommute the rest of the day. I'll keep you posted." [Doc. 106, ¶ 67; 20-028 RP 285] He was released the same day. [Ex. A, Plaintiff's Deposition, 152:5-17]

(11)     Plaintiff Rodriguez-Ortega returned to the emergency room on May 8, 2020, as well as a stay between May 13 and May 15, 2020. [Doc. 106, ¶¶ 69-70]

(12)     At no point between May 5 and May 15, 2020 did Plaintiff Rodriguez-Ortega notify Mr. Rich or anyone at DOH of a continued inability to work or that he would be invoking FMLA leave. [Ex. A, Plaintiff's Deposition, 207:17-208:16]

(13)     Plaintiff Rodriguez-Ortega did not make contact with DOH until Mr. Rich called him on May 15, 2020. [Doc. 106, ¶ 73]

(14)     Plaintiff Rodriguez-Ortega was not prescribed any additional medications during his May 2020 hospital stays beyond what he was normally prescribed. [Ex. A, Plaintiff's Deposition, 156:2-8]

(15)     Plaintiff Rodriguez-Ortega was able to let his parents know he was returning to the hospital by telephone, and likewise had the necessary physical and mental capacities to make a phone call following his release from the hospital. [Ex. A, Plaintiff's Deposition, 229:22-230:8; 231:7-23]

(16)    On May 26, 2020, Plaintiff Rodriguez-Ortega stated to Mr. Rich by email that he was ready to work for nine of the ten days between the time between May 5 and May 15, 2020. [20-028 RP 288-289]

(17)    On July 11, 2020 in response to the Notice of Contemplated Action providing notice of DOH's intent to terminate Plaintiff's employment because of his AWOL status from May 5 to May 15, Plaintiff did not indicate he intended to exercise his FMLA rights. [20-028 RP 301-303]

(18)    On July 22, 2020, Plaintiff Rodriguez-Ortega was terminated for "inappropriate and unprofessional behavior, negligence in the performance of [his] duties, insubordination, failure to be ready to work, and for being Absent Without Leave (AWOL) four (4) or more time within a 12 month period." [20-028 RP 1]

(19)    On August 21, 2020, Plaintiff appealed his termination to the New Mexico State Personnel Board. [20-028 RP 6-7]  In his provided narrative, he did not indicate that he intended to exercise his FMLA rights during May 2020. [*Id.*]

(20)    The New Mexico State Personnel Board heard Plaintiff Rodriguez-Ortega's appeal of his termination and found just cause for his dismissal and that dismissal was the appropriate response. [20-028 RP 145-156]

(21)    Plaintiff Rodriguez-Ortega has since admitted he did not provide timely notice to DOH to exercise his FMLA rights. [Ex. A, Plaintiff's Deposition, 207:17-208:16]

## II.    SUMMARY OF PROCEEDINGS

Plaintiff's claims arise from his termination from DOH in July 2020. [Doc. 106 ¶ 83] Plaintiff Rodriguez-Ortega was employed by New Mexico DOH as an HR Labor Analyst starting in 2018. [Ex. A, Plaintiff's Deposition, 16:1-10]  Plaintiff would assist in disciplinary matters,

5

and he was the point of contact regarding any civil rights-type questions that employees might have. [Ex. A, Plaintiff's Deposition, 28:15-25] As part of Plaintiff's typical workflow at DOH, assignments would come in directly from supervisors at his assigned department of DOH, the Epidemiology Department. [Ex. A, Plaintiff's Deposition, 27:13-17] Ordinarily, he would receive approximately twenty emails a day. [Ex. A, Plaintiff's Deposition, 146:16-23]

Plaintiff began having difficulties through his employment beginning in early 2020, as documented in the New Mexico State Personnel Board's Final Decision on Plaintiff's appeal of his termination. [20-028 RP 126-166, 183-184] In February 2020, Plaintiff underwent a three-day stay in the hospital, without contacting DOH about his absences. [Doc. 106 ¶¶ 23-24] Plaintiff did not have an active FMLA certification through DOH at the time, so his time was coded as AWOL. [Doc. 106 ¶¶ 31, 33] DOH, at Plaintiff's request, subsequently applied his later FMLA certification retroactively for the February hospital stays. [*Id.*] Plaintiff contends that following these events, his supervisors, Mr. David Rich and Ms. Tereasa Padilla, initiated a meeting with him in March 2020 and instructed him to stop working on any DOH matters. [Doc. 106 ¶ 29; 20-028 RP 141; Ex. A, Plaintiff's Deposition, 87:2-89:10] According to Plaintiff, he was told to work only on applying for retirement benefits, but he was to continue to indicate eight hours a day of work on his timesheets. [Ex. A, Plaintiff's Deposition, 87:2-89:10] Mr. Rich has testified that he did have a conversation with Plaintiff, but he told Plaintiff he was "expected to continue his normal work, but that another member of the [Human Resources Bureau] office was assigned to serve as a backup to provide Mr. Rodriguez-Ortga with coverage during his medical absences." [20-028 RP 142]

