IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JEREMY RODRIGUEZ-ORTEGA AND
JOSHUA RODRIGUEZ,
    Plaintiffs,

v.                                               No. 1: 21-cv-01129-JCH-KK

DAVID RICH, KENNETH LUCERO,
in their official and individual capacities, L. TERESA
PADILLA, in her individual capacity,
AND NEW MEXICO DEPARTMENT OF HEALTH
    Defendants,

**PLAINTIFF'S RESPONSE IN OPPOSITION TO SUMMARY JUDGMENT**

    COMES NOW, Plaintiff Jeremy Rodriguez-Ortega, by and through his counsel of record, Heather Burke, with his Response in Opposition to Defendants Motion for Summary Judgment.

    As an initial matter, Defendants Motion improperly reargues their positions in response to the already completed briefing on Plaintiffs' Motion for Summary Judgment. Plaintiff references and realleges all facts and arguments in his Motion for Summary Judgment as though laid out fully herein. Defendants include little new evidence in support of their supposed "material facts" and continue to heavily rely on the administrative findings of fact which have been shown to be very likely the product of biased adjudication. It is unclear, procedurally, whether Defendants can file this Motion five months after Plaintiffs' Motion for Summary Judgment and re-argue the same disputes with different evidence. After all, they did not tell this

Court that this did not have sufficient evidence to respond at that time, and instead now they just rehash them.

### Response to Defendants' Material Facts:

1. Admit

2. Deny. Plaintiff had FMLA starting in July 2018, and should have been recertified in July 2019, but was not until March 2020, which was retroactively applied to July 2019. **[Doc 74 Ex 1 and 2]**

3. Deny. Plaintiff had was given larger dual monitors at his office because of his visual impairment. He was not provided larger monitors at home. **[Jeremy Rodriguez-Ortega testimony 06.1..2021 day 2 hearing 1:46:26-1:47:46]**

4. Dispute -- Plaintiff was marked AWOL for 3 days not one day, including the day that Mr. Rodriguez-Ortega's FMLA certifications stated he was in the hospital. Feb 21, 27, and 28. Notably, on the 27th he was marked AWOL for only part of the day, and the other part was FMLA. **[Doc. 74 Ex 10 pg 3 and 4]**

5. Admit in part and Deny in part. On or about March 4, Defendants met with Mr. Rodriguez-Ortega about his absences and job duties. Both Defendants Rich and Padilla instructed Plaintiff his only job duty was to focus on disability retirement. **[Jeremy Rodriguez-Ortega Affidavit]**

6. Deny. It's unclear what is even being asserted here. Until his two periods of incapacitation in February and May 2020, Mr. Rodriguez-Ortega had always notified Defendants of his whereabout and when he was using FMLA. Defendants improperly sought to make Mr. Rodriguez-Ortega promise that he wouldn't be incapacitated again.

7. Admit.

8. Dispute. Plaintiff did not know his password expired because he was not being sent emails because he had no job duties anymore. He reported this issue immediately when he was made aware of the problem. **[Jeremy Rodriguez-Ortega Affidavit]**

9. Disputed. There has been no evidence that Mr. Rodriguez-Ortega was ever assigned this disciplinary action despite repeated requests for production of it. There is merely an email from David Rich claiming so, sent on the same day only 2 hours after he approved the NCA for the termination of Joshua Rodriguez. **[Ex 1]** David Rich made no attempts to contact Mr. Rodriguez-Ortega by phone or by text, waited another week and sent another email about the imaginary job assignment. **[Jeremy Rodriguez-Ortega Affidavit]**

10. Admit.

11. Admit

12. Deny. Plaintiff invokes FMLA on May 4th and it was reasonable for DOH to conclude that further absences were likely FMLA covered. **[RP 25 FoF 40]**

13. Admit

14. Deny. Defendants mischaracterize Jeremy's medications as though he was always taking all of them at all times, but some were as needed. During flare ups, it is the combination of these medications, along with having to take narcotic pain medication which renders him incapacitated. **[Jeremy Rodriguez-Ortega Affidavit]**

15. Deny. Defendants grossly mischaracterize this testimony Plaintiff never testified that he had the mental capacity to make a phone call following his release, he did not. **[Jeremy Rodriguez-Ortega Affidavit]** Plaintiff never testified in his deposition

that he called his parents each and every time he went to the ER, he just testified that they were told when he went to the hospital, generally.

