**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JEREMY RODRIGUEZ-ORTEGA AND
JOSHUA RODRIGUEZ,**

    **Plaintiffs,**

v.                                       **No. 1: 21-cv-01129-JCH-KK**

**DAVID RICH, KENNETH LUCERO,
in their official and individual capacities, L. TERESA
PADILLA, in her individual capacity,
AND NEW MEXICO DEPARTMENT OF HEALTH**

    **Defendants,**

**PLAINTIFFS RESPONSE IN OPPOSITION TO DEFENDANT PADILLA'S MOTION
FOR RULE 11 SANCTIONS**

COMES NOW, Plaintiffs Jeremey Rodriguez-Ortega and Joshua Rodriguez, by and through their counsel of record, Heather Burke, with their Response in Opposition to Defendant Padilla's Motion for Rule 11 Sanctions. Defendant Padilla's motion is completely baseless, and for the reasons argued herein, must be denied.

**Background**

Plaintiffs' sought leave to amend their complaint to include a due process claim against Defendant Padilla. Their complaint used the official start date for Defendant Padilla which is purportedly September 18, 2021 according to the Sunshine Portal. Plaintiffs have diligently attempted to discover evidence which would help to identify when Defendant Padilla started performing duties on behalf of SPO. Yet, all the evidence which should exist about this transfer

1

allegedly does not. Defendant DOH claims to have deleted about 20 years of emails immediately after Defendant Padilla's transfer. SPO claims to have no hiring or pay documentation for this transfer, even though they would be required to submit forms to change Defendant Padilla's title and compensation. Defendant Padilla, herself, claims to have no evidence of this job or her compensation for it. However, evidence supports the fact that Defendant Padilla started duties at SPO months earlier, likely before May 4, 2021, and that there was a pattern or practice of governor appointees working in a position before they officially began.

The day after Defendant Padilla filed this meritless Rule 11 motion, she filed a Motion for Summary Judgment arguing substantially the same as this Motion. She attached no documentary evidence in support of her motion or version of events, only a several page long declaration. This has resulted in Plaintiffs having to unnecessarily expend time on two substantially similar briefs due only a day apart.

## Argument

As an initial matter, Defendant Padilla's Motion appears to be a second and improper motion to dismiss the claim against her[1]. Defendant Padilla, consistent with the entirety of litigation, includes no documentary evidence of her version of events, and makes weak arguments that the law does not support the claim against her, which she renders moot in a footnote acknowledging that Plaintiffs couldn't have brought them the way she argues. She mostly argues only about disputes of fact and evidence which are not a proper basis for a Rule 11

---

[1] It may also be a violation of the First Amendment and/or New Mexico's Anti-SLAPP law as it seeks punishment for asserting constitutional claims against her.

Motion at all. In addition, she conflates the concept of "no evidence" as it may suggest innocence, and mysteriously missing evidence, which actually has the opposite effect.

Plaintiffs had to seek leave to amend their complaint, and this Court had to grant that leave. In so doing, Plaintiffs had to meet a standard of plausibility. This Court would have denied any leave to amend if the amended claims were as baseless as Defendant Padilla argues herein. Defendant Padilla has already moved to dismiss this claim, and while this Court has not yet ruled on that Motion, she insists on trying to extort Plaintiffs and their counsel to agree to dismiss the claim against her. Counsel for Defendant Padilla have spent the last few months threatening undersigned counsel, trying to scare her with the threat of sanctions to get her to dismiss the claim against their client. This is an incredibly abusive litigation tactic. If, as Defendant Padilla claims, there is no evidence against her, she would not need to attach, and try to explain away, the exhibits to her motion. She attaches no other evidence proving her version of events. She may not like it, but the exhibits are evidence that a jury should consider and they might reasonably find opposite to what Defendant Padilla asserts. Tellingly, Defendant Padilla didn't attach any of the instant exhibits as proof of an absence of material fact in her Motion for Summary Judgment, which suggests that even she is aware that they can be interpreted more than one way. That there are clear disputes of material fact for the jury renders her sanctions motion wholly inappropriate and brought in bad faith.

