## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JEREMY RODRIGUEZ-ORTEGA and**
**JOSHUA RODRIGUEZ,**

    **Plaintiffs,**

**v.**              **Civ. No.  21-cv-01129 JCH/KK**

**DAVID RICH, KENNETH LUCERO,**
**in their official and individual capacities,**
**L. TERESAS PADILLA, in her individual capacity,**
**and NEW MEXICO DEPARTMENT OF HEALTH,**

    **Defendants.**


### <u>MEMORANDUM OPINION AND ORDER</u>

   This matter is before the Court on the following motions filed by Defendant L. Teresa Padilla: (1) *Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim (Count IX)* (ECF No. 118); (2) *Motion for Rule 11 Sanctions* (ECF No. 188); and (3) *Motion for Summary Judgment* (ECF No. 189). The Court, having considered the motions, briefs, evidence, and applicable law, will grant Defendant Padilla's motion for summary judgment, will deny her motion to dismiss as moot, and will deny her motion for Rule 11 sanctions.

**I.  MOTION FOR SUMMARY JUDGMENT**

  **A.  STANDARD**

   On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets her burden, the nonmoving party must "come forward with specific facts showing" that genuine issues remain for trial. *Id.* The nonmoving party

must go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). Only disputes of fact that might affect the outcome of the case will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248.

### B. FACTUAL BACKGROUND

#### 1. Jeremy Rodriguez-Ortega's employment and termination from NMDOH

Jeremy Rodriguez-Ortega worked for the New Mexico Department of Health ("NMDOH") as a Human Resources ("HR") Training and Labor Specialist-A in its HR Bureau from June 2018 until he was terminated effective July 25, 2020. (Def.'s Undisputed Fact ("UF") ¶ 23, ECF No. 189.)[1] L. Teresa Padilla was employed by NMDOH from 2001 to 2021. (Def.'s UF ¶ 1, ECF No. 189.) Her final position at NMDOH was the HR Bureau Chief. (*Id.*)

On June 30, 2020, Mr. Rodriguez-Ortega received a *Notice of Contemplated Action* notifying him that NMDOH was considering terminating his employment for the reasons set forth therein and informing him he had the opportunity to respond. (Def.'s UF ¶ 24, ECF No. 189.) Mr. Rodriguez-Ortega provided a written response, (Administrative Record ("AR") 20-028 at 126-27, ECF No. 70), and on July 22, 2020, Mr. Rodriguez-Ortega received a letter entitled *Notice of Final*

---

[1] In accordance with Federal Rule of Civil Procedure 56(c)(1), the Court finds a statement to be an "Undisputed Fact" if the asserted fact is admitted or if the opposing party failed to cite evidence in the record to show a genuine dispute of that fact.

*Action – Dismissal*, terminating his employment (AR 20-028 at 1). Mr. Rodriguez-Ortega filed a charge of discrimination with the New Mexico Human Rights Bureau ("NMHRB") on September 14, 2020, naming David Rich and Teresa Padilla. (Pls.' Ex. A, ECF No. 202-1.) NMDOH, Mr. Rich, and Ms. Padilla filed a response to the charge, which the Bureau received on May 4, 2021. (Pls.' Ex. F, ECF No. 202-6.)

Mr. Rodriguez-Ortega appealed his termination to the State Personnel Office ("SPO"), and Administrative Law Judge ("ALJ") Aaron Baca held a two-day hearing with counsel on June 10 and 11, 2021. (Def.'s UF ¶ 27, ECF No. 189.) Ms. Padilla was called as a witness in the hearing and testified before ALJ Baca. (Padilla Decl. ¶ 26, ECF No. 189-2; AR 20-028 at 132-33.) On October 14, 2021, ALJ Baca filed his recommended decision to affirm Mr. Rodriguez-Ortega's dismissal, determining the NMDOH proved by a preponderance of the evidence that Mr. Rodriguez-Ortega abandoned his job by accumulating more than four consecutive absences without leave, was insubordinate, and was negligent in the performance of his job duties. (Def.'s UF ¶ 31, No. 189; AR 20-028 at 156.)

In support of his recommendation, ALJ Baca made 49 findings of fact ("FOF"), citing Ms. Padilla's testimony five times. (*See* AR 20-028 at 131-37.) In four of those FOFs, ALJ Baca relied on testimony from Mr. Rich, Mr. Rodriguez-Ortega, and Ms. Padilla when finding that (i) Mr. Rodriguez-Ortega was hospitalized in February 2020 for several days (FOF 11); (ii) Mr. Rodriguez-Ortega met with Mr. Rich and Ms. Padilla in March 2020 to discuss his job performance, his medical needs, and various benefits available to him, including FMLA and medical retirement (FOF 14); (iii) neither Mr. Rich nor Ms. Padilla instructed Mr. Rodriguez-Ortega that he had to medically retire from his job (FOF 15); and (iv) Mr. Rodriguez-Ortega initiated the process to medically retire following the March 2020 meeting (FOF 16). (*See* AR 20-

028 at 132-33.) Finally, relying on testimony from Ms. Padilla and Mr. Rich, ALJ Baca found that NMDOH assigned an employee to assist Mr. Rodriguez-Ortega with gathering documents to submit for his medical retirement application (FOF 17). (*Id.* at 133.) ALJ Baca's recommended decision did not turn on FOF 17. (Def.'s UF ¶ 33, ECF No. 189.) Mr. Rodriguez-Ortega filed objections to ALJ Baca's recommended decision to the New Mexico State Personnel Board ("SPB"). (AR 20-028 at 167-81.)

### 2. Joshua Rodriguez's employment and termination from NMDOH

Joshua Rodriguez, Mr. Rodriguez-Ortega's brother, was employed by NMDOH as a Business Operations Specialist Supervisor with NMDOH's Public Health Division ("PHD") from 2011 until his termination, effective May 20, 2020. (Def.'s UF ¶ 9, ECF No. 189.) On April 28, 2020, Mr. Rodriguez received a Notice of Contemplated Action ("NCA") informing him that NMDOH was considering terminating him for the reasons set forth therein. (Def.'s UF ¶ 10, ECF No. 189.) Mr. Rodriguez provided a written response to the allegations. (*Id.*) By letter dated May 19, 2020, Jeff Lara, PHD Interim Director, and Christopher Novak, PHD Medical Director, issued a *Notice of Final Action (NFA) – Dismissal*, wherein they found that Mr. Rodriguez's response was not persuasive and determined that he would be dismissed from his position for (1) sexual harassment, (2) inappropriate and unprofessional behavior, and (3) dishonesty. (AR 20-018 at 1-7, ECF No. 70.)