In March 2020, the COVID-19 pandemic began and the DOH HR staff were sent home to telework. Plaintiff received and signed a telework agreement on March 12, 2020 that explained

6

he was expected to work on the same duties and maintain the same communication that he had in the office. [Ex. A, Plaintiff's Deposition, 49:15-54:5] Nonetheless, on April 21, 2020, Mr. Rodriguez-Ortega let his email password expire. [20-028 RP 133-34 ¶ 30] He did not reestablish email communications until twenty-four days later on May 15, 2020. [20-028 RP 133-34 ¶ 31] In deposition, Plaintiff was unable to produce an answer for why he finally requested IT assistance in getting back into his email after twenty-four days of not receiving email. [Ex. A, Plaintiff's Deposition, 210:24-211:20] At some point in late March or early April 2020, Mr. Rodriguez-Ortega was tasked with drafting a disciplinary action by April 20, 2020, which he did not complete on time, nor did meet the subsequent deadline he was given of April 24, only finally completing the assignment on May 4. [20-028 RP 135 ¶¶ 33-37] As part of the Recommended Decision following a hearing on the evidence, ALJ Baca found that Mr. Rodriguez-Ortega did almost no work for the Department in March, April, or May 2020. [20-028 RP 137 ¶ 49] Plaintiff has admitted in testimony that he did essentially no work for DOH from March to May 2020. [Ex. A, Plaintiff's Deposition, 205:5-9]

On May 4, 2020, Plaintiff checked himself into the hospital, and he texted Mr. Rich the following: "It's a given I won't be able to telecommute the rest of the day. I'll keep you posted." [Doc. 106, ¶ 67; 20-028 RP 285] Plaintiff's testimony has indicated that he meant for that passing comment to be notice he was invoking FMLA leave for an indefinite period. [20-028 RP 136 ¶ 40] Plaintiff was released from the hospital the same day. [Ex. A, Plaintiff's Deposition, 152:5-17] Plaintiff returned to the emergency room on May 8, 2020, as well as a stay between May 13 and May 15, 2020. [Doc. 106, ¶¶ 69-70] After Plaintiff's continued lack of contact, Mr. Rich contacted him on May 15 asking where he had been, as well as why he never responded to emails on April 27 and May 1 asking about the status of the aforementioned disciplinary action

7

assignment. [20-028 RP 136 ¶ 43] Mr. Rodriguez-Ortega replied with a photograph of his computer screen showing no emails in his Outlook inbox, but the bottom page clearly displays that the inbox needed entry of a password, meaning he would not be receiving any emails until the password was entered. [20-028 RP 136-37 ¶¶ 42-44] On May 22, 2020, Mr. Rich emailed Plaintiff stating that he was "unable to account for [Plaintiff's] time from Tuesday, May 5, 2020 through May 15." [20-028 RP 291-292] Mr. Rich directly confronted Plaintiff's lack of communication and work productivity, stating: "You weren't logged into and/or responding to emails, communicating with me or your co-workers, providing any work output at all so please explain to me what you should be paid for." [*Id.*] Plaintiff replied, stating that he was "in fact ready for the remaining 9 days of the remaining 10 day pay period of May 5, 2020 through May 15, 2020." [20-028 RP 288-289]

Plaintiff Rodriguez-Ortega was provided a Notice of Contemplated Action by DOH on June 30, 2020 indicating the DOH's intention to terminate his employment as an HR Training and Labor Specialist-A because of "inappropriate and unprofessional behavior, negligence in the performance of your duties, insubordination, failure to be ready to work, and for being Absent Without Leave (AWOL) four (4) or more times within a 12-month period." [20-028 RP 273-277] A Notice of Final Action was issued on July 22, 2020 on substantially similar grounds. [20-028 RP 1-3]

Plaintiff appealed his decision to the New Mexico State Personnel Board, [20-028 RP 6-7] and the appeal was heard remotely via Zoom by ALJ Baca over June 10 and 11, 2021. [20-028 RP 126-127] On October 14, 2021, ALJ Baca filed a Recommended Decision that determined Mr. Rodriguez-Ortega to have been fired for just cause for abandoning his job in May 2020 and failing to report for duty for nine consecutive workdays. [20-028 RP 126-165, 138, 157 ¶ 11]