16. Admit - Plaintiff lied because he was terrified of losing his job. **[Jeremy Rodriguez-Ortega Affidavit]**

17. Admit. Plaintiff had been told he could not use his FMLA when he had not called in each day. He did not know this was wrong until he sought legal counsel. **[Jeremy Rodriguez-Ortega Affidavit] [Doc 74 Ex30 - Testimony of Jeremy Rodriguez-Ortega, SPB Hearing 6/11/21 01:41:13- 42:03]**

18. Admit inasmuch as those are the allegations of his termination

19. Deny. It is unclear what "narrative" is being referred to here. RP 6 and 7 are an entry of appearance for Laura Ackermann and a notice of case transfer. However, Plaintiff testified in his SPB hearing that he had attempted to invoke FMLA by telling David Rich that he had been in the hospital and Hearing Officer Baca found that Mr. Rodriguez-Ortega intended for his May 4th text to give notice of his ongoing need for FMLA. Defendants admitted this allegation in the FAC. **[FAC #76] [Jeremy Rodriguez-Ortega Affidavit] [Doc 74 Ex 30]**

20. Admit. Plaintiff is appealing that determination in the instant lawsuit, and alleging due process violations as Hearing Officer Baca was improperly judging a termination enacted by his own boss and judging her credibility as a witness as she was already working at SPO before his hearing. **[Ex 4]**

21. Deny. Plaintiff was incapacitated and in and out of the hospital 3 times from May 4 through 15. **[Jeremy Rodriguez-Ortega Affidavit]** His May 4 text was determined

to have given sufficient and reasonable notice of his need for FMLA leave by Hearing Officer Baca. **[RP 25 FoF 40]**

### Additional Material Facts

1. Plaintiff was hospitalized and incapacitated in February 2020. **[Mr. Rodriguez-Ortega Affidavit]**

2. Plaintiff did not work from February 21- 28, 2024. **[Jeremy Rodriguez-Ortega Affidavit] [Doc. 74 Ex 10]**

3. Plaintiff did not call in each day due to his incapacitation. **[Jeremy Rodriguez-Ortega Affidavit]**

4. Plaintiff was marked AWOL at random for three of the days he was absent but not the other days despite not calling in on any of them. **[Jeremy Rodriguez-Ortega Affidavit] [Doc. 74 Ex 10]**

5. Defendants Rich and Padilla gave Plaintiff his FMLA application and certification documents at the meeting they had with him. **[L. Teresa Padilla Deposition pg 54 line2 3-6 and 15-17] [Jeremy Rodriguez-Ortega Affidavit]**

6. These documents reflect that they were given to Plaintiff on March 4, 2020. **[Doc 74 Ex 1 pg 2 and ex 2 pg 2]**

7. Mr. Rodriguez-Ortega's job duties were stripped on or about March 4, 2020 so he was no longer receiving emails, texts, or work related phone calls, particularly when he began teleworking. **[Jeremy Rodriguez-Ortega Affidavit]**

8. In an attempt to give more notice than he had done in February, Mr. Rodriguez-Ortega notified Defendant Rich on his way to the ER on May 4, 2020.  **[FAC #67] [Doc 74 Ex 20 ]**

9. Defendant Rich made no effort to investigate whether Plaintiff's additional absences were FMLA protected and he marked each one as AWOL.  He did not call, text or email Plaintiff between May 4 and May 14th.  **[Doc 74. Exhibit 22 - Deposition of David Rich, Pg 100, lines 18-20]**

10. Mr. Rodriguez-Ortega was in and out of the hospital 3 times between May 4 and May 15 and was incapacitated during the entire period of time due to his conditions. **[Jeremy Rodriguez-Ortega Affidavit]**

11. In May 2020 hospital beds were in extremely short supply due to the Covid Pandemic and every effort was made to not admit patients unless absolutely necessary. **[Jeremy Rodriguez-Ortega Affidavit]**