**Plaintiffs knowledge of the facts and evidence of their due process claim is irrelevant**

It is well-established that Plaintiffs are not required to know the law, or how facts apply to the law, or to otherwise have an up to the minute knowledge of evidence related to it.

> Plaintiffs, however, are not required to have personal knowledge of all of the facts in their complaint in order to bring their claims. Evidence of the factual allegations in a complaint does not always come from the plaintiff. Indeed, it is not uncommon that a plaintiff knows very little about how an accident happened that caused his or her injuries, what happened in an operating room that caused medical malpractice, or how a loved one died in a wrongful death case. Many cases are supported by expert testimony and other investigatory methods of which a particular plaintiff may know nothing about. ... In short, the plaintiffs themselves are not required to have personal knowledge of every fact that supports their claims.

*Adler Med., LLC v. Harrington*, No. 1:22-CV-00072-KG-LF, 2023 WL 3569099, *2 (D. N.M. May 19, 2023); *see also Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1963)(plaintiff is not required to know or understand all the elements of his case, the evidence he has, or how the case will be tried.)

Defendant Padilla argues to this Court that Plaintiffs knowledge of the evidence against her, or lack thereof, is dispositive of the frivolous nature of it. This is a specious argument. The claim against her requires no personal knowledge or active involvement on the part of either Plaintiff. The evidence attached to this Motion was only just received by Plaintiffs prior to the deposition of Mr. Rodriguez-Ortega and two months after the deposition of Mr. Rodriguez. Defendant Padilla wishes this Court to believe that undersigned counsel should be sanctioned based on what her clients understand or remember about the facts and the law. What matters is whether this is a basis for this claim, and any evidence to support it. There is.

## **Lack of evidence has become evidence**

As mentioned above, Plaintiffs' discovery surrounding their claim against Defendant Padilla has been nearly completely thwarted by obstructive tactics. Defendant Padilla's strategy seems to have relied completely on this obstruction. Defendant DOH claims to have deleted 20

4

years of emails right after she left. SPO claims it has no hiring or pay information at all for their deputy director, but have that information for her when she was promoted to director and for the subsequent individual promoted to director. She has disclosed not a single witness in her defense, and not a single exhibit which she will use at trial. This is a case where the lack of existence of evidence has become evidence because no reasonable jury could believe that there is a legitimate reason for this evidence to not exist and/or have been destroyed, particularly as it is also important to the public record. This is especially true when that same evidence exists for others.

Defendant Padilla literally alleges that Plaintiffs have come up "empty handed in discovery" because that's what her goal was. They provide no evidence at all that Plaintiffs' claim is meritless, but point to the lack of evidence. But they don't even understand the operative facts enough to understand the evidence they attach to the instant motion. Just the fact that they have to attach evidence just to try to explain their spin on it to this Court defeats their Motion completely.

It is clear that Defendant Padilla does not actually understand the claim against her. She spends a great deal of time inventing fictional allegations against her in order to then argue that there's no proof of them. Defendant Padilla being the superior of the judges adjudicating claims involving her, her testimony, and the decisions of herself and her direct subordinates creates a conflict of interest and appearance of impropriety. A reasonable jury might well find that either or both of the ALJs had more reason to find in favor of their boss than against her. Certainly, between the complete lack of evidence which should exist, and the little evidence that does exist, it is substantially likely that Defendant Padilla was performing work for SPO before May 4, 2021.

**<u>May 4, 2021 letter</u>**

In what is probably an <u>actual</u> violation of Rule 11, Defendant Padilla argues to this Court that this May 4, 2021 document titled "Delegation of Certain Line Authority – **<u>Amended</u>**" (emphasis added) is the 2nd page of a document dated September 27, 2021, titled "Delegation or Certain Line Authority." She even presents them as though they are a single document, in one exhibit. She claims that the order of bates numbering means they are "clearly" the same document, which is absurd. One can order documents however they like when applying labels to them. It is likely that the same or similar template was used to create both documents which is why the individual numbers listed are consecutive, but that's the <u>only thing</u> these documents have in common. These documents have different dates, different subject lines, and were clearly printed on two different printers.