Mr. Rodriguez appealed his termination to SPO, and ALJ Janelle Haught held a three-day hearing on April 22, 23, and 28, 2021, in which the parties were represented by counsel. (Def.'s UF ¶ 12, ECF No. 189; AR 20-018 at 294.) Neither party called Ms. Padilla as a witness at Mr. Rodriguez's SPO hearing. (Def.'s UF ¶ 13, ECF No. 189.) On August 18, 2021, ALJ Haught filed her Recommended Decision to the SPB, concluding that the NMDOH proved that it had just cause

to dismiss Mr. Rodriguez, and that the dismissal was appropriate given the severity and duration of his misconduct. (AR 20-018 at 293, 327.)

### 3. Ms. Padilla's employment with SPO

On September 20, 2021, Governor Michelle Lujan Grisham's Chief of Staff called Ms. Padilla to ask if she would accept the Governor's appointment to the position of Deputy Director of the State Personnel Office. (*See* Def.'s UF ¶ 2, ECF No. 189.)[2] As the decision whether to accept the appointment was a personal one, Ms. Padilla did not consult anyone other than her husband before accepting the job. (Def.'s UF ¶ 3, ECF No. 189; Padilla Decl. ¶ 7, ECF No. 189-2.) As the SPO Deputy Director, Ms. Padilla could not and did not attend SPB Executive Meetings during which employment decisions were discussed. (Padilla Decl. ¶ 12, ECF No. 189-2.)[3] The SPO Deputy Director reports directly to the SPO Director. (*Compare* Pl.'s Resp. 5 at ¶ 2, ECF No. 202, *with* Def.'s Reply. 6, ECF No. 208.) In July 2022, Ms. Padilla was elevated to SPO Director. (Def.'s UF ¶ 7, ECF No. 189.) She retired from SPO on September 1, 2023. (Def.'s UF ¶ 8, ECF No. 189.)

Plaintiffs' primary factual argument contesting summary judgment revolves around the date Ms. Padilla began working for SPO. The Court will first set out Defendant Padilla's evidence regarding when she began her SPO employment, and then discuss why Plaintiffs' attempts to create a factual dispute regarding Ms. Padilla's start date are insufficient to create a genuine factual dispute.

### a. Defendant Padilla submitted evidence that she began working for SPO on or about September 20, 2021

---

[2] Plaintiffs respond that they have no information to admit or dispute the fact, so it is undisputed for purposes of this motion. They assert, however, that Ms. Padilla's official acceptance of the position is not dispositive as to when she began working on behalf of SPO. The Court will address that argument herein.

[3] Plaintiffs dispute this fact because of Defendant's purported failure to produce rules regarding who can attend executive sessions, but they do not submit any evidence to counter Ms. Padilla's sworn statement that she did not attend SPB Executive sessions. Plaintiffs thus failed to create a genuine dispute as to this fact.

Ms. Padilla averred in her Declaration that she accepted the Governor's September 20, 2021, offer the same day, but for State payroll administrative purposes and to ensure her move from NMDOH to SPO would not result in a "break in service" for calculation of retirement benefits, her start date at SPO is reflected in the State system as Saturday, September 18, 2021. (Padilla Decl. ¶ 8, ECF No. 189-2.) She further averred that, as part of her onboarding process with SPO, she signed a two-page letter from then-SPO Acting Director Ricky Serna with the subject line on the first page: "Delegation of Certain Line Authority" (hereinafter "Delegation Letter"). (Padilla Decl. ¶ 9, ECF No. 189-2; Delegation Letter, ECF No. 189-1 at 8 of 9.) The first page of the Delegation Letter is dated September 27, 2021, and says that Ricky Serna delegates to Ms. Padilla certain line authority, as listed in paragraph 1. (Delegation Letter, ECF No. 189-1 at 8 of 9.) The second enumerated paragraph on the first page says the effective date of the delegation is September 27, 2021. (*Id.*) The second page of the letter continues with enumerated paragraphs 3, 4, and 5 concerning the scope of the delegation and is signed by Ricky Serna and Teresa Padilla. (*Id.* at 9 of 9.)

Defendant Padilla satisfied her burden of citing admissible evidence to support her asserted fact that she began working for SPO after she accepted the Deputy Director offer of employment on September 20, 2021.

> **b. Plaintiffs failed to submit admissible evidence from which a reasonable inference could be drawn that Ms. Padilla began her SPO employment in or around May 2021**

Plaintiffs assert that they have evidence from which a jury could find that Ms. Padilla accepted the Deputy Director position for SPO prior to September 20, 2021, and that she testified as a witness at the SPO hearing for Mr. Rodriguez-Ortega while she was the SPO Acting Deputy Director. Plaintiffs attach and rely on Exhibit B (ECF No. 202-2), which has the identical content

as the second page of the Delegation Letter that Defendant Padilla submitted. Plaintiffs, however, highlight the header on the documents:

> Delegation of Certain Line Authority – Amended
> May 4, 2021
> Page 2 of 2

(*Id.*) Plaintiffs argue that a reasonable jury could find from this header that Defendant Padilla signed this document and was performing the duties of the Deputy Director on or before May 4, 2021. (Pls.' Resp. 2, ECF No. 202.) They contend that, because the header has a different date and subject line from the first page that Defendant Padilla submitted, and the first and second pages "clearly were printed on different printers," a jury could find that Ms. Padilla signed the document on May 4, 2021, and that the second page is not the second page of the Delegation Letter dated September 27, 2021. (*See id.* at 10.)

The problem with Plaintiffs' position is that they have no admissible evidence that the second page with the header is really the second page to a letter dated on or before May 4, 2021. To properly authenticate or identify an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Testimony by a witness that an item is what it is claimed to be may satisfy the authentication requirement. Fed. R. Evid. 901(b)(1).