8

Similarly, ALJ Baca determined that the severity of Mr. Rodriguez-Ortega's dismissal was appropriate because the DOH policy on being AWOL for four or more days is not discretionary. [20-028 RP 155-156, 156 ¶ 12] The Recommended Decision also explicitly provides ALJ Baca's personal credibility determinations on Plaintiff's account, indicating that Plaintiff Rodriguez-Ortega's version of events "makes no sense on multiple accounts," was "unconvincing," "lacks credibility," and was "nonsensical." [20-028 RP 146-147, 152] The Decision noted that Plaintiff's testimony that he had been stripped of his duties did not make sense given he remained logged into the Department's remote access system after April 24, 2020. [20-028 RP 152] The ALJ determined that Mr. Rodriguez-Ortega was fired with cause for his May 2020 AWOL dates, as well as insubordination for his failure to abide by the telecommuting policy and failure to draft the disciplinary action in a timely manner. [20-028 RP 146-148, 149-154] On December 10, 2021, the Board adopted the Recommended Decision. [20-028 RP 182-184]

Plaintiff subsequently filed his Complaint, alleging FMLA Interference, FMLA Retaliation, and violations of the NMHRA. [Doc. 106, pp. 16-18, 19-23]

## III. LAW REGARDING FMLA INTERFERENCE, FMLA RETALIATION, AND NMHRA VIOLATION

### (A)   Family Medical Leave Act (FMLA)

"The necessary elements of an FMLA interference claim are: (1) plaintiff's entitlement to FMLA leave; (2) an adverse action by plaintiff's employer, which interfered with plaintiff's right to take FMLA leave; and (3) a showing that the employer's adverse action was related to a plaintiff's exercise of, or attempt to exercise, his FMLA rights." *Bass v. Potter*, 522 F.3d 1098, 1102 n.5 (10th Cir. 2008). In demonstrating that an employer's adverse action was not related to the exercise or attempted exercise of FMLA rights, the employer is "not required to show that the adverse employment decision and the employee's FMLA request are completely and entirely

unrelated." *Dalpiaz v. Carbon Cnty., Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014) (internal quotation marks and citations omitted). Tenth Circuit precedent holds that "an indirect causal link between dismissal and an FMLA leave is an inadequate basis for recovery." *Id.* (internal quotation marks and citations omitted). "For instance, if an employee's work-performance problems are related to the same illness that gave rise to FMLA leave, the employee may still be terminated based on his work-performance problems, regardless of the indirect causal link between the FMLA leave and the adverse decision." *Id.*

"To establish a prima-facie case for FMLA retaliation, a plaintiff must show that: (i) he or she engaged in activity protected under the act; (ii) subsequently suffered adverse action by the employer; and (iii) a causal connection existed between the employee's activity and the adverse action." *Darr v. N.M. Dep't of Game & Fish*, 403 F. Supp. 3d 967, 997 (D.N.M. 2019) (internal quotation marks and citation omitted). "[A] retaliation claim may be brought when the employee successfully took FMLA leave, was restored to [his or] her prior employment status, and was adversely affected by an employment action based on incidents post-dating [his or] her return to work." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287-88 (10th Cir. 2007) (citations omitted).

FMLA provides expansive protections for individuals invoking their FMLA rights. 29 C.F.R. § 825.220. The determination of FMLA leave status should be a dialogue between employee and employer, which includes duties and responsibilities on the employer. "The employer's decision to designate leave as FMLA-qualifying must be based only on information received from the employee or the employee's spokesperson," which could include the employee's spouse, partner, or family member. 29 C.F.R. § 825.301(a). "In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave,

the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA-qualifying." *Id.* "An employee giving notice of the need for FMLA leave does not need to expressly assert rights under the Act or even mention the FMLA to meet his or her obligation to provide notice, though the employee would need to state a qualifying reason for the needed leave," subject to the other restrictions for employee notice. 29 C.F.R. § 825.301(b). "If there is a dispute between an employer and an employee as to whether leave qualifies as FMLA leave, it should be resolved through discussions between the employee and the employer." 29 C.F.R. § 825.301(d).

However, FMLA places requirements for notice on the employee as well. "An employee must provide the employer at least 30 days advance notice before FMLA leave is to begin if the need for the leave is *foreseeable* based on . . . planned medical treatment for a serious health condition of the employee or of a family member." 29 C.F.R. § 825.302(a) (emphasis added). "For foreseeable leave due to a qualifying exigency notice must be provided as soon as practicable, regardless of how far in advance such leave is foreseeable." *Id.* "When the approximate timing of the need for leave is *not foreseeable*, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a) (emphasis added). "Notice may be given by the employee's spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally." *Id.* "An employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request. Depending on the situation, such information may include that a condition renders the employee unable to perform the functions of the job." 29 C.F.R. § 825.303(b). "The employer will be expected to obtain any additional required

11

information through informal means. An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying." *Id.*

"When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(b). "However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone." *Id.* "[I]f an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone." 29 C.F.R. § 825.303(c). "If an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA–protected leave may be delayed or denied." *Id.*