12. Mr. Rodriguez-Ortega's conditions do not render him blind, mute or unable to move. **[Jeremy Rodriguez-Ortega Affidavit]**

13. Mr. Rodriguez-Ortega's conditions can cause extreme pain, confusion, nausea, and loss of mental acuity.  **[Jeremy Rodriguez-Ortega Affidavit]**

14. Defendant Rich approved all of Mr. Rodriguez-Ortega time, including the time after Mr. Rodriguez-Ortega's duties were stripped.  **[Ex 3]**

15. Defendant Padilla was already Deputy Director, and Hearing Officer Baca's superior, at the time she testified as a witness.  **[Ex 4]**

## Summary of Proceedings

Plaintiff was employed at the State of New Mexico for over 18 years. He was terminated after being twice incapacitated by his FMLA qualifying medical conditions. After the first flare up, Plaintiff was marked AWOL for 3 of the days he was hospitalized and/or incapacitated. When he returned to work, his job duties were stripped and he was told he must focus on disability retirement in lieu of discipline for the AWOLs. Plaintiff was assigned no further work, and began teleworking after the start of the pandemic.

On May 4th, Plaintiff notified his manager that he was on the way to the ER. He was hospitalized and/or incapacitated over the next two weeks. On May 15, his manager contacted him to tell him that he was going to be disciplined up to and including termination. In a panic, and afraid that he would be marked AWOL if he admitted he was hospitalized and/or incapacitated, Plaintiff unfortunately lied and told his manager that he had been teleworking. Plaintiff was terminated. He appealed his termination to SPB.

Unbeknownst to him, L. Teresa Padilla had been selected as the deputy director of SPO during the pendency of his appeal. She was now in a position of authority over the hearing officer hearing his appeal. Defendant Padilla testified as a witness against Plaintiff in that appeal. The hearing officer upheld the termination. Plaintiff appealed to district court. When he later discovered the appearance of impropriety with his SPB hearing, he added a due process claim against Defendant Padilla as the SPB record is tainted by it.

## **Argument**

Defendants rely heavily on the SPB hearing record which has been tainted by the appearance of impropriety when Defendant Padilla became the superior to the SPB hearing

officers. Plaintiffs object to consideration of this tainted record for MSJ purposes. There are numerous instances of findings not supported by the evidence which Hearing Officer Baca construed against Plaintiff anyway. For example, Hearing Officer Baca found that Plaintiff had been marked AWOL once, when the timesheet record clearly shows that he was marked AWOL 3 different times. Another example is Hearing Officer Baca agreeing that Defendants submitted no evidence that Plaintiff was assigned any work, but then just deciding he was anyway. Defendants had the burden of proof and Hearing Officer Baca did not require them to meet that burden. Even if the SPB process had not been so tainted, they do not have jurisdiction over the FMLA or the NMHRB.

The record is clear that Defendant Rich repeatedly interfered with FMLA, and retaliated against Plaintiff because of exercise of his FMLA rights, and that his disabilities were a motivating factor in the adverse actions against him.

**A.   Defendant Rich interfered with Mr. Rodriguez-Ortega's right to FMLA multiple times.**

Defendants misstate the record numerous times in a blatant attempt to minimize their clear wrongdoing and to weave a fictional tale crafted to cover up their illegal termination of Mr. Rodriguez-Ortega. Defendants were well aware of Mr. Rodriguez-Ortega's serious health conditions at all times relevant to this litigation. They knew that these conditions were FMLA qualifying. There is no dispute that, with the exception of the two incidents in February 2020 and May 2020, Plaintiff had always properly notified Defendants of his need for leave.