For example, comparing the September 27, 2021 document:

2600 Cerrillos Road, Santa Fe, New Mexico, 87505 (505) 476-7759

To the May 4, 2021 document printer:

2600 Cerrillos Road, Santa Fe, New Mexico, 87505 (505) 476-7759

This comparison shows that the two documents were not printed on the same printer at the same time as one another.

That the May 4, 2021 document is also titled "Delegation of Certain Line Authority – Amended" means there was another earlier delegation document we don't have that it was amending, and we don't know what those duties were at that time, or at the time they were

amended.  Besides this being a hand signed document dated May 4, 2021, one of the other striking details is that it was copied to three different files.  Yet this is the only version produced from any of those three.  Despite being saved in triplicate, we only received only a single page of a partial document.  It would clearly be a public record under state law as it is delegating directorial duties for an executive state agency, so the fact that the whole document was not preserved is a serious issue.

Opposing counsel objected to 43% of the questions asked at Defendant Padilla's deposition.  The most common, and made via improper speaking objection several times, was "The document speaks for itself."   But for some reason, this document allegedly does not speak for itself.  They want everyone to believe that the date on just this one document is not reliable because it contradicts story, which has no documentary evidence of its own. But for every other document, they want Plaintiffs to accept them as written. She can't have it both ways.  None of the Defendants have produced native documents with original metadata, preventing better authentication of the documents and the dates they were created and/or signed as well as other pertinent information. This requires Plaintiffs to rely on the representations made on the document, particularly regarding material facts.

It is not unreasonable to believe that Defendant Padilla was working for SPO before she was officially the deputy director because the State has a practice of doing just that.  The sunshine portal shows that Dylan Lange, who was promoted to SPO Director after Defendant Padilla's retirement, started in the position on December 23, 2023. [Ex 1]  However, his PARF(Personnel Action Request Form) shows he was approved for that promotion from General Counsel to "Agency Director" effective September 2, 2023. [Ex 2] Sure enough public record for

7

September 2023[2] shows that Dylan Lange started being paid $179, 802.50, commensurate with other agency directors. [Ex 3] Interestingly, there is another PARF for Mr. Lange after formal acceptance of SPO Director, his compensation was decreased by a penny from what he had been paid previously, at $179.850.49[3] [Ex 4] This is an material example of how official start dates do not always reflect the reality of when someone actually starts working in a role.

The critically material "Personnel Action Request Forms" for Defendant Padilla purportedly do not exist to document her move from DOH to SPO. It is unclear how her raise or change in title was effectuated without these required documents. Emails that would show what work she was doing at the time in question have also allegedly been destroyed. Formal documents related to the raises given to the two hearing officers also appear not to exist, and we instead have only informal, incomplete and/or self-impeaching documents. (see below)  Both the established practice of SPO and the May 4, 2021 partial document indisputably creates questions of fact for a jury and defeats Defendant Padilla's entire motion. Plaintiffs' claims cannot be frivolous if a jury could reasonably find in their favor.

## Hearing Officers

Defendant Padilla argues that the record showing Aaron Baca was approved for a raise on April 5, 2021 shows that Plaintiffs claims have no basis. For reasons which remain unclear, SPO claims to have no final signed copies of these records, nor the DFA approved version. This is unusual. In addition, there are numerous problems with this document, which all create questions of fact. Aaron Baca was hired at SPO on April 5, 2021 [Doc. 34-3] for his position as ALJ. He could not have also been approved for a promotional raise on the day he started

---

[2] This full spreadsheet can be provided if requested, but is also available on the sunshine portal.
[3] And the sunshine portal reports that now makes 2 cents less a year than he did in September 2023, now listed as $179850.48.

because he simply would have been hired at the higher rate to begin with.  Defendant Padilla even highlights these dates to show this Court that clearly his raise was approved on April 5, 2021.  But it also shows that his raise was approved by Director Pamela Coleman.  Ricky Serna became the acting SPO director on January 31, 2021, after Ms. Coleman's departure.  [Ex 5] There is no way that Pamela Coleman could have approved Aaron Baca's raise on April 5, 2021.