Ms. Padilla averred that on September 27, 2021, she signed a two-page letter with the subject line "Delegation of Certain Line Authority." (*See* Padilla Decl. ¶ 9, ECF No. 189-2.) She further stated in her Declaration that the date in the header is a typographical error because she was not employed by SPO in May 2021, and she was not granted delegation of certain line authority from SPO until September 27, 2021. (*See id.*) She thus authenticated both pages of the Delegation Letter. Plaintiffs argue that the Court cannot award summary judgment to Defendant

Padilla based on her word, given the lack of any documentary evidence to corroborate her start date. But Ms. Padilla's sworn declaration is evidence that may be used to support a motion for summary judgment.

In contrast, Plaintiffs have not authenticated Plaintiffs' Exhibit B (ECF No. 202-2) to establish that it is either a standalone letter or the second page to a different, not-produced document dated and signed on May 4, 2021. Plaintiffs contend that it is not possible to independently authenticate the document, but the Court disagrees. For example, Plaintiffs' Exhibit B was also signed by Ricky Serna, so his testimony would offer an independent avenue to determine when that page was signed and to which document it was the second page. But regardless of whether Plaintiffs could pursue an independent authentication avenue, authentication is required for the Court to consider a document to be admissible evidence on summary judgment. *See In re Harris*, 209 B.R. 990, 995-96 (B.A.P. 10th Cir. 1997) (explaining that documentary evidence that is authenticated constitutes admissible evidence and may be presented in support of a summary judgment motion, but unauthenticated documents, once challenged, cannot be considered by a court in determining a summary judgment motion) (quoting 11 James Wm. Moore *et al.*, *Moore's Federal Practice* §§ 56.10[4][c][i] & 56.14 [2][c] (3d ed.1997)). Based on the record, Plaintiffs have produced no admissible evidence to refute that the second page was to a letter dated and signed on September 27, 2021. The header alone is insufficient to create a genuine issue of fact. *See IBP, Inc. v. Mercantile Bank of Topeka*, 6 F.Supp.2d 1258, 1263 (D.Kan. 1998) ("It is well established, however, that a party cannot rely on unauthenticated documents to avoid summary judgment.") (citing 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2722 at 382–84 (3d ed. 1998)).

Nor can this Court consider as evidence Ms. Burke's argument that page 1 and page 2 "were clearly printed on two different printers." (*See* Pls.' Resp. to Mot. for Sanctions 6, ECF No. 201.) Arguments by counsel are not evidence. That the fonts of the pages that were electronically scanned into the Court record may visibly appear slightly different is not evidence that the pages could not have been part of the same document. Sworn testimony or other evidence is necessary to establish that the pages came from different printers.

Plaintiffs next attempt to support the inference that Ms. Padilla began working for SPO as early as May 2021, by the alleged fact that Ricky Serna, former Acting Director of SPO, was appointed the Acting Director of the Department of Workforce Solutions in or around April or May 2021. (*See* Pls.' Resp. 5, ECF No. 202.) Plaintiffs attach as Exhibit C the first page of unauthenticated, but purported, May 11, 2021, Minutes for the SPB meeting wherein, according to Acting Director Ricky Serna's report, "in addition to responsibilities to the State Personnel Office, I have been asked to head up the DWS agency on a temporary basis," and he thanked both groups that have enabled him to do both jobs. (Pls.' Ex. C, ECF No. 202-3.) According to Plaintiffs, the fact that Mr. Serna was working both jobs "would be an extremely logical reason to bring in a Deputy Director at SPO to 'help' him." (Pls.' Resp. 12, ECF No. 202.) Plaintiffs' assertion that Ms. Padilla began working for SPO to help Mr. Serna in May 2021 prior to her official appointment is speculation, not a permissible, reasonable inference based on the evidence. For example, using similar reasoning, Ms. Padilla could also have been brought in when she avers, in September 2021, if it became evident to Mr. Serna after working both jobs for a time that he needed help. A jury could not make a factual determination between either of these allegations because there is no admissible evidence concerning the motivation of Mr. Serna or others for bringing in Ms. Padilla when SPO did. The evidence of the SPB meeting minutes, even if considered by the Court, is

insufficient to establish that Ms. Padilla began working for SPO in May 2021, rather than in September 2021.

Plaintiffs also rely on documents regarding Ms. Padilla's successor, Dylan Lange. After Ms. Padilla's retirement, Dylan Lange received a "Personnel Action: Pay Rate Change" from "General Counsel" to "Agency Director," effective September 2, 2023, (*see* Personnel/Position Action Request Form ("PARF"), ECF No. 201-2), but the sunshine portal, while showing the raise, still listed Mr. Lange's position as "General Counsel," (*compare* Pls.' Resp. 6, ECF No. 202; Pls.' Ex. 3, ECF No. 201-3, *with* Def.'s Reply 8, ECF No. 208). By letter dated December 19, 2023, the Governor's Chief of Staff offered Mr. Lange the position of Agency Director for the SPO, effective December 23, 2023. (Letter, ECF No. 202-9.) Another PARF signed on or around January 2, 2024, states that Mr. Lange received the "Personnel Action: Transfer" of job title from "General Counsel" to "Agency Director" effective December 23, 2023. (*See* PARF, ECF No. 201-4.) Plaintiffs assert that a jury could reasonably infer from the public records about Mr. Lange's appointment that Ms. Padilla, like Mr. Lange, was serving as the Acting SPO Deputy Director months before public records officially reflect the transfer to Deputy Director. The Court disagrees that the evidence, viewed in Plaintiffs' favor, supports that leap in logic. That Mr. Lange may have been serving as the Acting Director for SPO before his official appointment is not evidence from which a reasonable inference could be drawn that Ms. Padilla began serving as Acting Deputy Director for SPO prior to September 2021, and as early as May 2021.