**(B)     New Mexico Human Rights Act (NMHRA)**

The New Mexico Human Rights Act provides several statutory causes of action for certain acts of discrimination. *See* NMSA 1978, § 28-1-7. Plaintiffs cite Section 28-1-7(A) in their Complaint, which provides that a prohibited action under the NMHRA includes:

> an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of . . . serious medical condition

[Doc. 106, ¶ 133]

When a plaintiff does not produce "direct evidence of intentional discrimination" New Mexico state Courts use an articulation of the *McDonnell Douglas* burden-shifting method for "analyzing a discrimination claim based upon indirect evidence." *Garcia v.*

12

*Hatch Valley Pub. Sch.*, 2018-NMSC-020, ¶ 28, 458 P.3d 378; *Smith v. FDC Corp.*, 1990-NMSC-020, ¶¶ 10-11, 109 N.M. 514, 787 P.2d 433. *See generally*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). Under this method, a plaintiff must establish a "prima facie case of discrimination, which creates a presumption that discrimination has occurred." *Garcia*, 2018-NMSC-020, ¶ 28. "A prima facie case of discrimination may be made out by showing that the plaintiff is a member of the protected group, that he was qualified to continue in his position, that his employment was terminated, and that his position was filled by someone not a member of the protected class." *Smith*, 1990-NMSC-020, ¶ 11. "The defendant then may rebut the presumption by producing evidence that the plaintiff was dismissed based on a nondiscriminatory motivation. Once rebutted, the presumption of discrimination drops from the case." *Id.* (internal quotation marks and citations omitted). "The plaintiff may then offer evidence that the employer's proffered nondiscriminatory reason was pretextual or otherwise inadequate." *Id.* (internal quotation marks and citations omitted). At that point, the burden of proving a pretextual reason for firing "merges" with the plaintiff's "ultimate burden of proof of intentional discrimination." *Id.* ¶ 9 n.1.

**IV.    ARGUMENT**

**(A)    No genuine issue of material fact exists on Plaintiff's FMLA Interference claims because he did not exercise or attempt to exercise his FMLA rights during the period for which he was terminated for being AWOL.**

Plaintiff Rodriguez-Ortega's FMLA claims present no genuine issue of material fact in that he invoked his FMLA leave for May 4, 2020, then did not provide proper notice of FMLA leave for the remainder of the time between May 5 and May 15, 2020. "The necessary elements of an FMLA interference claim are: (1) plaintiff's entitlement to FMLA leave; (2) an adverse action by

plaintiff's employer, which interfered with plaintiff's right to take FMLA leave; and (3) a showing that the employer's adverse action was related to a plaintiff's exercise of, or attempt to exercise, his FMLA rights." *Bass*, 522 F.3d at 1102 n.5. Plaintiff Rodriguez-Ortega cannot argue claims of FMLA interference when he did not invoke his FMLA rights as soon as practicable. In essence, there is no "exercise of, or attempt to exercise" Plaintiff's FMLA rights. *See Bass*, 522 F.3d at 1102 n.5. No rational jury would find that any of the DOH Defendants interfered with Plaintiff Rodriguez-Ortega's right to take FMLA leave when in response to the accusation that he had failed to report for work for nine of ten days between May 4 through May 15, 2020, Plaintiff Rodriguez-Ortega claimed he "was in fact ready for the remaining 9 days." At that point, DOH did not need to further inquire about Plaintiff's exercise of his FMLA rights when he explicitly denied intending to do so.

No DOH Defendant interfered with Plaintiff's right to take FMLA leave. Firstly, some of Plaintiff's allegations of "interference," such as his duty to call-in pursuant to DOH's policy, are just his obligations under 29 C.F.R. § 825.303(b). [*See* Doc. 106 ¶¶ 119, 122] Secondly, it is not an interference to terminate Plaintiff for an absence that *theoretically* could be covered by FMLA. FMLA interference, from its elements, requires the Plaintiff to "exercise . . . or attempt to exercise, his FMLA rights." *Bass*, 522 F.3d at 1102 n.5. Plaintiff claims that he was terminated following an abstract "FMLA protected absence" [Doc. 106 ¶ 123], but he has produced no genuine issue of fact that he properly invoked or attempted to exercise his FMLA rights before he was terminated.