Defendants want this Court to believe that an extremely ill employee like Mr. Rodriguez-Ortega must run a proverbial gauntlet to have, and use, their FMLA rights, even in the middle of

incapacitating flare ups of his condition.  Even though both his certifications stated he was hospitalized in February 2020, according to Defendant Rich, he was still AWOL and subject to discipline because he had not been able to call in every day. Defendants argue that it was only the alleged kindness of Defendant Rich's heart, not the protection of federal law, which caused Mr. Rodriguez-Ortega not to be disciplined with a 5 day suspension for his February absences. Defendant Rich says in his April 24 email to Mr. Rodriguez-Ortega:

> You were given a huge opportunity, out of concern for your rapidly deteriorating health, in late February when you had at least 3 incidents of AWOL.  The opportunity, rather than face discipline was to look into medical retirement, et cetera vs facing up to a 5 day suspension for your AWOLs. **[Doc 74 Ex 18]**

This is a direct admission by David Rich that Mr. Rodriguez-Ortega was forced to look into medical retirement by David Rich to avoid being disciplines for alleged "AWOLs" which records clearly show happened during Plaintiff's February hospitalization and subsequent incapacitation. **[Doc 74 Ex 10 pgs 3 and 4]**  It is clear that there is no choice there at all.  Mr. Rodriguez-Ortega should not have been marked AWOL for any of his protected leave in February 2020.  And we have no evidence that contradicts Mr. Rodriguez-Ortega's story that he had no job duties.  There is no evidence of any job duties assignment to him, or any communications with him.  David Rich's behavior would make no sense if there were duties assigned to Mr. Rodriguez-Ortega.  First, on April 24, he claims there is an assignment that hasn't been done.  He doesn't call or text, just sends one email.  When he doesn't hear back at all, he does nothing, at all, for another week.  If a manager is concerned that their employee is not doing any work, it seems as though this concern would warrant more follow-up were it legitimate.  He sent another email on May 1 but still took no further action to investigate why he

had not heard back.  Let's not forget that Defendant Rich was approving Mr. Rodriguez-Ortega's time during this entire period. **[AMF 14]**

Defendant Rich repeatedly confirmed in his deposition that he believed that there were <u>no circumstances</u> under which an employee could use FMLA leave if they did not call in each day in compliance with DOH's policy.  **[Exhibit 12 - Deposition of David Rich, Pg 114, lines 24-25, pg 115 line 1]** In fact, he believed the call in policy to be even more restrictive than it actually was.  There is absolutely no dispute that the May 4th text gave Defendant Rich notice of Mr. Rodriguez-Ortega's need for FMLA leave. Defendants agree that Mr. Rodriguez-Ortega did not need to expressly assert his rights when giving notice of his need for leave, and they cite 29 C.F.R. § 825.301(a) for this.  But they gloss over the part that requires that "In any circumstance where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee or the spokesperson to ascertain whether leave is potentially FMLA-qualifying." If for some reason, Defendant Rich legitimately was not sure if the additional absences were FMLA qualifying, he had a prospective duty to investigate. There is no dispute that he did not ask Mr. Rodriguez-Ortega or Mr. Rodriguez.

It is absolutely impossible to believe that Defendant Rich was not reasonably on notice that Mr. Rodriguez-Ortega's subsequent absences were also FMLA covered, but even if he was not sure, he had an actual duty to investigate.  There is no dispute that he did absolutely nothing to contact for two weeks, and instead designated the time as AWOL.  When he finally did bother to call Mr. Rodriguez-Ortega, he did not call as part of an investigation, he called to inform Mr. Rodriguez-Ortega that he was going to be disciplined for his absences, not to find out where he was. He was screaming at Mr. Rodriguez-Ortega and would not let Mr. Rodriguez-Ortega

explain anything, even when Mr. Rodriguez-Ortega tried to tell him he had been in and out of the hospital.  Mr. Rodriguez-Ortega testified to the fact that he tried to explain he had been in the hospital but Defendant Rich would not listen.  <u>Jeremy Rodriguez Ortega Testimony Day 2 Hearing 1:38:23 -38:33</u>

There is no dispute that it had been clearly communicated to Mr. Rodriguez-Ortega that he could not use his FMLA leave if he had not called in each day, and he had been punished by being marked AWOL during his previous period of incapacity.  In a moment of panic, and fully believing Rich's instruction that he could not retroactively assert FMLA because he had not called in each day, Mr. Rodriguez-Ortega claimed to have been teleworking the whole time. This made sense in his addled mind, because he didn't have any job duties anyway, as David Rich had stripped them back in March.  If he had been properly informed of his FMLA rights, there would have been no reason not to assert them because he had plenty of covered time left, and his FMLA year was going to reset again in July.