Additionally, Mr. Baca did not receive a raise until around September 2021[Doc. 34-3], which doesn't make sense if he was approved for it April 5, 2021.  After all, Janelle Haught's raise was allegedly approved April 23[4], and she received the letter notifying her it was approved and official in May, and for unknown reasons it was retroactive to April 13, 2021, before it was even approved.   No such letter for Aaron Baca was produced, so we do not know when he received notice of his raise, or exactly when it became effective. There is no reason he would not have received a similar letter, and its absence is telling.

Janelle Haught's raise was approved on one of the same days that Mr. Rodriguez's hearing was being conducted by her.  Perhaps that is just a coincidence, or maybe it isn't. A jury can decide whether they think it is.  It seems pretty clear that Defendant Padilla was already working at SPO at that point, given the May 4, 2021 amending of certain line authority to her.  But the documents included for Ms. Haught demonstrate, again, that even though public records show Ms. Haught's raise as taking effect in May, it actually took effect in April.  SPO has a clear practice of "fudging" the dates that personnel actions occur.  Clearly the public records on the sunshine portal which are supposed to evidence government transparency are not accurate reflections of what is actually taking place regarding these personnel actions.

---

[4] The "signatures" are nearly all typed /s/ even though the state had long established legitimate docusign e-signatures during Covid

**Defendant Padilla's Rule 11 motion has no basis at all**

Perplexingly, despite the complete absence of exonerating evidence in her defense, Defendant Padilla argues about her perception of how Plaintiffs should prosecute their claim against her, such as what she was not asked at her deposition. Plaintiffs are not aware that they must ask the questions Defendants want them to at a deposition. Nor must they depose whomever Defendant Padilla desires. She has listed no witnesses nor any exhibits which Plaintiffs would need to examine in any deposition. She claimed to have no documents in her own possession, so Plaintiff subpoenaed the ones attached as exhibits from SPO. Despite this being a subpoena and not an actual discovery request, SPO bates stamped the responsive documents and served all parties, and "somehow" knew the contact information for all the other counsel in order to do so. Obviously, there is no issue with that, but it is the first time undersigned counsel has ever had the recipient of a subpoena bates label responsive documents and serve them as though they were a party in discovery.

Opposing counsel claims to have knowledge on how a "reasonable attorney" would assert due process claims, though it does not appear that he has ever been an attorney for a Plaintiff, nor does it appear he has ever asserted any due process claims himself. As this Court is well aware, the entire point of discovery is to search for evidence that may support well pled claims. It is often the case that claims are pled before having evidence. And Defendants have tried really hard to make sure Plaintiffs got no evidence about the facts at issue for this claim. Fortunately, evidence slipped through which creates clear issues of fact. But even if it had not, the proper remedy is not to seek sanctions for daring to bring a claim against a party. It is to seek dismissal and/or summary judgment.

The fact is, it is a due process violation that Defendant Padilla became the superior of the adjudication division in the midst of Plaintiffs' appeals, particularly when she was a witness for Defendants in one of them. Plaintiffs were both entitled to an impartial adjudication of their appeals. Despite Defendant Padilla's misguided and fictional arguments, Plaintiffs do not need to prove that Defendant Padilla nefariously bribed the judges or explicitly acted to bias this process. The fact that there is complete absence of records regarding so much of these allegations, including her move to SPO is highly suspicious. There should be numerous records of this regularly conducted government activity, and the other government activities. SPO representing that the promotional raise for Mr. Baca occurred the date of his hire, and was approved by a director who left SPO months before his hire is self-impeaching. There would have to be a DFA approved document, particularly as he not only got a raise, but had a change of job title. Unlike with some of the other raises, they include no letter informing Mr. Baca of this raise. The letters included to memorialize some of the other personnel actions are undated and/or unsigned. They take personnel actions and misrepresent these actions on the sunshine portal. This is our State's Personnel Office, and yet they purport to keep no official final copies of any of their personnel forms directly relevant to the questions involved in this claim. But then show that they do actually keep these documents for others such as Dylan Lange, who is not accused of any due process violations. It defies explanation, and is simply not credible.

If Plaintiffs' claim was a frivolous as Defendant Padilla wishes this Court to believe, there would be plenty of evidence to disprove it. But there isn't. There are no witnesses willing to testify in Court, under oath, that Defendant Padilla started when she says. There are no hiring documents and pay documents, approved by DFA, memorializing her raise and appointment to Deputy Director. There are no legitimate signed and DFA approved raise documents for Aaron

Baca. Defendant Padilla just relies on her word, under oath, to be proof of what she is saying. If deposition testimony were the irrefutable proof that Defendant Padilla purports, there would never be trials at all.