Finally, Plaintiffs assert that an inference that Ms. Padilla began working for SPO in or around May 2021 is reasonable considering the above collective evidence and that Defendants failed to produce Ms. Padilla's PARFs for her SPO transfer or her NMDOH emails between May and September 2021 that might reveal that she was being addressed as the Acting SPO Deputy

Director prior to September 2021. According to Plaintiffs, "it is reasonable to believe that those missing documents would be unfavorable to her defense." (Pls.' Resp. 13, ECF No. 202.) Such a conclusion is speculation, not evidence. Contrary to Plaintiffs' argument, the lack of evidence is not evidence that may refute admissible evidence on summary judgment. While a jury may rely on an adverse inference instruction, as discussed *infra*, the record does not support such a sanction based on the spoliation doctrine.

Piling speculation upon speculation does not properly refute Defendant Padilla's evidence. *See Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) ("In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."). Plaintiffs did not submit authenticated evidence from which a favorable inference could reasonably be drawn that Ms. Padilla began working for SPO in May 2021, not September 2021. Consequently, the Court finds, for purposes of this motion for summary judgment, that there is no genuine issue of material fact regarding the date Ms. Padilla began working for SPO and that the admissible evidence in the record, construed in Plaintiffs' favor, shows that Ms. Padilla began working as the SPO Deputy Director on or after September 20, 2021. *See* Fed. R. Civ. P. 56(e)(2) (explaining that when a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion for summary judgment).

### 4.  Raises for ALJ Baca and Haught

ALJ Haught received a raise that was approved on April 23, 2021, the second day of Mr. Rodriguez's hearing. (*See* Pls.' UF ¶ 17, ECF No. 202 (citing Compensation Action Request Form, ECF No. 188-4).) Ms. Padilla did not have authority or anything to do with granting ALJ Haught

a raise before ALJ Haught issued her recommended decision regarding Mr. Rodriguez on August 18, 2021. (Padilla Decl. ¶ 22, ECF No. 189-2.)[4]

ALJ Baca also received a pay raise. (*See* Pls.' UF ¶ 18, ECF No. 202.) The only date on the unsigned Compensation Action Request Form regarding ALJ Baca's promotional increase was April 5, 2021. (*See* Pls.' UF ¶ 18, ECF No. 202; Compensation Action Request Form, ECF No. 188-3.) Ms. Padilla was not involved in granting ALJ Baca a raise before he issued his October 14, 2021, recommended decision. (Padilla Decl. ¶ 30, ECF No. 189-2.)[5]

### 5. Administrative and Procedural History

On September 17, 2021, the SPB adopted Judge Haught's recommended decision and affirmed Mr. Rodriguez's dismissal. (Def.'s UF ¶ 15, ECF No. 189.) Ms. Padilla did not attend the September 17, 2021, SPB meeting or the SPB executive session during which ALJ Haught's recommended decision regarding Mr. Rodriguez was discussed and adopted by the SPB. (Def.'s UF ¶ 16, ECF No. 189; Padilla Decl. ¶ 19, ECF No. 189-2.)[6] On October 12, 2021, Plaintiffs filed a complaint in state court against David Rich, Kenneth Lucero, and the NMDOH, (collectively, "the NMDOH Defendants"), which was removed on November 24, 2021. (*See* Notice, ECF No. 1; Compl., ECF No. 1-1.) The complaint contained FMLA claims against David Rich, various

---

[4] Plaintiffs dispute this fact based on Plaintiffs' Exhibit B, but for the reasons discussed *supra*, the header alone is insufficient to create a genuine dispute of fact to refute that Ms. Padilla was not involved in the decision regarding ALJ Haught's raise.

[5] Plaintiffs note that ALJ Haught's raise is documented in a May 14, 2021, letter notifying her that her raise was approved and effective April 17, 2021, (*see* Def.'s Ex. 5, ECF No. 188-5), but that a similar letter was never produced for ALJ Baca (*see* Pls.' Resp. to Mot. for Sanctions 9, ECF No. 201). Plaintiffs assert that ALJ Baca did not receive the raise until September 2021, (*see id.*), relying on a previously filed exhibit (ECF No. 34-3), which Defendant objects to as not being authenticated. Having reviewed ECF No. 34-3, the Court agrees with Defendant that the exhibit relied upon by Plaintiffs is not authenticated and thus not admissible evidence upon which the Court may rely. Plaintiffs have not submitted any admissible evidence indicating that ALJ Baca received his pay raise after Ms. Padilla began as Deputy Director or that Ms. Padilla had any involvement in approving his or ALJ Haught's pay raises. Consequently, Plaintiffs failed to properly refute Defendant Padilla's evidence that she was not involved in the pay raises, and thus, the Court considers that fact undisputed for purposes of resolving this motion.

[6] Plaintiffs state that they have no information to admit or dispute this fact. (*See* Pls.' Resp. 3, ECF No. 202.) A party fails to properly address a fact supported by admissible evidence when he neglects to cite to particular materials in the record that refute the fact. *See* Fed. R. Civ. P. 56(c)(1)(A). The Court thus finds this fact undisputed.

state law claims against David Rich, Kenneth Lucero, and NMDOH, and a petition for writ of certiorari to appeal Mr. Rodriguez's termination. (*See* Compl. ECF No. 1-1.)

On December 10, 2021, the SPB adopted ALJ Baca's proposed FOFs, agreed with his proposed conclusions of law, and affirmed the dismissal of Mr. Rodriguez-Ortega's appeal of his termination. (*See* AR 20-028 at 183-84.) Although Ms. Padilla was the SPO Deputy Director at that time, she did not attend the SPB Executive Session on December 10, 2021, nor did she play any role in the SPB's evaluation of, or determination to adopt, ALJ Baca's recommended decision. (Padilla Decl. ¶ 29, ECF No. 189-2.)[7] Plaintiffs subsequently amended their complaint on January 8, 2022, to add Count VIII, titled a petition for writ of certiorari, to appeal Mr. Rodriguez-Ortega's termination. (*See* Am. Compl. 27-28, ECF No. 18.)