Perhaps Plaintiff could have invoked his FMLA rights for some or all of his time absent from work between May 5 and May 15, 2020. But he did not. No evidence or testimony indicates Plaintiff made any invocation of FMLA rights in his call with Mr. Rich on May 15, 2020. He denied needing FMLA on May 26, 2020 immediately following the absences. [20-028 RP 288-

14

289, 289]  Upon DOH providing Plaintiff a Notice of Contemplated Action that he was going to be fired, Plaintiff did not claim that he meant to invoke FMLA for the time period in question; he instead claimed that he had been stripped of his duties and blamed Mr. Rich for not contacting him sooner. [20-028 RP 301-303]  Even in his Notice of Appeal to the State Personnel Board filed on August 21, 2020, Plaintiff still did not claim that those dates were FMLA qualifying or that he meant to invoke his rights under FMLA. [20-028 RP 6-7]

Plaintiff only claimed that he was invoking his FMLA rights following his termination, which does not meet the standard for "as soon as practicable" under 29 C.F.R. § 825.303. "[A]s soon as practicable" was on May 5, 2020 following discharge if he meant to invoke FMLA for that day.  Plaintiff's duty to contact DOH accrued when he was released from the hospital given he has testified he could hold and operate a phone on release. [Ex. A, Plaintiff's Deposition, 231:7-21] If he could not personally call in, he still had an obligation to use a spokesperson, such as his partner of twenty-six years, his parents, or his brother who also worked for DOH at the time. *See* 29 C.F.R. § 825.303(a).  Even if Plaintiff returned to the hospital on May 8 or May 13, 2020, he had a duty to inform DOH and follow their call-in procedures. Given Plaintiff did not do so, he was subject to having his later claims for FMLA leave denied. *See* 29 C.F.R. § 825.303(c). Though Plaintiff may have had good reason not to be actively working, he had no excuse for not contacting DOH to inform them he needed to take FMLA leave.

Even for an emergency hospitalization, Plaintiff had a duty to let DOH know as soon as practicable that he was invoking FMLA leave. *See* 29 C.F.R. § 825.303(a).  He did not do so, and DOH did nothing to interfere with that right.  Plaintiff Rodriguez-Ortega acknowledges that he did not notify Mr. Rich or DOH about those repeated hospitalizations. [Ex. A, Plaintiff's Deposition, 207:3-208:16]  Plaintiff testifies that when the hospital released him, he could hold a phone, see

the phone, and dial the phone. [Ex. A, Plaintiff's Deposition, 231:7-21] His duty to contact DOH under 29 C.F.R. § 825.303(c) accrued at that point. Plaintiff apparently did not have any trouble answering the phone when Mr. Rich called him on May 15. Plaintiff had a duty to let DOH know he needed his time coded as FMLA leave as soon as practicable, and he did not do so. *See* 29 C.F.R. § 825.303(a). The Federal Code of Regulations does not provide an FMLA notice option by pure omission. At some point, possibly upon inquiry by an employer, an employee has to provide some response indicating they are taking leave for an FMLA qualifying reason. *See* 29 C.F.R. § 825.302(a), (b). That Plaintiff made no effort to notify DOH, then misrepresented his work capacity means that there is no genuine issue of material fact that DOH did not to interfere with Plaintiff's rights under FMLA.

Plaintiff's story from the Complaint that he felt pressured not to take FMLA leave makes no sense, and no reasonable jury would believe his version of events based on his inconsistent allegations and prior statements. In the Complaint, Plaintiff insinuates that he felt pressured not to take FMLA leave by Mr. Rich, and that allegedly constituted FMLA interference. [Doc. 106 ¶ 122] Even from the face of the Complaint, this makes no sense considering that he also claims he was stripped of his duties at DOH. [Doc. 106 ¶ 147] Mr. Rich would have no reason to care whether Plaintiff was taking FMLA leave. According to Plaintiff, all his duties had been reassigned to other DOH analysts. [Doc. 106 ¶ 147] Mr. Rich would have no reason to care if Plaintiff was not "working" if he had nothing to work on. Plaintiff did not reach out to any other individuals in DOH's hierarchy about alleged improper influence by Mr. Rich. Even without evidence presented, no reasonable juror would believe that Mr. Rich pressured Plaintiff into not claiming FMLA leave when he really needed it.

Looking at Plaintiff's representations to DOH by email on May 26, 2020, Plaintiff cannot claim any sort of improper influence or pressure by any of the DOH Defendants. When Mr. Rich accuses Plaintiff of not working for nine of ten days between May 4 to May 15, Plaintiff claims he could have worked those days. Plaintiff had nothing to lose in claiming FMLA time at that point. He was accused of not being ready to work—in essence, being AWOL—a fireable offense. He was already accused of a fireable offense; Mr. Rich or any other DOH agent would have had no more pressure or leverage to apply beyond the threat of termination for being AWOL and, further, committing time fraud. Practically speaking, Plaintiff had nothing to lose in claiming FMLA leave at that moment. If there was ever a time to claim FMLA leave, he should have done so then. DOH was already applying maximum pressure to Plaintiff by threat of termination for being AWOL in the May 22 email, and yet he still did not invoke FMLA leave. Whatever reason he had not to claim FMLA leave was not because of any pressure by DOH. Yet, in Mr. Rich's May 22, 2020 email to Plaintiff, Mr. Rich states he changed Plaintiff's coded time when Plaintiff was in the hospital on May 4 from telework to FMLA leave—without being asked to do so. Plaintiff had not even used the term "FMLA" in his text to Mr. Rich when he stated he would be unable to work on May 4. The idea that Mr. Rich was pressuring Plaintiff to not take FMLA leave is unreconcilable with the fact that Mr. Rich coded Plaintiff's time as FMLA on his behalf without being asked.