The fact is, his absences <u>were</u> because of his FMLA qualifying condition, and he <u>was</u> incapacitated by his conditions just as he had been in February. He was most lucid at the beginning of the flare up, and <u>did</u> send a text informing Defendant Rich of his need for leave. That he was so terrified of being terminated that he felt he had to misrepresent that he had been teleworking rather than admit that he was in the hospital tells us everything we need to know about the hostility he was facing due to his disabilities and his need for FMLA leave and how it chilled his invocation of that right.  He should not have lied about working, but it is completely understandable given his lack of options.  He was going to be marked AWOL for not calling in, no matter the reason, just like he had been in February, the last time he was hospitalized and incapacitated.   And in that instance Defendant Rich <u>had</u> complied with his duty to investigate,

and was told by Joshua Rodriguez that his brother was in the hospital.  Yet Defendant Rich still marked him AWOL 3 times anyway even knowing that he was in in the hospital.  Even when both FMLA certifications[1] documented the fact that Mr. Rodriguez-Ortega had been hospitalized on February 21, Defendant Rich marked that day AWOL.  **[Doc.  74 Exhibit 1 and 2]**

It is undeniable that Defendant Rich did not accurately explain Mr. Rodriguez-Ortega's FMLA rights to him, nor did he properly comply with the law when applying Mr. Rodriguez-Ortega's entitlement to leave.  That, itself, is interference as it was Defendant Rich's duty to be able to properly explain rights to his employees.  His illegal interreference in February 2020 prevented Mr. Rodriguez-Ortega from asserting his full right to FMLA in May 2020 by chilling Mr. Rodriguez-Ortega's willingness to even assert his right to that leave, and by making him believe that he could not.  This interference led Mr. Rodriguez-Ortega to reasonably believe that the same thing would happen in May and that he would be marked AWOL if he admitted he had been incapacitated.  Defendant Rich had enough information to be able to reasonably assume that the entire absence was FMLA covered but intentionally marked Mr. Rodriguez-Ortega AWOL instead.   He only made contact with Mr. Rodriguez-Ortega on May 15, 2020 to inform Mr. Rodriguez-Ortega that he was going to be disciplined, not to determine whether the leave was FMLA qualifying.

No reasonable jury could believe that Mr. Rodriguez-Ortega's May 2020 absences would have been properly designated as FMLA leave by Defendant Rich no matter how vehemently Mr. Rodriguez-Ortega asserted his rights because Defendant Rich has admitted that there were no circumstances when he would apply FMLA if the call in procedure had not been followed.
**[Doc.  74 Exhibit 12 - Deposition of David Rich, Pg 114, lines 24-25, pg 115 line 1]**

---

[1] It remains unclear why Defendant Rich had Mr. Rodriguez-Ortega submit two separate certifications for the same intermittent leave

Defendants ask this Court to find that an employer can repeatedly deny FMLA protected leave to its employees even when it has actual and/or constructive notice that the employee is absent due to their qualifying conditions merely because the employees didn't know at the time that what they were being told was wrong and continue to assert FMLA leave when they had been told they couldn't. There's just so much wrong with that argument. There is nothing theoretical about Mr. Rodriguez-Ortega's FMLA protected leave and no evidence that he was not absent expressly due to his qualifying conditions. FMLA is intended to protect employees just like Mr. Rodriguez-Ortega from exactly the treatment he received because of his qualifying conditions. Mr. Rodriguez-Ortega believes that there is an absence of legitimate dispute of material fact in his favor regarding his FMLA interference claims. There is no reasonable dispute of material fact that his FMLA rights were interfered multiple times by David Rich.