### Defendant Padilla's counsel makes multiple material misrepresentations to this Court in an attempt to seek sanctions

Opposing counsel himself violates Rule 11 numerous times in his Motion. In addition to combining two different documents and offering them as a single one, Mr Haupt fails to even familiarize himself with the law surrounding the claim that he contends is frivolous enough to warrant sanctions, or even with this case itself. As this Court knows, and has acknowledged in this case, "Plaintiffs are correct that parties to an administrative adjudication have due process rights to a fair and impartial hearing before a disinterested trier of fact who is free from bias. See *Benavidez v. Bernalillo County Bd. of County Comm'rs*, 2021-NMCA-029, ¶ 32, 493 P.3d 1024. Where a "due process violation claim is based on alleged bias on the part of the fact-finder, as here, '[t]he inquiry is not whether the [fact-finders] are actually biased or prejudiced, but whether, in the natural course of events, there is an indication of a possible temptation to an average [person] sitting as a judge to try the case with bias for or against any issue presented[.]" *Id*. ¶ 33 (quoting *Reid v. N.M. Bd. of Exam'rs in Optometry*, 1979-NMSC-005, ¶ 7, 92 N.M. 414)." [Doc 42 pg 10-11]

He argues that Plaintiffs should have brought this claim against parties who are immune from suit for such a claim (but then acknowledges the reason in a footnote, rendering that argument completely moot) and proceeds to complain about his perception of the facts of this

claim.  He confusingly cites *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) as though it has anything at all to do with the facts in the instant case.  It does not.

Opposing counsel even makes the argument to this Court that Plaintiffs' claim against Defendant Padilla is "especially injurious because Plaintiffs appear to seek over $5 million from Defendants in this action, which Plaintiffs' counsel must know Ms. Padilla could never pay." As this both opposing counsel and this Court are surely aware, Defendant Padilla's ability to pay any damages in this case is completely irrelevant because she is statutorily indemnified by NMSA 1978 § 41-4-4(D).  It is extremely dishonest to misrepresent to this Court, particularly for purposes of seeking a sanction against Plaintiffs and/or their counsel, that their client would personally be paying any judgment or settlement in this case.  Even if she would, that fact is completely irrelevant to whether the claims against her are frivolous.

Defendant Padilla attaches not a shred of evidence of anything she argues in her Motion.  She wastes the precious resources of this Court, and Plaintiffs' time by filing a completely frivolous Rule 11 motion as a backdoor second motion to dismiss, the day before she filed a motion for summary judgment, forcing Plaintiffs to brief two substantially similar responses.  She makes arguments about facts and evidence which themselves prove that there are questions of fact which make the claim against Defendant Padilla possible.  Nothing argued in her Motion at all proves that the claim against Defendant Padilla is so frivolous as to warrant sanctions.  Worse, she demands that undersigned counsel <u>personally</u> repay the State of New Mexico for its costs defending a public employee[5] who is indemnified by them. There is no legitimate basis for this motion to have ever been filed.

## **Conclusion**

---

[5] Their supposedly "vigorous defense" including producing almost nothing in discovery, identifying no witnesses or evidence, conducting none of their own depositions, and supplementing nothing as discovery proceeded. Meanwhile, they have filed two motions to compel against Plaintiffs and threatened this Motion for 3 months.

For the reasons argued herein, Plaintiffs respectfully request that this Court deny Defendant Padilla's Motion for Rule 11 sanctions as it has no merit. Plaintiffs request that this Court grant them attorney's fees for the time having to respond to it and for whatever other relief that this Court finds proper.

                                          Respectfully Submitted.

                                          */s/ Heather Burke*

                                          Heather Burke
                                          Attorney at Law
                                          1000 Cordova Place #24
                                          Santa Fe, NM 87505
                                          (505) 428-9424
                                          heather@hburkelaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing to be served on all parties or counsel of record this 16th day of April, 2024, via the Court's Electronic Filing System.