As relevant here, the NMDOH Defendants moved to dismiss Counts VII and VIII, arguing that Plaintiffs improperly attempted to appeal the SPB's decisions by bringing petitions for writ of certiorari, rather than filing notices of appeal, as required by the procedural rules. (*See* Mem. Op. and Order 8, ECF No. 26.) This Court denied the motion to dismiss Counts VII and VIII, despite Plaintiffs' misnaming their appeals. (*See id*. at 8-11, 32.) The misnaming of the appeals, however, contributed to confusion at SPO and a delay in filing the administrative record. (*See id.* at 8-11; Mem. Op. and Order 3-11, ECF No. 42.) On August 3, 2023, this Court entered a Notice clarifying that Plaintiffs had filed notices of appeals to assist Plaintiffs in their efforts to secure the administrative record from SPO. (Notice, ECF No. 43.) The administrative record was lodged with the Court shortly thereafter on September 27, 2023. (Notice, ECF No. 70.) Ms. Padilla "was not involved, either as SPO's Deputy Director or Director, with the SPO Adjudication Department's

---

[7] Plaintiffs admit they have no information to refute this fact, so the Court considers it undisputed.

handling and transmission of Plaintiffs' administrative records to this Court." (Padilla's Decl. ¶ 31, ECF No. 189-2; Def.'s UF ¶ 39, ECF No. 189.)[8]

Meanwhile, on May 25, 2023, Plaintiffs filed a motion to amend, seeking to add Defendant Padilla to the case. (Pls.' Mot., ECF No. 38.) This Court subsequently granted in part Plaintiffs' motion to amend on October 30, 2023. (Mem. Op. and Order 3-7, ECF No. 104.) The Court did not permit Plaintiffs to add NMHRA and FMLA claims against Ms. Padilla based on futility of amendment. (Mem. Op. and Order 8, ECF No. 104.) As for Plaintiffs' proposed § 1983 due process claim against Ms. Padilla, the NMDOH Defendants did not object to Plaintiffs' request to amend the complaint to add Count IX, so the Court permitted its addition. (*Id.* at 7-8.)

Plaintiffs filed their amended complaint on November 1, 2023, that included Count IX, a § 1983 due process claim against Ms. Padilla. (Second Am. Compl. ¶¶ 214-35, ECF No. 106.) According to the claim, "Defendant Padilla acted under color of law when she knowingly accepted a transfer to SPO while it was adjudicating decisions made by herself and her direct subordinates," creating the appearance of impropriety and bias. (*Id.* ¶¶ 218, 224.) Plaintiffs allege that on September 18, 2021, Ms. Padilla started as SPO Deputy Director, (*id.* ¶ 97), yet she did not disclose her SPO appointment to Plaintiff or the Court, despite that she was a material witness for the defense in Mr. Rodriguez-Ortega's appeal and that ALJ Baca would judge the credibility of his boss, (*id.* ¶¶ 99-100, 103). Plaintiffs further contend that the ALJs received raises after the appeal hearings, but before they made their decisions, which would require the approval by the SPB directors, creating the appearance of impropriety. (*Id.* ¶¶ 101-02, 221.) Additionally, the second

---

[8] Plaintiffs dispute this fact, asserting that Defendant's UF ¶ 39 "is too vague" because the delay occurred for two years and that it is unclear from her Declaration whether Ms. Padilla meant "when they actually handled and transmitted the record, or for the two years where they refused to handle or transmit the record." (Pls.' Resp. 4, ECF No. 202.) The Court does not find the statement in Ms. Padilla's declaration unclear. Nor do Plaintiffs submit admissible evidence that disputes this fact with evidence that Ms. Padilla was somehow involved with the decision to not send the administrative record. Consequently, the Court finds that there is no genuine dispute of fact that Ms. Padilla was not involved with the decisions or actions causing the delay in transmitting the administrative record.

amended complaint asserts that SPO staff refused to transmit the administrative record to the Court, at the time Ms. Padilla was Deputy Director and under her leadership. (*See id.* ¶¶ 104, 230-32.) Finally, Count IX alleges that ALJ Haught permitted a witness to hold and feed her newborn baby while testifying, depriving Mr. Rodriguez of a fair trial. (*Id.* ¶ 219.)

Defendant Padilla moved to dismiss the Section 1983 claim against her under Rule 12(b)(6). (Def.'s Mot. to Dismiss, ECF No. 118.) After the parties conducted discovery, she also moved for summary judgment (ECF No. 189) and for Rule 11 sanctions (ECF No. 188). Given that the parties had an opportunity to develop the record, the Court considers Defendant's motion for summary judgment first.

## C. ANALYSIS

### 1. The Court will not impose judgment against Defendant Padilla based on spoliation of evidence

Before turning to the merits of Plaintiffs' due process claim, the Court must address an issue raised by Plaintiffs in their response regarding spoliation of evidence: "The sheer amount of spoliated records involving Defendant Padilla's move to deputy director is enough for this Court to grant Default judgment to Plaintiffs." (Pls.' Resp. 8, ECF No. 202.) Plaintiffs also assert that it is reasonable to believe from the "widespread" spoliation of records related to Defendant Padilla's work that the missing documents would be unfavorable to her defense. (*Id.* at 13.) Despite the request for default judgment and a statement that could be construed as a request for an adverse inference, Plaintiffs cited no authority in their response to support their request for sanctions. The Court nevertheless considers the law regarding sanctions for spoliation and finds that granting default judgment or allowing for an adverse inference against Defendant Padilla are not warranted.

Putative litigants are obligated to preserve evidence when they have notice that the evidence is relevant to litigation or when they should have known that the evidence may be relevant

to future litigation. *Browder v. City of Albuquerque*, 187 F.Supp.3d 1288, 1294 (D.N.M. 2016) (quoting *Zubulake v. UBS Warburg LLC (Zubulake 1)*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). This duty arises when potential litigation becomes "imminent." *Id.* "Spoliation includes the intentional or negligent destruction or loss of tangible and relevant evidence which impairs a party's ability to prove or defend a claim." *Id.* "Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (internal quotations omitted)). If the moving party seeks an adverse inference or default judgment to remedy the spoliation, the party must also prove bad faith. *Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015). Negligence is not enough, because it does not support an inference of consciousness of a weak case. *Turner*, 563 F.3d at 1149.