Plaintiff has testified that he thinks Mr. Rich attempted to pressure him not to take FMLA leave, and he would likely testify so at trial. However, this is not a case that pits Plaintiff's testimony against Mr. Rich's testimony. The evidence pits Plaintiff's testimony against Mr. Rich's testimony *and* the years-long paper record that includes Plaintiffs' own Complaint as well as Plaintiff's statements made prior to his termination and closer to the alleged dates of interference. No reasonable juror would believe Plaintiffs' internally inconsistent version of events. There is

17

no genuine issue of fact that Plaintiff did not exercise or attempt to exercise his FMLA rights, and therefore no DOH Defendants interfered with Plaintiff's rights under the FMLA.

**(B)     No genuine issue of material fact exists on Plaintiff's FMLA Retaliation claims because he did not he engage in protected FMLA activity.**

"To establish a prima-facie case for FMLA retaliation, a plaintiff must show that: (i) he or she engaged in activity protected under the act; (ii) subsequently suffered adverse action by the employer; and (iii) a causal connection existed between the employee's activity and the adverse action." *Darr*, 403 F. Supp. 3d 967, 997 (D.N.M. 2019) (internal quotation marks and citation omitted).  Plaintiff alleges that he suffered three kinds of "adverse action" against him in response to his exercise of FMLA rights, none of which present genuine issues of material fact. [Doc. 106 ¶¶ 128-130]  Most of Plaintiff's allegations produce no genuine issue as to whether an adverse action actually occurred to Plaintiff.  Plaintiff's termination, admittedly an adverse action in isolation, was following his express disavowal of needing FMLA leave as described in the prior section.

The first instance, again only from the face of the Complaint, does not allege any actual adverse action happening to Plaintiff. [Doc. 106 ¶ 128]  Plaintiff alleges that following time away from work in February 2020 that was initially coded as AWOL and retroactively changed to FMLA leave by DOH [*Id.* ¶¶ 26-27, 31], Mr. Rich gave Plaintiff the choice to "look into medical retirement, et cetera vs. facing up to a 5-day suspension for your AWOLs.  You were then provided time to research and look into all these matters and the only option you pursued was ALD and to update your FMLA." [*Id.* ¶ 64]  Instead of Plaintiff being *fired* for being AWOL for more than four days despite not timely and appropriately exercising his FMLA rights, DOH retroactively counted the time as FMLA.  The adverse action that Plaintiff suffered was that he had to "look into" medical retirement and disability options.  Plaintiff can produce no evidence that this

requirement was in any way pressuring him to leave or retire. Even though Mr. Rich's email implies that he thought Plaintiff's chosen route was less than what Mr. Rich thought would be best for Plaintiff, Mr. Rich does not indicate any sort of adverse action or hostility towards Plaintiff besides the already-occurring reprimand for not completing an assigned disciplinary action. No reasonable jury would think that Plaintiff suffered any adverse action as a result of him taking FMLA time in February 2020.

Plaintiff's second FMLA retaliation action as alleged suffers a similar problem: DOH allegedly stripping Plaintiff of his duties while still paying him a full salary is not an adverse action. [Doc. 106 ¶ 130] As a preliminary matter, that action—even if it were true—is not adverse. Plaintiff's allegation is not that he was demoted or reduced in compensation. He retained his original compensation until termination for reasons, as explained, were unrelated to his FMLA leave.

Further, Plaintiff has produced no evidence besides his own testimony that he was "stripped" of his duties. DOH Defendants agree that Mr. Rich and Ms. Padilla met with Plaintiff to discuss his options in March 2020, including medical retirement, following his hospitalization in February. However, Plaintiff admits he made no record of the separate conversation where Mr. Rich and Ms. Padilla took away his duties. [Ex. A, Plaintiff's Deposition, 106:3-9] No one else was at the meeting to document it; he does not remember when the meeting occurred; he made no record of the meeting; he received no written confirmation from Mr. Rich or Ms. Padilla. [Ex. A, Plaintiff's Deposition, 148:13-149:14] But in email on April 24, 2020 between only Mr. Rich and Plaintiff, Mr. Rich still expected Plaintiff to be performing job duties including a disciplinary action for the Epidemiology Department. [20-028 RP 287-288] Mr. Rich makes no indication of the purported prior agreement where Plaintiff would be "stripped" of his duties. From that email,