**B. Defendants unlawfully retaliated against Mr. Rodriguez-Ortega because of his use of his FMLA.**

Defendants claim that Mr. Rodriguez-Ortega never engaged in FMLA activity. There is no dispute that the majority of his absences in February were properly designated as FMLA. There is no dispute that he was hospitalized and/or incapacitated during that period. By the taking of FMLA leave, Mr. Rodriguez-Ortega engaged in "FMLA protected activity." By marking him AWOL on some of the dates he was absent due to his qualifying conditions, Defendants Rich took adverse action against him. This is both interference and retaliation and he lost pay and benefits for those days. Defendants materially misrepresent that all of Plaintiff's absences were marked AWOL and then all of them were changed to FMLA by DOH. **[Doc. 166 pg 18]** There is no truth to this assertion and Defendants shockingly argue to the Court that Mr.

Rodriguez-Ortega could have been *fired* for his February FMLA covered absences. As is clearly evidenced by his timesheets, Plaintiff was marked AWOL 3 different days even after his FMLA certifications identified that he was hospitalized on those dates. **[Doc. 74 ex 10]** The other dates were properly designated as FMLA. There is no difference between them because Mr. Rodriguez-Ortega was unable to call in on any of the days he was absent, and it remains unclear why Defendant Rich chose those days to mark as AWOL.

As soon as he returned to work at the beginning of March 2020, he was called into a meeting with Defendants Rich and Padilla who wished to discuss his absences with him. They provided him his FMLA forms in that meeting, which are dated as receiving notice of the request for FMLA on March 4, 2020. At that meeting, Mr. Rodriguez-Ortega was informed that his job duties were being stripped and reassigned to his coworkers and that his only assignment going forward was to qualify for disability retirement. Having one's job duties stripped is an adverse action and is literally the opposite of what FMLA protection requires, and is retaliation for the exercise of that right.

Defendants now claim that they never stripped Mr. Rodriguez-Ortega's job duties and this meeting was merely to give him an idea of his "options." But they have produced no evidence of any communications with him after this, they have produced no records of any assignments. They only point to two emails sent April 24 and May 1 which vaguely mention an assignment that Mr. Rodriguez-Ortega has allegedly not done for ERD. There would have to have been communication about this assignment prior to April 24 if it legitimately existed. But there is not. There is no evidence it ever was assigned to Mr. Rodriguez-Ortega. There is no evidence anything was assigned to Mr. Rodriguez-Ortega after the time in which his job duties were stripped. Nor is there any evidence that anyone communicated with him at all, even while

communicating about work with each other. The two pages of texts produced in this litigation show that Jeremy was not included in the text chain between his coworkers during their teleworking in March, April and May 2020[2]. It is unclear how he could have "coordinated coverage" with them if he wasn't even part of their text chain. He was completely ignored by everyone at DOH because of his FMLA qualifying conditions, and no longer allowed to work. This is retaliation.

Lastly, Mr. Rodriguez-Ortega notified Defendant Rich of his need for FMLA leave in his May 4th text. This gave Defendant Rich actual and/or constructive notice of Mr. Rodriguez-Ortega's need for FMLA leave on the subsequent days during his incapacitation. See *Stevenson v. Hyre Elec. Co*., 505 F.3d 720, 726 (7th Cir. 2007) (holding that "either an employee's inability to communicate his illness to his employer or clear abnormalities in the employee's behavior may constitute constructive notice of a serious health condition") It is certainly not a huge leap for an employer to surmise after actual knowledge via a text about the ER that no news is not good news and that their FMLA covered employee is still absent due to their qualifying condition.

It is completely unreasonable for a manager to send a subordinate an email accusing them of not getting a single assignment done, and then wait an entire week without any further communication attempts at all only to send a second one, and then wait nearly 3 more weeks before attempting to call that employee. In the two emails he allegedly sent, he's accusing Mr. Rodriguez-Ortega of doing no work at all, but he doesn't take <u>any</u> other steps to communicate with Mr. Rodriguez-Ortega to resolve the supposed problem. Similarly, when he learned that Mr. Rodriguez-Ortega was going to the ER and then was absent, he waited an entire two weeks

---

[2] It is clear that there were other texts in that chain which Defendants have never produced, but that were responsive to Plaintiffs' requests.

before even trying to call him just to tell him that he was going to be disciplined. This is not the reaction of a concerned manager who genuinely doesn't know where his employee is or what the employee is doing, and whether FMLA protects the additional leave. Or even the work of the DOH ADA Coordinator, eager to determine whether there is a need for reasonable accommodation. It's the behavior of someone who wants to claim that the employee was AWOL so they can terminate them.