Plaintiffs assert that spoliation sanctions are appropriate because SPO failed to produce "many records of Defendant Padilla's employment and how much she was paid, who approved it and when it was approved." (Pls.' Resp. 8, ECF No. 202.) Although "SPO produced the records in question for Defendant Padilla's promotion to Director," (*see id.*), Plaintiffs contend that SPO destroyed or failed to produce other relevant evidence, such as a PARF documenting her move to Deputy Director, metadata for documents, and SPO emails from her time as Deputy Director, and that the NMDOH failed to preserve Ms. Padilla's email for the 20 years she worked at NMDOH. (*Id.* at 8-12). Plaintiffs assert that Defendant Padilla also claims not to have in her possession direct deposit slips, pay stubs, or other information reflecting how and when she was paid. (*Id.* at 11.) According to Plaintiffs, these failures to preserve and produce constitute spoliation because the agency was reasonably aware of litigation when Mr. Rodriguez-Ortega appealed his termination

and when he individually named Ms. Padilla in his HRB charge. Plaintiffs argue they were prejudiced by the failure because the emails might have shown whether Ms. Padilla was performing SPO duties delegated to her on May 4, 2021.

Plaintiffs' sole § 1983 claim against Defendant Padilla arises from her role as SPO Deputy Director and Director. Plaintiffs have not shown Defendant Padilla or another SPO employee under her direction intentionally destroyed or ordered the destruction of some of her personnel files. Ms. Padilla retired from SPO on September 1, 2023, prior to the Court permitting Plaintiffs to add a claim against her in this suit on October 30, 2023. Plaintiffs have not demonstrated that she retained the sought after personnel files after she left SPO's employment, but purposefully destroyed them upon learning she was being brought into the suit in her individual capacity as SPO Deputy Director and Director. Moreover, Defendant Padilla does not bear culpability for NMDOH's failure to retain her emails after she left NMDOH. Plaintiffs are not entitled to a spoliation remedy against Defendant Padilla because they failed to show bad faith. *Cf. Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) (concluding plaintiff did not show entitlement to adverse inference instruction under spoliation doctrine where plaintiff could not point to evidence showing employee lost records in bad faith and where other records produced by defendant undermined inference of bad faith).

Nor have Plaintiffs shown prejudice caused by the failure to produce the requested evidence to warrant the severe sanction of default judgment or an adverse inference. SPO produced some employment records regarding Ms. Padilla's positions at SPO, such as the Delegation Letter and September 17, 2021, SPD Meeting Minutes that do not list Ms. Padilla as Deputy Director. (*Compare* Def.'s Ex. 2, ECF No. 206-2, *with* Def.'s Ex. 3, ECF No. 206-3 (December 10, 2021,

SPD Meeting Minutes listing Ms. Padilla as Deputy Director).)[9] Additionally, Plaintiffs had other means for accessing this information through publicly available documents. For example, Plaintiffs acknowledged in their response to the motion for Rule 11 sanctions that they "used the official start date for Defendant Padilla which is purportedly September 18, 2021 according to the Sunshine Portal." (Pls.' Resp. 1, ECF No. 201.) Plaintiffs also could have deposed other SPO employees working at SPO between May and September 2021 to determine whether Ms. Padilla began working at SPO prior to September 20, 2021, including Ricky Serna who also signed the Delegation Letter. For the foregoing reasons, the Court denies Plaintiffs' request to award sanctions against Defendant Padilla for spoliation of evidence.

### 2. The Court will Enter Summary Judgment for Defendant Padilla on Plaintiffs' Due Process Claim

Plaintiffs assert a due process claim against Defendant Padilla under 42 U.S.C. § 1983 based on her involvement and/or interference with SOP's adjudication and handling of Plaintiffs' administrative records. Section 1983 provides that every person who, under color of law, subjects any person to a deprivation of federal or constitutional rights "shall be liable to the party injured in an action at law…." 42 U.S.C. § 1983. To succeed under § 1983, a plaintiff must demonstrate acts committed by government officials acting under color of law that result in a deprivation of rights secured by the United States Constitution or laws of the United States. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Generally, a public employee acts under color of state law while acting in her official capacity or while exercising her responsibilities under state law. *Id.* at 50. Private conduct that is not "fairly attributable to the State is not actionable under § 1983. *Jojola v. Chavez*,

---

[9] Defendant also asserts that Plaintiffs received in discovery the audio recording from the October 29, 2021, SPB meeting in which Ricky Serna, then-Acting Director of SPO, introduced Ms. Padilla as the new Deputy Director, and that the publicly available SPB Meeting Minutes for that meeting also reflect that Ms. Padilla was introduced as the newly appointed Deputy Director. (*See* Def.'s Reply in Supp. of Mot. for Sanctions 8, ECF No. 206.)

55 F.3d 488, 492 (10th Cir. 1995). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (quoting *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997)).

As an initial matter, Defendant Padilla asserts that Plaintiffs have not shown a violation of due process, but instead base their claim on the violation of the New Mexico Administrative Code, which cannot be the source of a constitutional right. Although Plaintiffs neglected to assert that their due process claim was brought under the Fourteenth Amendment, the Court will so construe Plaintiffs' second amended complaint, given that they asserted a procedural due process claim to a fair and impartial hearing before a disinterested, unbiased trier of fact under § 1983. (*See* Second Am. Compl. ¶¶ 222-23, ECF No. 106.)

The Fourteenth Amendment guarantees that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To prove a violation of the Fourteenth Amendment right to procedural due process, the plaintiff must show (1) that a state actor deprived him of a liberty or property interest, and (2) that the plaintiff did not receive constitutionally sufficient procedures. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). Defendant Padilla for purposes of this motion does not contest that Plaintiffs' right to continued employment is a protected property interest. Consequently, the only question is whether Defendant Padilla deprived them of constitutionally sufficient procedures.

A public employer usually must offer "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotations omitted). For government employees, a pretermination hearing requires oral or written notice to the employee

of the charges against him, an explanation of the employer's evidence, and an opportunity for the employee to respond. *See Montgomery v. City of Ardmore*, 365 F.3d 926, 935, 938 (10th Cir. 2004). When the pretermination process gives the employee little chance to respond, then post-termination hearing procedures become more important. *Id.* at 938. "A failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause." *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986).