19

Mr. Rich apparently expected Plaintiff to continue with his duties that he was paid for by the State. Plaintiff's version of events requires a jury to believe that two seasoned HR supervisors decided to pressure an employee against his will into medical retirement, without giving him a deadline, all while also pressuring him to commit time fraud against the State of New Mexico. Then, according to Plaintiff, Mr. Rich inexplicably became upset with him for not doing an assignment and not having access to his work email, despite the fact that he purportedly had no more assignments from DOH. [Doc. 106 ¶ 60-66] The only evidence Plaintiff has to support his claim is his own testimony. Yet, to quote ALJ Baca in his Recommended Decision to the State Personnel Board, Plaintiff's version of events "makes no sense on multiple accounts," was "unconvincing," "lacks credibility," and was "nonsensical." [20-028 RP 146-147, 152]  Plaintiff's story makes no logical sense, and a finder of fact has already found him to lack credibility.  No reasonable jury would believe him either.  Under either rationale, there is no genuine issue of material fact that Plaintiff did not suffer an adverse action in being "stripped" of his duties, actually or allegedly.

Lastly, Plaintiff claims that he was fired for taking FMLA leave. [Doc. 106 ¶ 130]  As addressed in the prior section, Plaintiff's employment through DOH was terminated because he did *not* exercise or attempt to exercise his FMLA rights. While employed by DOH, Plaintiff denied needing to take FMLA leave for the absences for which he was fired for being AWOL.  He only produced his story that those supposed to be FMLA-covered absences after his employment was terminated by DOH.  Upon reasonable inquiry by DOH, Plaintiff *denied* needing to take FMLA leave.  Accordingly, there is no issue of material fact that Plaintiff was not terminated for his invocation of rights under FMLA.

**(C)     No genuine issue of material fact exists on Plaintiff's NMHRA claim that he was terminated for the legitimate, nondiscriminatory reasons of not reporting for work and insubordination.**

No genuine issue of fact exists regarding Plaintiff's NMHRA violation. Though Plaintiffs proffer several methods by which they claim Plaintiff Rodriguez-Ortega was discriminated against, Plaintiffs are only seeking damages related to Plaintiff Rodriguez-Ortega's termination. [Ex. A, Plaintiff's Deposition, 192:21-194:25] Plaintiff was fired for just cause, as already determined by the New Mexico State Personnel Board. [20-028 RP 183-184] Plaintiff has produced no evidence of discriminatory intent besides his own inconsistent testimony, and even that testimony relies on his own inferences. Even under *Smith* and *McDonnell Douglas* burden shifting, Plaintiff does not have enough to warrant a presumption of discrimination in his favor. *See Smith*, 1990-NMSC-020, ¶¶ 10-11; *McDonnell Douglas Corp*, 411 U.S. 792. Compared to the vast amount of evidence indicating Plaintiff was fired for being AWOL from his job and insubordination, there is no genuine issue of material fact regarding Plaintiff's NMHRA claim to submit to a jury.

Plaintiff has produced no direct evidence of discrimination against Plaintiff Rodriguez-Ortega. "Direct evidence demonstrates on its face that the employment decision was reached for discriminatory reasons." *Danville v. Regional Lab. Corp.*, 292 F.3d 1246, 1249 (10th Cir.2002). Plaintiffs have not produced any statements, comments, or remarks by DOH or a DOH agent that would indicate any sort of discriminatory intent. The only direct evidence about Plaintiff's firing overwhelming indicates he was fired for being AWOL. [20-028 RP 126-166, 183-184] DOH maintains that it terminated Plaintiff Rodriguez-Ortega for his AWOL absences during a time period he claimed he was able to work, a determination upheld by the New Mexico State Personnel Board on the recommendation of an administrative law judge that heard evidence and found

against Plaintiff Rodriguez-Ortega. There is no direct evidence of discrimination for Plaintiff Rodriguez-Ortega to rely on.

Plaintiff Rodriguez-Ortega also has not demonstrated a prima facie case of discrimination. The parties do not dispute that Plaintiff is a member of a protected group and that his employment was terminated. Though Plaintiff's testimony indicates that he thinks he may have been qualified to continue employment, it is undisputed that Plaintiff Rodriguez-Ortega's position remained unfilled for over a year after his termination. Due to the COVID-19 state hiring freeze, Plaintiff Rodriguez-Ortega's position was still open over a year later at the time of his hearing before ALJ Baca in July 2021. [Audio Transcript of ALJ Hearing for Jeremy Rodriguez-Ortega, Day 1 TR 1:07:29-55] As Plaintiff was dismissed after the hiring freeze began, DOH would have known that it could not replace Plaintiff and would effectively be short-staffed for an unknown amount of time. Though a prima facie case can be demonstrated through "other means," this is not a circumstance where another there was "misconduct nearly identical to that engaged in by one outside of the protected class who was nonetheless retained." *Smith*, 1990-NMSC-020, ¶ 11. Plaintiff has produced no other case where a DOH employee was permitted to remain on payroll despite producing essentially no work over the course of seven weeks. Especially as there were only three other labor analysts supervised by Mr. Rich, the sample size is small enough that he cannot demonstrate a comparison that yields a prima facie case of discrimination. [*See* Audio Transcript of ALJ Hearing for Jeremy Rodriguez-Ortega, Day 1 TR 1:07:29-55]