Defendants base their entire argument on the false narrative that Mr. Rodriguez-Ortega never exercised or attempted to exercise his FMLA rights. Mr. Rodriguez-Ortega's May 4th timesheet **[EX 3]** shows that part of May 4th was properly designated as FMLA protected. That is exercise of his FMLA rights. They also rely heavily on the fact that Plaintiff was so terrified to be marked AWOL for invoking his FMLA rights on the subsequent days that he lied about working instead. That's not evidence that he didn't "attempt to exercise" his rights. That's direct evidence that he was chilled from doing so by David Rich's interference with his February FMLA leave. Plaintiff believes that there is an absence of material fact in his favor that he was retaliated against for asserting his FMLA rights. But failing that, it is certain that there are questions of fact which can only be decided by a jury. Defendants Motion for Summary Judgment must be denied

### C. Defendants discriminated against Mr. Rodriguez-Ortega in violation of the NMHRA.

As argued above, Defendants stripped Mr. Rodriguez-Ortega's job duties and ostracized him after his return from FMLA leave in February 2020. This is direct evidence of discrimination and retaliation because of his disabilities/medical conditions. Defendants have

never produced any proof that Mr. Rodriguez-Ortega had job assignments, that they communicated with him, or that they attempted to engage in any interactive process meetings with him, or that they otherwise attempted to accommodate any issues. There would be hard evidence of these things, if they existed. But they do not. The record is clear they were aware of his disability, and that they felt that it might be affecting the performance of his job. The record is clear that despite Defendant Rich being the ADA coordinator, he coordinated nothing with Mr. Rodriguez-Ortega.

Even if Defendants' inflexible version of the FMLA was correct and Mr. Rodriguez-Ortega did need to call in every single day 30 mins before his shift regardless of the reason he was absent, allowing him more latitude to do so would have been an easy reasonable accommodation for them to grant him. But they granted him no flexibility or accommodation from any requirement, and applied a more strict call in requirement to him than policy required. In fact, even if Mr. Rodriguez-Ortega didn't have FMLA at all, the May 2020 absences could have been part of a reasonable accommodation, given that it was clearly related to his disabilities. See *Davis v. PHK Staffing LLC*, No. 22-3246, 2023 U.S. App. LEXIS 33536, at *9 (10th Cir. Dec. 19, 2023) ("[L]eave can constitute a reasonable accommodation even when attendance is an essential job function—it may allow an employee sufficient time to recover from an injury or illness such that the employee can perform the essential functions of the job.") The fact that Mr. Rodriguez-Ortega was misinformed his FMLA rights and punished for taking leave in February 2020, explains why he did not expressly invoke it in May 2020. However, nothing explains why Defendant Rich did not automatically designate it as FMLA instead of AWOL. Defendant Rich, who was also the ADA coordinator, clearly did not want to provide

Mr. Rodriguez-Ortega options or offer him accommodations, he wanted to terminate him. And he did.

Plaintiff believes that there is an absence of material fact in his favor about whether he was discriminated and retaliated against, and that Defendants failed to accommodate him, in violation of the NMHRA.  A reasonable jury could only find that Mr. Rodriguez-Ortega's disabilities were a motivating factor in the adverse actions taken against him, as without them, none of the events would have happened.  Defendants Motion for Summary Judgment must be denied.

## Conclusion

For the reasons argued herein, Mr. Rodriguez-Ortega respectfully requests that this Court deny Defendants Motion for Summary judgment, grant Plaintiffs' Motion for Summary Judgment **[Doc. 74]** and award him fees and costs for his response to the instant Motion.

Respectfully Submitted.

*/s/ Heather Burke*

Heather Burke
Attorney at Law
1000 Cordova Place #24
Santa Fe, NM 87505
(505) 428-9424
heather@hburkelaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing to be served on all parties or counsel of record this 26th day of March, 2024, via the Court's Electronic Filing System.