Here, it is undisputed Plaintiffs each received written notice of the basis for their respective proposed termination actions, an explanation, and an opportunity to present their side of the story in writing, before NMDOH issued notices of final action terminating their respective employment. It is likewise undisputed that Plaintiffs received post-termination evidentiary hearings in which they were represented by counsel and had the opportunity to call and cross-examine witnesses, present evidence, and submit their arguments. In their second amended complaint, Plaintiffs focus on four aspects of the post-termination hearing in arguing that Defendant Padilla violated their rights to due process: (1) Defendant Padilla accepted a transfer of employment to the SPO, without informing Plaintiffs, while Plaintiffs were adjudicating the propriety of their terminations before her subordinates, creating the appearance of impropriety and bias, (*see* Second Am. Compl. ¶¶ 218, 224-25, 227-29, ECF No. 106); (2) ALJ Haught allowed a witness to hold and feed her newborn baby while testifying at the hearing, (*id.* ¶ 219); (3) both ALJs received raises after hearing Plaintiffs' appeals but before upholding their terminations, creating the appearance of impropriety, (*id.* ¶¶ 221, 226); and (4) SPO, under Defendant Padilla's leadership, refused to transmit Plaintiffs' administrative records to federal court, until September 27, 2023, interfering with this litigation and creating the appearance of impropriety, (*id.* ¶¶ 231-34).

Plaintiffs appear to have discarded the second and fourth asserted grounds for liability, as they did not argue in support of either in their response. They therefore have waived those issues. Moreover, even if they did not abandon the arguments, the facts underlying the second and fourth theories do not support a due process claim. ALJ Haught's purported decision to allow a witness to hold a baby in the hearing is not an act attributable to Defendant Padilla that could be a basis for a Section 1983 claim against her. Plaintiffs failed to present evidence that Defendant Padilla acted to cause a delay in the transmission of the administrative record in this case. In any event, the Court received the administrative record, and the delay did not cause Plaintiffs to receive constitutionally deficient procedures. The Court will examine the two remaining grounds in turn.

### a. Defendant Padilla's acceptance of the transfer to the position of SPO Deputy Director does not support a Section 1983 due process claim against her

"An impartial tribunal is an essential element of a due process hearing." *Mangels*, 789 F.2d at 838 (quoting *Miller v. City of Mission*, 705 F.2d 368, 372 (10th Cir. 1983)). Hearing officers receive a presumption of honesty and integrity. *Riggins v. Goodman*, 572 F.3d 1101, 1112 (10th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). As a result, "there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Mangels*, 789 F.2d at 838. "Due process is violated only when the risk of unfairness is intolerably high." *Riggins*, 572 F.3d at 1112 (internal quotations omitted).

Plaintiffs failed to cite to Section 1983 case law or discuss the elements of the cause of action in support of their claim. Instead, Plaintiffs rely on the New Mexico Court of Appeals case, *Benavidez v. Bernalillo County Board of County Commissioners*, 2021-NMCA-029, 493 P.3d 1024. In *Benavidez*, the New Mexico Court of Appeals stated that, where a due process violation claim is based on the alleged bias of the factfinder, the inquiry is not whether the factfinder is

21

actually biased or prejudiced, "but whether, in the natural course of events, there is an indication of a possible temptation to an average [person] sitting as a judge to try the case with bias for or against any issue presented[.]" *Id.* ¶ 33 (quoting *Reid v. N.M. Bd. of Exam'rs in Optometry*, 1979-NMSC-005, ¶ 7, 589 P.2d 198). The statement in *Benavidez*, however, was made in the context of reviewing the district court's reversal of the Board of County Commissioners' approval of a zone map amendment – not a Section 1983 case requiring personal involvement by the named defendant. *See id.* ¶¶ 5-15, 30, 40.[10]

To succeed on a Section 1983 claim, Plaintiffs must show that Defendant Padilla committed an act under color of law that resulted in a deprivation of their due process rights. "Even when state employees are performing the services for which the state pays them, they may not be state actors while performing functions that the state has no right to control." *Hall v. Witteman*, 584 F.3d 859, 866 (10th Cir. 2009). An act by a state employee as part of a personal pursuit is not an action under color of law in a Section 1983 claim based on the Fourteenth Amendment. *See id.* Plaintiffs have not cited authority that Ms. Padilla's act of accepting a job was an act under color of law. There is no evidence before the Court that Ms. Padilla's acceptance of her position was a function for which the State had the right to control and is thus not an act under color of law under Section 1983. Nor have Plaintiffs shown that Ms. Padilla's mere acceptance of the position resulted in a due process violation. This is not a case, for example, where there is evidence that Defendant Padilla committed a specific act, such as a bribe or threat, designed to influence the administrative law judges. Plaintiffs' due process claim is against Defendant Padilla, who was not the trier of fact or decisionmaker in either of Plaintiffs' post-termination hearings. ALJ Haught and ALJ Baca

---

[10] Plaintiffs have appealed the administrative decisions upholding their terminations in separate counts of the second amended complaint. This Memorandum Opinion and Order focuses solely on the merits of the § 1983 due process claim and does not address the merits of Counts VII and VIII.

rendered the decisions. Under Section 1983, a supervisor cannot be held liable vicariously liable for the actions of her subordinates; rather there must be personal involvement by the defendant in the alleged constitutional violation. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

Plaintiffs nevertheless assert that Defendant Padilla was working on behalf of SPO on or before May 4, 2021, and at the time she testified at Mr. Rodriguez-Ortega's post-termination hearing. (*See* Pls.' Resp. 15, ECF No. 202.) As discussed *supra*, Plaintiffs did not submit admissible evidence to create a genuine dispute of fact that Ms. Padilla worked for SPO prior to September 20, 2021. Nevertheless, it is undisputed that Mr. Rodriguez-Ortega's post-termination hearing occurred on June 10-11, 2021, and that Ms. Padilla testified at that hearing. Her testimony was sworn under penalty of perjury, and when asked by counsel where she worked, she testified to working for NMDOH in the HR Bureau. (*See* AR 20-028, AR Index Day 1 (Part 1), 6:06:15-8:51.) Plaintiffs do not assert that Ms. Padilla testified falsely at that hearing as a basis for their due process claim. Instead, they argue that her acceptance of the position of Deputy Director for SPO put her in a position of authority over those adjudicating appeals in which she was involved. For the reasons given above, Plaintiffs have not established that the mere act of accepting the appointment of Deputy Director of SPO is an act under color of law that violated Plaintiffs' due process rights.