Even if Plaintiff demonstrated a prima facie case of discrimination, DOH's nondiscriminatory reason of firing Plaintiff for his AWOL days sufficiently establishes that there can be no presumption of discrimination in this case. *See Smith*, 1990-NMSC-020, ¶ 11. DOH has provided ample evidence that Plaintiff Rodriguez-Ortega was terminated for a

nondiscriminatory reason, namely his several days of being AWOL as well as insubordination. The New Mexico State Personnel Board, following a full evidentiary hearing, already found DOH had just cause to terminate Plaintiff Rodriguez-Ortega's employment. [20-028 RP 183-184] Even if Plaintiff thought he was invoking unexpected FMLA leave in May 2020, he still had obligations to let his employer know as soon as practicable under 29 C.F.R. § 825.303(a). Plaintiff was AWOL because following his release from the hospital made no contact with his employer and produced no work until his supervisor contacted him. Plaintiff was capable of picking up the phone with Mr. Rich called on May 15, which meant he was capable of picking up the phone to call Mr. Rich or DOH when he knew he wanted to invoke FMLA leave.

Plaintiff has provided no evidence of discrimination based on his medical condition. He never requested an accommodation for his work, either while in the office or after the telework policy began. [Ex. A, Plaintiff's Deposition, 97:16-21] Plaintiff was hospitalized in May 2020, but he failed to uphold his obligation to DOH to notify them as soon as practicable as required to by law. He could have done so through his partner, brother, or parents as a "spokesperson" under 29 C.F.R. § 825.303(a), but he did not. When DOH did contact him, he claimed in writing that he was capable of working. [20-028 RP 287-288, 288] During that time period, Plaintiff was asked by the DOH Epidemiology Department to assist with drafting a disciplinary matter, and either intentionally or negligently, he did not perform that action until two separate deadlines had passed. [20-028 RP 135 ¶¶ 33-37] Plaintiff was not fired because of his protected class; he was fired because he did no work for DOH over the course of seven weeks—a fact he admits to—all while continuing to draw a paycheck from the State. [Ex. A, Plaintiff's Deposition, 205:5-9] No genuine issue of material fact exists regarding the basis of Plaintiff's NMHRA claim.

23

## V.    CONCLUSION

No genuine issue of material fact exists about whether Plaintiff Rodriguez-Ortega exercised or attempted to exercise his FMLA rights in the time permitted under 29 C.F.R. § 825.303. That Plaintiff did not exercise or attempt to exercise his rights means that he cannot sustain a claim for FMLA Interference or Retaliation, and accordingly, DOH Defendants are entitled to judgment as a matter of law on those claims. Likewise, no genuine issue of material fact exists regarding the reason for Plaintiff's dismissal from DOH: Plaintiff was fired because he admittedly did no work for three months, culminating in nearly two weeks of not calling in. Plaintiff has produced no evidence of discrimination based on his medical condition, and therefore he cannot sustain his NMHRA Violation claim either. DOH Defendants are entitled to judgment as a matter of law on all of Plaintiff Rodriguez-Ortega's claims. Therefore, DOH Defendants respectfully request the Court grant their Motion for Summary Judgment and any further relief that the Court deems just and proper.

Respectfully submitted,

MILLER STRATVERT P.A.

By:/s/ Paula G. Maynes
   Paula G. Maynes
   Andrew Q. Varan
   *Attorneys for Defendants*
   P.O. Box 1986
   Santa Fe, NM 87504-1986
   Telephone: (505) 989-9614
   Email:  pmaynes@mstlaw.com
   Email:  avaran@mstlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of February, 2024, I filed the foregoing pleading electronically through the CM/ECF Filing system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Heather Burke
Attorney at Law
*Attorney for Plaintiffs*
1000 Cordova Place #24
Santa Fe, New Mexico 87505
Phone: (505) 428-9424
Email: heather@hburkelaw.com

Carol Shay
Joseph Haupt
*Attorney for Defendant Padilla*
Conklin, Woodcock & Ziegler, P.C.
320 Gold Ave., Suite 800
Albuquerque, NM 87102
Phone: (505) 224-9160
cds@conklinfirm.com

By: */s/ Paula G. Maynes*
        Paula G. Maynes