### b. That the ALJs received raises does not support a due process claim against Defendant Padilla

Plaintiffs next contend that Ms. Padilla was delegated duties involving ALJ Haught's and ALJ Baca's compensation, including their raises. (Pls.' Resp. 15, ECF No. 202.) The record, however, does not support Plaintiffs' allegation that Defendant Padilla was involved in approving pay raises for ALJ Haught or ALJ Baca during the pendency of Plaintiffs' administrative appeals. Even according to Plaintiffs' assertions, ALJ Haught's raise was approved on April 23, 2021, prior

to when the evidence shows Ms. Padilla began as SPO Deputy Director. As for ALJ Baca, according to Plaintiffs' contentions, his pay raise occurred sometime between April 5, 2021, and September 2021. (*See* Pls.' Resp. 7, ECF No. 202.) Plaintiffs have not submitted admissible evidence that ALJ Baca received his raise while Ms. Padilla worked for SPO. Nor have Plaintiffs submitted authenticated, admissible evidence to show that Ms. Padilla approved either of the raises. Plaintiffs have thus failed to present admissible evidence that Ms. Padilla had personal involvement in the raises to support a due process claim.

Accordingly, Defendant Padilla is entitled to summary judgment on Count IX, the only claim against her. Defendant Padilla will thus be dismissed with prejudice from this case.

## II.     Motion to Dismiss

Defendant Padilla also moved to dismiss Count IX under Rule 12(b)(6). Because this Court has determined, based on the summary judgment record, that Defendant Padilla is entitled to judgment as a matter of law and dismissal from the case under Rule 56, it need not conduct a separate analysis of whether dismissal is also warranted under Rule 12(b)(6). The Court will thus deny the motion to dismiss as moot.

## III.     Motion for Sanctions

Defendant Padilla requests the Court find that Plaintiffs' counsel, Heather Burke, violated Rule 11(b), and as a sanction, strike the claims against Ms. Padilla and order Ms. Burke to pay Ms. Padilla's costs and her attorneys' fees in this lawsuit. According to Defendant, Ms. Burke filed the second amended complaint despite knowing her clients had no evidence to support it, despite the impossibility of the allegations, and despite no legal authority supporting the claim.

### A.  Standard

Rule 11 of the Federal Rules of Civil Procedure provides that:

> By presenting to the court a pleading, written motion, or other paper … an attorney … certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose . . .;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support….

Fed. R. Civ. P. 11(b). To award sanctions, a court must first find that a pleading violates the Rule 11 standard, and then determine the appropriate sanction. *Collins v. Daniels*, 916 F.3d 1302, 1319 (10th Cir. 2019). Rule 11 imposes an affirmative duty on counsel to conduct a reasonable inquiry into the facts and the law before filing a pleading or written paper. *Id.* at 1320. In deciding whether to impose Rule 11 sanctions against an attorney, a district court must apply an objective standard and determine whether a reasonable and competent attorney would believe in the merit of an argument or claim and file such a document. *See id.* If a court finds that a sanction is warranted, the court must limit the sanction "to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

### B.  Analysis

Prior to adding Count IX, Plaintiffs sought leave to amend from this Court. The Court allowed amendment of the one claim because the NMDOH Defendants did not object to it, despite having objected to Plaintiffs' other proposed claims against Ms. Padilla. The Court is disinclined to award Rule 11 sanctions against counsel, given that the Court permitted the amendment. Moreover, the record reveals that Ms. Padilla was appointed SPO Deputy Director before ALJ Baca issued his written decision on Mr. Rodriguez-Ortega's appeal and that ALJ Baca's decision included citation to her witness testimony. Those facts provide a non-frivolous factual basis to

dispute the impartiality of ALJ Baca under due process principles in the appeal of Mr. Rodriguez-Ortega's termination. Those facts alone, however, are not enough to sustain a Section 1983 claim against Ms. Padilla. It appears from the briefing that Ms. Burke did not thoroughly research or analyze Section 1983 law to understand the requisite elements for a Section 1983 claim before she plead the claim. An objectively reasonable attorney would make a reasonable inquiry into the legal elements necessary to sustain a Section 1983 claim before asserting that claim.

This is not the first time Ms. Burke has faced a motion for Rule 11 sanctions against her for failing to conduct sufficient legal research on an issue prior to filing a brief. In the case of *Rogers v. Riggs, et al.*, 21-CV-445-SWS-KHR (D.N.M.), the defendants sought Rule 11 sanctions, arguing that Ms. Burke filed a motion to reopen that was unreasonable, vexatious, and frivolous. *See id.*, Order 5-6, ECF No. 147. In a May 1, 2024, Order, the Honorable Scott W. Skavdahl, denied the request for Rule 11 sanctions, but noted that Ms. Burke's "legal research on this issue is lacking, which leaves her motion unsupported in the law, and researching the law rather than filing a bare-bones motions would have been the better pursuit." *Id.*, Order at 6. Judge Skavdahl's admonition, however, occurred after the motion for sanctions in this case was filed, so the Court cannot find that Ms. Burke had previously been warned about the need to conduct more thorough research.

The Court declines to award sanctions against Ms. Burke in the form of attorneys' fees and costs, finding that an admonition instead will suffice to deter repetition. Ms. Burke is cautioned that she must conduct a reasonable inquiry into the law before filing any written paper in federal court. Her failure to do so in the future may result in the imposition of Rule 11 sanctions against her, given the repetition of the conduct.

**IT IS THEREFORE ORDERED** that

1. Defendant Padilla's *Motion for Summary Judgment* (**ECF No. 189**) is **GRANTED** and Count IX is **DISMISSED WITH PREJUDICE**.

2. Defendant Padilla's *Motion to Dismiss Plaintiff's 42 U.S.C. § 1983 Claim (Count IX)* (**ECF No. 118**) is **DENIED as MOOT** because this Court has dismissed the claim on summary judgment.

3. Defendant Padilla's *Motion for Rule 11 Sanctions* (**ECF No. 188**) is **DENIED**.

4. Defendant L. Teresa Padilla is **DISMISSED** from the case.

_____

SENIOR UNITED STATES DISTRICT JUDGE