## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JEREMY RODRIGUEZ-ORTEGA and**
**JOSHUA RODRIGUEZ,**

       **Plaintiffs,**

**v.**                                        **Civ. No.  21-cv-01129 JCH/KK**

**DAVID RICH, KENNETH LUCERO,**
**in their official and individual capacities, and**
**NEW MEXICO DEPARTMENT OF HEALTH,**

       **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

     This matter is before the Court on the *Motion for Summary Judgment on Jeremy Rodriguez-Ortega's Claims* (ECF No. 166) filed by Defendants David Rich, Kenneth Lucero, and the New Mexico Department of Health ("NMDOH") (collectively, "Defendants"). Defendants seek summary judgment on Plaintiff Jeremy Rodriguez-Ortega's federal claims for interference and retaliation in violation of the Federal Medical Leave Act ("FMLA") against Defendant Rich and on his state-law claim for violation of the New Mexico Human Rights Act ("NMHRA") against Defendants Rich, Lucero, and the NMDOH. Having considered the motion, briefs, evidence, and applicable law, the Court finds that Defendant Rich is entitled to summary judgment on Plaintiff Rodriguez-Ortega's claims for FMLA interference (Count I) and FMLA retaliation (Count II). Dismissal of the FMLA claims resolves all the remaining federal claims in the case. The Court declines supplemental jurisdiction over the remaining state-law claims and will remand those claims to the state court from which they were removed. The Court will not rule on whether

Defendants are entitled to summary judgment on the NMHRA claim, leaving that decision for the state court. Accordingly, the Court will grant Defendants' motion for summary judgment in part.

## I.      SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the moving party initially bears the burden of showing that no genuine issue of material fact exists. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets this burden, the nonmoving party must "come forward with specific facts showing" that genuine issues remain for trial. *Id.* The nonmoving party must go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995). Only disputes of fact that might affect the outcome of the case will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *See id.* at 248.

## II.      FACTUAL BACKGROUND

The evidence before the Court, viewed in the light most favorable to the Plaintiff, shows the following:

### A.  Jeremy Rodriguez-Ortega's Duties and Medical Condition

Plaintiff Jeremy Rodriguez-Ortega was employed by the NMDOH Human Resources ("HR") as an HR Labor Analyst starting in June 2018. (*See* Rodriguez-Ortega Dep. 16:1-10, ECF

No. 166-1; Defs.' Mot. for Summ. J. ("Defs.' MSJ"), Undisputed Fact ("UF") ¶ 1, ECF No. 166.)[1] As part of his HR duties, Mr. Rodriguez-Ortega assisted in preparing disciplinary actions for individuals. (Defs.' MSJ, UF ¶ 1, ECF No. 166.) David Rich was the NMDOH HR Bureau Labor Manager and was Mr. Rodriguez-Ortega's direct manager. (Pls.' First Am. Mot. for Summ. J. ("Pls.' MSJ"), UF ¶ 5, ECF No. 74.)[2] Mr. Rich is an employer under the FMLA because he acted directly and indirectly in the interest of NMDOH. (*Id.*, UF ¶ 6.)

Mr. Rodriguez-Ortega suffers from Polycystic Kidney Disease and Pancreatitis, both FMLA qualifying medical conditions. (Pls.' MSJ, UF ¶ 4, ECF No. 74.) His condition causes him excruciating pain, so he takes a lot of medications on a regular basis. (*See* Rodriguez-Ortega Aff. ¶ 10, ECF No. 184-5; Rodriguez-Ortega Dep. 153:23-155:11, ECF No. 166-11.) During flareups, he takes heavy medication, including narcotic painkillers. (*See* Rodriguez-Ortega Aff. ¶ 10, ECF No. 184-5.) Mr. Rodriguez-Ortega requested and received intermittent FMLA leave beginning in

---

[1] In accordance with Federal Rule of Civil Procedure 56(c)(1), the Court finds a statement to be an "Undisputed Fact" if the asserted fact is admitted or if the opposing party denied the fact but failed to cite to evidence in the record to show a genuine dispute of that fact. Some of Defendants' enumerated factual paragraphs have multiple assertions of fact to which Plaintiff disputed only one of the facts contained within the paragraph. The Court deems those facts admitted to which Plaintiff failed to respond. For example, in Defendants' ¶ 4, they asserted: Mr. Rodriguez-Ortega was hospitalized for several days in February 2020; he did not notify NMDOH or Mr. Rich during that period; and NMDOH marked him AWOL for one day. (*See* Defs.' MSJ 2-3 at ¶ 4, ECF No. 166.) Plaintiff disputed that he was marked AWOL for only one day. (Pl.'s Resp. ¶ 4, ECF No. 184.) The Court finds a dispute of fact as to the number of days NMDOH marked Plaintiff AWOL but finds it undisputed that Mr. Rodriguez-Ortega was hospitalized and that he personally did not notify NMDOH or Mr. Rich during that period of hospitalization. Similarly, Plaintiff in his response asserts some facts to which Defendants failed to dispute with admissible evidence. The Court likewise deems those facts undisputed for purposes of this motion.

[2] In response to Defendants' motion for summary judgment, Plaintiff "references and realleges all facts and arguments in his Motion for Summary Judgment as though laid out fully herein." (Pl.'s Resp. 1, ECF No. 184.) This Court has reviewed the asserted facts and evidence in the supporting and opposing briefs on Plaintiffs' motion for summary judgment and has included the relevant facts herein that have evidentiary support in accordance with Rule 56. Notably, some of the asserted facts were supported by the assertions in the operative complaint at the time and the lack of a timely answer. This Court entered an Order (ECF No. 242) denying Plaintiffs' *Motion to Strike Defendants' Untimely Answer Including Affirmative Defenses*. In Plaintiffs' motion for summary judgment, there are numerous paragraphs in which Plaintiffs assert that "Defendants admit" to a fact, but to which Defendants deny the fact in the response and in their Answer. For many of these disputed facts, no evidence was submitted by either party in support or opposition. Nor are they admissions after the Court refused to strike the Answer. The Court has thus not considered the unsupported assertions without citation to record evidence when considering Defendants' motion for summary judgment.

July 2018 to July 2019. (*Compare* Am. Compl. ¶ 14, ECF No. 106; *with* Answer ¶ 14, ECF No. 112.) At some point, Mr. Rodriguez-Ortega requested and received a larger monitor for his desktop at the office because of his difficulty seeing small text, but otherwise he never asked for any kind of accommodation from NMDOH, and NMDOH never denied a request he made for accommodation. (*See* Rodriguez-Ortega Dep. 190:10-191:12, ECF No. 166-1; AR 20-028 6/11/21 Hr'g 146:27-1:47:37.)

### B. NMDOH's Leave Policy

NMDOH has an *Absences and Other Leave* policy that Mr. Rodriguez-Ortega saw and received. (AR 20-028 6/11/21 Hr'g 1:59:00-2:00:56; Pls.' MSJ, Ex. 4, ECF No. 74-4.)[3] The policy says that employees "shall request leave in advance, except for unanticipated medical conditions, illnesses or other emergencies, by completing" and submitting the proper leave request form to their supervisor. (Pls.' MSJ, Ex. 4, ECF No. 74-4 at 1, 3 of 6.) Per the policy, NMDOH employees were to call a designated number "at their earliest opportunity and no later than 30 minutes after the scheduled beginning of their workday." (*Id.* at 4 of 6.) The policy also stated: "If the employee is incapacitated or if extenuating circumstances exist, a family member may call in on behalf of the employee." (*Id.*)

As relevant here, "Absent Without Leave (AWOL")" is defined by the policy as "failing to report within the first hour of any assigned shift/regular work schedule without authorization, having an unauthorized absence, or appearing for work in violation of Department policy

---

[3] Defendants cite at times to Findings of Facts ("FOFs") made by Administrative Law Judge ("ALJ") Aaron Baca to support their summary judgment motion. Plaintiff objects to consideration of the FOFs because the appeal of the State Personnel Board decision is pending before the Court (Count VIII). Because the appeal is still pending, the Court has not relied on the FOFs made by ALJ Baca, or collateral estoppel principles, when deciding the FMLA claims. Instead, the Court has construed the summary judgment claims based on the evidence in the record. The Court has considered the sworn testimony of witnesses during the administrative hearing that are cited by the parties. Where the parties cited to ALJ Baca's findings, the Court did not consider his FOF, but looked to the underlying sworn testimony or evidence to determine if evidence in the record supported the asserted fact, construing all inferences in Plaintiff's favor.

governing readiness for work." (*Id.* at 1 of 6.) According to the policy, employees are not paid for periods of AWOL and do not accrue sick or annual leave for AWOL periods. (*Id.* at 6 of 6.) The policy deems four or more consecutive days of AWOL as job abandonment, (*id.* at 2 of 6), which "shall be grounds for dismissal without having first imposed progressive discipline," (*id.* at 6 of 6).

Mr. Rich's understanding of the policy was that an employee (who does not work in a facility or do shift work) who fails to notify a supervisor 30 minutes before his shift that he will be absent will be marked AWOL, even when the employee has intermittent FMLA leave. (*See* Rich Dep. 110:25-112:14, ECF No. 74-5.)

### C. Mr. Rodriguez-Ortega's February 2020 absences

Mr. Rodriguez-Ortega was hospitalized for several days, from February 20-23, 2020, due to his disabling health conditions. (*See* Defs.' UF ¶ 4, ECF No. 166; 20-028 AR 6/11/21 Hr'g 1:18:44-1:21:33; Rodriguez-Ortega Aff. ¶ 4, ECF No. 184-5; Pls.' MSJ, Ex. 2, ECF No. 74-2 at 5 of 11.) Mr. Rodriguez-Ortega did not notify NMDOH or his supervisor, Mr. Rich, that he was ill and unable to work. (*See* Defs.' UF ¶ 4, ECF No. 166.) On or about February 21, 2020, Mr. Rich contacted Mr. Rodriguez-Ortega's brother, Joshua Rodriguez, and learned that Mr. Rodriguez-Ortega was hospitalized. (Pls.' MSJ, UF ¶ 10, ECF No. 74.)

Mr. Rodriguez-Ortega did not work from February 21-28, 2020. (*See* Pls.' Resp. 5, UF ¶ 2, ECF No. 184; Pls.' MSJ, Ex. 10, ECF No. 74-10 at 3-4 of 4.) He was incapacitated for about a week and a half, unable to work, and under heavy narcotics. (*See* AR 20-028 6/11/21 Hr'g 1:18:44-1:21:33.) When he was released from the hospital but still incapacitated, somebody stayed with

him to assist with his daily needs. (*See id.* at 1:18:44-1:22:00.)[4] He returned to work on March 2, 2020. (Rodriguez-Ortega Aff. ¶ 4, ECF No. 184-5.)

### D. March 2020 Meeting, Retroactive FMLA Leave for February Absences, and AWOLs

On or about March 4, 2020, Mr. Rich and Teresa Padilla, the then-NMDOH Director of HR, met with Mr. Rodriguez-Ortega to discuss his job, his medical needs, and how his health was affecting his job. (Defs.' MSJ, UF ¶ 5, ECF No. 166; Rodriguez-Ortega Aff. ¶ 5, ECF No. 184-5.) Mr. Rodriguez-Ortega was given FMLA forms to take to his doctors so that he could be approved for FMLA leave. (Pls.' Resp., UF ¶¶ 5-6, ECF No. 184; Rodriguez-Ortega Aff. ¶ 6, ECF No. 184-5.) Mr. Rich told Mr. Rodriguez-Ortega that he had an opportunity to correct his behavior of not notifying him when he was going to be out from work for whatever reason. (*See* Pls.' MSJ, UF ¶ 12, ECF No. 74; Rich Dep. 114:1-9, 117:8-25, ECF No. 74-15.) During the meeting, Mr. Rodriguez-Ortega did not ask for any kind of accommodation, because he did not need one. (*See* Rodriguez-Ortega Dep. 94:18-97:21, ECF No. 166-1.)

Mr. Rich also talked to him in the meeting about medical retirement. (Rich Dep. 113:18-114:15, ECF No. 74-17.) Mr. Rodriguez-Ortega was provided with the information and forms regarding early disability retirement and short-term disability, and he was given instruction on how to complete the documentation. (*See* 20-028 AR 6/11/21 Hr'g 1:22:11-1:24:41.) They told him that he would be coded AWOL because he did not call in per NMDOH's policy, and any future incidents that he does not call-in per NMDOH's policy would be coded as AWOL and grounds for possible termination. (*See id.* at 1:24:41-1:25:32.) Further, they told him that in lieu of discipline for his AWOLs, they were reassigning his job duties and his only responsibility going forward was

---

[4] Defendants dispute this fact because there is no medical evidence to substantiate his claim. (Defs.' Resp. 4, ECF No. 108.) Mr. Rodriguez-Ortega's sworn testimony, however, is evidence of his physical and mental state at the time, so this fact will be construed in Plaintiff's favor.

to qualify for disability retirement. (Rodriguez-Ortega Aff. ¶ 5, ECF No. 184-5.)[5] Mr. Rodriguez-Ortega did not perform any work from home because he was told at the March 2020 meeting that his job duties were being stripped, his work assignments were being distributed to the other labor analysts, and he was to focus on his disability application for Social Security and early retirement. (Rodriguez-Ortega Dep. 87:2-89:10, ECF No. 166-1.)

In March 2020, Mr. Rich approved intermittent leave for Mr. Rodriguez-Ortega, retroactively beginning July 9, 2019, through July 8, 2020. (*See* HRB Labor Sheet, ECF No. 74-1 at 1-9 of 10; Pls.' MSJ, UF ¶ 15, ECF No. 74.) Mr. Rodriguez-Ortega was retroactively approved for FMLA leave for February 24, 25, 26, and for five hours on February 27, 2020. (*See* Timesheet, ECF No. 74-10 at 3 of 4; FMLA Designation Notice, ECF No. 74-2 at 11 of 11.) Mr. Rich, however, considered him AWOL for the dates he did not notify Mr. Rich about his whereabouts. (Pls.' MSJ, UF ¶¶ 17, 19, ECF No. 74.) He was marked AWOL for eight hours on February 21 and 28, 2020, and for three hours on February 27, 2020. (*See* Pls.' MSJ, UF ¶ 18, ECF No. 74; Timesheet, ECF No. 74-10 at 3-4 of 4.)[6] Mr. Rich considered the failure to notify him a violation of NMDOH policy and professional courtesy and thought about imposing a five-day suspension. (*See* Pls.' MSJ, UF ¶ 37, ECF No. 74; Rich Dep. 114:19-116:117:25, ECF No. 74-12.) However,

---

[5] Defendants dispute Mr. Rodriguez-Ortega's version of what Mr. Rich and Ms. Padilla said in the meeting regarding his job duties and medical retirement. Defendants rely on ALJ Baca's finding that neither Mr. Rich nor Ms. Padilla instructed Mr. Rodriguez-Ortega that he had to medically retire from his job. (*See* Defs.' MSJ ¶ 5, ECF No. 166 (citing AR 20-028 RP 133 ¶ 15); 20-028 AR 6/10/21 Hr'g 1:39:14-1:40:32 (Rich Hr'g Testimony).) ALJ Baca relied on the sworn testimony of Mr. Rich, Ms. Padilla, and Mr. Rodriguez-Ortega to support his finding. (20-028 AR 133 ¶ 15.) According to ALJ Baca, Mr. Rich testified that Mr. Rodriguez-Ortega was told that he was expected to continue his normal work, but that another member of the HRB office was assigned to serve as a backup to provide him with coverage during his medical absences. (*See* 20-028 AR 142. *See also* 20-028 AR 6/10/21 Hr'g 1:42:40-1:47:05 (Rich Hr'g Testimony).) As explained herein, the Court need not rely on ALJ Baca's findings to resolve this motion in Defendants' favor. The Court has thus construed this fact in favor of Plaintiff.
[6] ALJ Baca found that NMDOH recorded Mr. Rodriguez-Ortega as AWOL "for one day *while he was hospitalized* in February 2020." (AR 20-028 132 ¶ 13 (emphasis added).) Mr. Rodriguez-Ortega objected to this finding, asserting that the undisputed timesheet evidence shows he was marked AWOL for several days during his hospitalization and recovery. (AR 20-028 169.) ALJ Baca's finding was limited to the period in which he was hospitalized, and he did not make a finding of whether Mr. Rodriguez-Ortega was marked AWOL for days he was recovering at home. Consequently, the finding and timesheet evidence do not conflict.

after marking him AWOL, Mr. Rich did not further discipline him because he knew the absences were due to his medical needs. (Pls.' MSJ, UF ¶ 30, ECF No. 74.)

### E.  Telework and the April Work Assignment

The public health emergency due to the COVID-19 pandemic caused NMDOH in March 2020 to instruct many of its employees to begin teleworking. (Defs.' MSJ, UF ¶ 7, ECF No. 166.) On March 12, 2020, Mr. Rodriguez received a telework agreement. (*See* Rodriguez-Ortega Dep. 49:15-53:24, ECF No. 166-1.) NMDOH adopted teleworking policies, to which Mr. Rodriguez-Ortega agreed, including working an eight-hour schedule Monday to Friday and being accessible by phone and internet within a reasonable time period. (Defs.' MSJ, UF ¶ 7, ECF No. 166.) Mr. Rodriguez-Ortega was given instructions on how to connect remotely to NMDOH computers, though he was not provided a department computer for home use. (*Id.*) As part of the teleworking acknowledgement, he agreed to report any equipment failure to NMDOH IT staff. (*Id.*)

On April 24, 2020, Mr. Rich sent Mr. Rodriguez-Ortega an email stating that Mr. Rodriguez-Ortega failed to complete an assignment, that Mr. Rodriguez's coworkers were doing 99% of his work duties after his health degraded, and that his ability to use FLEX time was revoked. (Pls.' MSJ, UF ¶ 66, ECF No. 74.) Mr. Rich also said in the email to have the work completed by April 27. (*Id.*) Mr. Rodriguez-Ortega did not receive the April 24th email and did not know about the assignment. (*See* AR 20-028 6/11/21 Hr'g 1:49:00-1:51:29.) Mr. Rich sent Mr. Rodriguez-Ortega a follow-up email on May 1, 2020, in which he said:

> I have had no response to this email since I sent it to you a week ago. You have still not completed a DA [Disciplinary Action] for ERD [Epidemiology and Response Division] that should have taken 1-2 hours to edit, at the most. You need to review the DA and the additional information that was provided to you by Monica and see if there are still AWOLs we can discipline this employee for…. This needs to be completed by close of business on Monday, May 4, 2020 or you could face disciplinary action. Also follow up, you were advised to have this to me by close

of business on Monday, April 20 and it is now 2 weeks later. Please explain why this is still no[t] completed.

Next, I advised you on 4.24.2020 that you were no longer able to FLEX your time but yet I see you entered nine (9) hours of telework for yesterday, April 30. I have adjusted your time to 8 hours of telework with one hour of sick leave for the week. Please explain why you ignored my directive to no longer FLEX your time.

Finally, I have no idea what you are doing with your "telework" time because you have provided absolutely no work output at all. You have now been working from home at least seven (7) weeks with literally no work results to speak of nor have you communicated with me or the team as to what you are doing….You were given a huge opportunity, out of our concern for your rapidly deteriorating health, in late February when you had at least 3 incidents of AWOL. The opportunity, rather than face discipline, was to look into medical retirement, et cetera vs. facing up to a 5-day suspension for your AWOLs. You were then provided time to research and look into these matters and the only option you pursued was ALD and to update your FMLA. My extreme leniency with you is coming to end. Unfortunately your conduct and lack of work effort has left [our] extremely busy office to be handled by four rather than five employees. Your teammates have picked up **all** your work assignments, without complaint and we are all having to work harder because you are not. Going forward you are to send me an appointment invite in Outlook for any and all medical appointments with an explanation as to how you code your time in SHARE for the appointment. You are not to FLEX your time at all…. Each day you are teleworking, I want a brief description of what you did with the 8 hours of time you were paid to work….

(Pl.'s Ex. 18, ECF No. 74-18; *see also* Rich Dep. 98:24-99:19, ECF No. 74-22.)

Mr. Rodriguez-Ortega did not receive the May 1st email, nor did he receive any other communications, assignments, calls, or texts from Mr. Rich or any of his coworkers from the time the stay-at-home order was issued until May 15, 2020. (*See* Rodriguez-Ortega Aff. ¶¶ 8, 16-17, ECF No. 184-5.)[7] During the seven weeks he was teleworking, Mr. Rodriguez-Ortega produced no work, and he did not communicate with Mr. Rich or others. (Defs.' Resp. 24, UF ¶ 21, ECF No. 108; Rodriguez-Ortega Dep. 205:5-9, ECF No. 166-1.) He did, however, continue to log on

---

[7] Plaintiff disputes that he was assigned any work on or around April 2020, as Defendants did not produce the original email giving him the work assignment. It is undisputed, however, that Mr. Rich sent Mr. Rodriguez-Ortega two emails, one on April 24 and the other on May 1, referencing that he had an assignment. While Mr. Rodriguez-Ortega testified that he did not receive those emails, it is undisputed his supervisor twice sent him emails referring to the assignment.

every day to the VPN service, and he believed he was logged in to the email system. (Rodriguez-Ortega Aff. ¶ 9, ECF No. 184-5.)

### F. May 2020 Absences

On May 4, 2020, Mr. Rodriguez-Ortega went to the hospital's emergency room for treatment of his kidney disease. (Defs.' MSJ, UF ¶ 10, ECF No. 166.) He notified Mr. Rich via text message as follows: "David I just arrived at the ED at SF Pres Hospital. It's a given I won't be able to telecommute the rest of the day. I'll keep you posted." (*Id.*; Text Message, ECF No. 74-20.) Mr. Rodriguez-Ortega intended for his May 4, 2020, text to give notice of his need for FMLA. (*See* 20-028 AR 6/11/21 Hr'g 2:03:14-2:03:24.) He was released the same day. (Defs.' MSJ, UF ¶ 10, ECF No. 166.) He returned to the emergency room on May 8, 2020, and later stayed at the hospital between May 13 and May 15, 2020. (Defs.' MSJ, UF ¶ 11, ECF No. 166.) Other than the one May 4, 2020, text, from May 4 through May 14, 2020, Mr. Rodriguez-Ortega did not communicate with Mr. Rich or anyone at NMDOH. (*See* Defs.' MSJ, UF ¶ 13, ECF No. 166; Rodriguez-Ortega Dep. 206:21-208:16, ECF No. 166-1.) Nor did Mr. Rich attempt to contact Mr. Rodriguez-Ortega after May 4, 2020, until May 15, 2020. (*See* Pls.' MSJ, UF ¶ 78, ECF No. 74; Defs.' UF ¶ 13, ECF No. 166.)

Mr. Rodriguez-Ortega's medical flareups cause him to be extremely confused and unable to form coherent thoughts, and he is generally unconscious and unaware of the passage of time due to his condition and the resulting treatment. (Rodriguez-Ortega Aff. ¶ 15, ECF No. 184-5.)[8] Between May 4 and May 15, 2020, Mr. Rodriguez-Ortega was in excruciating pain, he suffered

---

[8] Defendants dispute that Plaintiff was incapacitated from May 5, 2020, until Mr. Rich's phone call on May 15, 2020, such that he was physically unable to call in to work to report the reason for his absence. To dispute the fact, Defendants rely on the purported lack of medical evidence of his incapacity. (*See* Defs.' Resp. 9 ¶ 33, ECF No. 108.) Defendants, however, have not submitted the medical records to show a lack of support for his purported incapacitating symptoms. Plaintiff's own testimony and affidavit is evidence of his incapacity, as Plaintiff can testify to his physical and mental condition. The Court must construe inferences in favor of Plaintiff when considering Defendants' motion for summary judgment.

multiple debilitating symptoms, and he does not remember much about this period because he was "mostly unconscious." (*Id.* ¶ 12.) Even though he was still very sick, he was discharged because the hospital needed the beds for Covid patients, and he was at extremely high risk of complications if he contracted Covid. (*Id.* ¶¶ 13- 14.)

When he was released from the hospital between May 8 and May 15, 2020, he could speak and dial a phone. (Rodriguez-Ortega Dep. 231:7-21, ECF No. 166-1.) Upon his release, he had family members stay with him to care for him due to his incapacitation. (*See* 20-028 AR 6/11/21 Hr'g 1:34:36-1:36:10.) His brother visited him during that timeframe. (*See* Rodriguez-Ortega Dep. 231:22-24, ECF No. 166-1.)[9]

On May 15, 2020, Mr. Rich called Mr. Rodriguez-Ortega after he had just been released from the hospital and was under the influence of narcotics. (*See* Defs.' MSJ, UF ¶ 13, ECF No. 166; Rodriguez-Ortega Aff. ¶ 16, ECF No. 184-5; AR 20-028 6/11/21 Hr'g 1:36:20-1:37:23.) Mr. Rich screamed at him that he had not communicated with him since May 4th, told him that he was

---

[9] Defendants assert that Mr. Rodriguez-Ortega was able to let his parents know by telephone that he was returning to the hospital, and he had the necessary physical and mental capacities to make a phone call following his release from the hospital, relying on his deposition testimony. (Defs.' MSJ 4 ¶ 15, ECF No. 166.) In response, Plaintiff argues that he "never testified in his deposition that he called his parents each and every time he went to the ER, he just testified that they were told when he went to the hospital, generally." (Pl.'s Resp. 3-4 ¶ 15, ECF No. 184). In the deposition, during counsel's line of questioning Mr. Rodriguez-Ortega about who could have notified NMDOH of his hospitalizations, counsel asked whether his parents were aware of his health problems, and he said yes. (Rodriguez-Ortega Dep. 229:3-24, ECF No. 166-1.) The following exchange occurred:

Q. Were they aware that you were going to the emergency room?
A. Yes.
Q. How did they know that?
A. I told them.
Q. And how did you tell them?
A. Telephonically.
Q. The same day you went?
A. Possibly.
Q. Okay.
A. If not me, Carlos would have called on my behalf.

(*Id.* at 229:25-230:11, ECF No. 166-1.) Construing all inferences in Plaintiff's favor, as this Court must, there is ambiguity in this testimony about whether Plaintiff himself called his parents during his May 2020 hospital stay, so the Court will construe the fact in Plaintiff's favor for purposes of this motion. Consequently, the evidence in Plaintiff's favor shows that either Plaintiff or Carlos called his parents to let them know about his hospital stays.

going to code his time from May 5-15 as AWOL, and said that he was facing possible termination. (*See* Rodriguez-Ortega Aff. ¶ 16, ECF No. 184-5; 20-028 AR 6/11/21 Hr'g 1:36:20-1:37:23.)[10] Mr. Rich also asked why he had not responded to Mr. Rich's April 24 and May 1, 2020, emails. (Defs.' Resp. 23, UF ¶ 18, ECF No. 108.) Mr. Rodriguez-Ortega tried to tell him he had been in the hospital, but Mr. Rich would not listen to what he was saying. (*See* Rodriguez-Ortega Aff. ¶ 16, ECF No. 184-5; 20-028 AR 6/11/21 Hr'g 1:37:21-1:38:38.)

Later that day, Mr. Rodriguez-Ortega sent Mr. Rich a message claiming that he had not received any emails from Mr. Rich on April 24 or May 1. (Defs.' Resp. 23, UF ¶ 19, ECF No. 108.) In that message, Mr. Rodriguez-Ortega sent a photograph of his computer screen to show he did not have any email. (*Id.*) The photograph revealed that Mr. Rodriguez-Ortega had not been logged into Outlook, the Department's email system, since April 21, 2020, because his email password was expired. (Defs.' Resp. 23-24, UF ¶ 20, ECF No. 108.) Mr. Rodriguez-Ortega did not realize his email password had expired until May 15, 2020, when Mr. Rich brought it to his attention. (Rodriguez-Ortega Aff. ¶ 17, ECF No. 184-5.) Mr. Rodriguez-Ortega called the help desk to resolve the issue. (*Id.*) Prior to March 2020, when he was working in the office, Mr. Rodriguez-Ortega received approximately 20 emails a day. (*See* Rodriguez-Ortega Dep. 146:16-23, ECF No. 166-1.)

On May 22, 2020, Mr. Rich sent Mr. Rodriguez-Ortega an email, saying that he was unable to account for his time from May 5-15, 2020, because he was not logged into his email from April 21 until May 15, he had not responded to email, and he had not provided any work output. (*See* 20-028 AR 288-89.) Mr. Rich stated that he "failed to be ready for work for 9 of your 10 work days for the pay period of May 4 through May 15, 2020," and he was coding his time as AWOL.

---

[10] Defendants dispute that Mr. Rich yelled at Mr. Rodriguez-Ortega during this phone call, but the Court must construe the admissible evidence in Plaintiff's favor on Defendants' motion for summary judgment.

(*Id.* at 289.) Mr. Rich asked him to explain the work he completed from April 21 through May 15, 2020. (*Id.*) On May 26, 2020, Mr. Rodriguez-Ortega responded to Mr. Rich's email, asserting among other things, that he was in fact ready to work for the remaining nine of the ten days between May 5, 2020, and May 15, 2020. (*Id.*; Defs.' MSJ, UF ¶ 16, ECF No. 166.) Because Mr. Rich had told him that he could not invoke FMLA if he had not called in to work each day that he was absent, regardless of the reason, Mr. Rodriguez-Ortega lied about teleworking during the time he was actually in the hospital or at home incapacitated. (Rodriguez-Ortega Aff. ¶¶ 18-19, ECF No. 184-5.) He believed the lie was necessary to keep his job. (*Id.*)

Mr. Rich approved Mr. Rodriguez-Ortega for 4.5 hours of FMLA leave for May 4, 2020, with the rest of that day marked as Telework. (*See* Timesheet, ECF No. 74-21 at 1 of 2; Rich Dep. 120:19-20, ECF No. 74-23.) Mr. Rich marked him as AWOL for May 5-8 and May 11-15, 2020. (*See* Timesheet, ECF No. 74-21 at 1 of 2; Rich Dep. 120:19-121:19, ECF No. 74-23.)

### G. Process Leading to Recommended Decision Terminating Mr. Rodriguez-Ortega's Employment

On June 30, 2020, Mr. Rodriguez-Ortega received a *Notice of Contemplated Action – Dismissal* letter ("NCA"), signed by Mr. Rich and Ms. Padilla, notifying him that NMDOH was considering terminating his employment "for inappropriate and unprofessional behavior, negligence in the performance of your duties, insubordination, failure to be ready to work, and for being Absent Without Leave (AWOL) four (4) or more times within a 12-month period." (*See* 20-028 AR 273-76.) The letter outlined the factual basis for the recommended dismissal: Mr. Rich's April 24, 2020, and May 1, 2020, emails about the disciplinary action he assigned to Mr. Rodriguez-Ortega, to which Mr. Rodriguez-Ortega failed to respond; the May 4, 2020, text Mr. Rodriguez-Ortega sent to Mr. Rich and the lack of follow-up updates; Mr. Rich's May 15, 2020, conversation with Mr. Rodriguez-Ortega where Mr. Rodriguez-Ortega said he received none of

the emails and the photograph showing he had not logged into his email since April 21, 2020. (*See id.* at 273-75.) Based on that evidence, Mr. Rich and Ms. Padilla found that he failed to be ready for work for 9 of the 10 workdays for the pay period of May 4 through May 15, 2020; that he failed to be ready to work from April 21, 2020, (an additional eight days from the prior pay period); and that he was negligent in the performance of his duties. (*Id.* at 275.) The letter asserted numerous violations of policy based on his conduct: (i) his failure to log in and respond to email violated NMDOH's *Telework During Emergencies* policy and the *Telework Agreement Form* (requiring that employees be accessible by phone or modem and that employees must notify the NMDOH of equipment failures immediately); (ii) NMDOH's *Disciplinary Action* policy against insubordination (defined as refusal to follow a supervisor's reasonable directive or instructions), (iii) NMDOH's *Readiness to Work* policy (requiring employees to be fully prepared to begin work at their assigned time and work station, with the failure to do so being grounds to be marked AWOL); and (iv) the NMDOH's and Governor's codes of conduct for, among other things, failing to behave with integrity and failing to ethically discharge the responsibilities of public office. (*See id.* at 275-76.)

In his July 11, 2020, response to the NCA, Plaintiff did not indicate he intended to exercise his FMLA rights. (Defs.' MSJ, UF ¶ 17, ECF No. 166.) NMDOH terminated Plaintiff's employment on July 22, 2020, for inappropriate and unprofessional behavior, negligence in the performance of his duties, insubordination, failure to be ready to work, and for being AWOL four or more times within a 12-month period. (Defs.' MSJ, UF ¶ 18, ECF No. 166; 20-028 AR 1.) Mr. Rodriguez-Ortega appealed his termination to the State Personnel Board ("SPB"). (20-028 AR 20.)

ALJ Aaron Baca held a two-day hearing with counsel on June 10 and 11, 2021. (20-028 AR 127.) Ms. Padilla was called as a witness in the hearing and testified before ALJ Baca. (*See* 20-028 AR 6/10/21 Hr'g 6:05:31-6:06:37.)

On October 14, 2021, ALJ Baca filed his decision recommending that the SPB affirm Mr. Rodriguez-Ortega's dismissal. (20-028 AR 157.) ALJ Baca determined, among other things, that the NMDOH proved by a preponderance of the evidence that Mr. Rodriguez-Ortega abandoned his job by accumulating more than four consecutive absences without leave, that he was insubordinate and negligent in the performance of his job duties, that he failed to be ready for work according to the NMDOH's Readiness to Work and Telework policies, and that his level of professionalism fell below that required by governing codes of conduct. (*See* 20-028 AR 156-157.) ALJ Baca also recommended to the SPB that dismissal was appropriate because NMDOH's AWOL policy says that four consecutive days of AWOL "is considered job abandonment and **shall be** grounds for dismissal without having first imposed progressive discipline." (*Id.* at 148 (emphasis in original); *id.* at 157.) Mr. Rodriguez-Ortega filed objections to ALJ Baca's recommended decision to the SPB. (20-028 AR 167-81.)

## H. Appeal of Termination Decision and Filing of Federal Lawsuit

On October 12, 2021, Plaintiffs filed a complaint in the First Judicial District Court for the State of New Mexico against David Rich, Kenneth Lucero, and the NMDOH, which was removed on November 24, 2021. (*See* Notice, ECF No. 1; Compl., ECF No. 1-1.) On December 10, 2021, the SPB issued a Final Decision adopting ALJ Baca's proposed FOFs, agreeing with and adopting his proposed conclusions of law, and affirming the dismissal of Mr. Rodriguez-Ortega. (20-028 AR 183-84.) Plaintiffs amended their complaint on January 8, 2022, to add Count VIII to appeal Mr. Rodriguez-Ortega's termination. (*See* Am. Compl. 27-28, ECF No. 18.) In a subsequently

filed second amended complaint, Mr. Rodriguez-Ortega asserts claims for FMLA interference (Count I) and FMLA retaliation (Count II) against Defendant Rich in his individual capacity, and a claim against Defendants Rich, Lucero, and the NMDOH for violation of the NMHRA based on disability or serious medical condition (Count III). (Am. Compl. 16-23, ECF No. 106.) His brother, Joshua Rodriguez, brings the following state claims as well: violation of the NMHRA against Defendants (Count III), breach of implied contract against NMDOH (Count IV), breach of the duty of good faith and fair dealing against NMDOH (Count V), violation of the New Mexico Whistleblower Protection Act against NMDOH (Count VI), and an appeal of his termination (Count VII).

## III.    ANALYSIS

### A. Defendant Rich is entitled to summary judgment on Plaintiff's FMLA interference claim

The FMLA provides eligible employees with 12 weeks of leave, including taking leave intermittently when medically necessary, during any 12-month period if a "serious health condition" prevents such an employee from performing the functions of his job. *See* 29 U.S.C. § 2612(a)(1)(D), (b)(1). "The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise or attempt to exercise any right provided under the FMLA." *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1226 (10th Cir. 2012) (citing 29 U.S.C. § 2615(a)(1)). To succeed on an FMLA interference claim, "an employee must show that (1) he was entitled to FMLA leave, (2) an adverse action by his employer interfered with his right to take FMLA leave, and (3) this adverse action was related to the exercise or attempted exercise of the employee's FMLA rights." *Id.* The first element is satisfied when the employee shows that he would have qualified for leave under the FMLA. *Tadlock v. Marshall County HMA, LLC*, 603 F. App'x 693, 709 (10th Cir. Feb. 25, 2015) (citing *DeFreitas v. Horizon Inv. Mgmt. Corp.*, 577 F.3d 1151, 1159 (10th Cir. 2009)).

A plaintiff may satisfy the second element by showing that he was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave. *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). Interfering with an employee's exercise of his FMLA rights also includes discouraging an employee from using FMLA leave. 29 C.F.R. § 825.220(b). "A deprivation of these rights is a violation regardless of the employer's intent, and the *McDonnell Douglas* burden-shifting analysis does not apply." *Brown*, 700 F.3d at 1226-27.

"If the employee can demonstrate that the first two elements of interference are satisfied, the employer then bears the burden of demonstrating that the adverse decision was not related to the exercise or attempted exercise of [the employee's] FMLA rights." *Dalpiaz v. Carbon County*, 760 F.3d 1126, 1132 (10th Cir. 2014) (internal quotations omitted). An "employer is not required to show that the adverse employment decision and the employee's FMLA request are completely and entirely unrelated." *Id.* An indirect causal link between an FMLA leave request and dismissal is not enough to establish liability. *Id.* An employer can defend against the interference claim by demonstrating that it would have terminated the employee anyway, regardless of the request for FMLA leave. *Brown*, 700 F.3d at 1227.

Defendants argue that no genuine issue of fact exists as to the third element. Defendant bears the burden of proof as to this element. For Defendant Rich to demonstrate that he would have terminated Plaintiff anyway, he must provide evidence of alternative reasons for Plaintiff's termination. *See Brown*, 700 F.3d at 1227. Summary judgment is only warranted when there is no genuine dispute as to any material fact regarding the grounds for termination. *Id.* "The question here is not whether a reasonable jury could find in favor of [the employer], but rather whether the evidence is so one-sided that submission to a jury is not required." *Id.* Having reviewed the record

in the light most favorable to Mr. Rodriguez-Ortega, the Court finds that Defendant Rich satisfied his burden.

As outlined in the June 30, 2020, *Notice of Contemplated Action – Dismissal* letter, Mr. Rich and Ms. Padilla recommended Plaintiff's termination based on violations of (i) NMDOH's *Telework During Emergencies* policy and the *Telework Agreement Form* (requiring that employees be accessible by phone or modem and that employees must notify the NMDOH of equipment failures immediately); (ii) NMDOH's *Disciplinary Action Policy* against insubordination (defined as refusal to follow a supervisor's reasonable directive or instructions); (iii) NMDOH's *Readiness to Work* policy (requiring employees to begin work at their assigned time and work station, with the failure to do so being grounds to be marked AWOL); and (iv) the NMDOH's and Governors codes of conduct for failing to behave with integrity. Undisputed facts in the record support Mr. Rich's recommendations. Plaintiff failed to complete the disciplinary action that Mr. Rich assigned him in the April 24, 2020, email. Mr. Rich again emailed Mr. Rodriguez-Ortega on May 1, 2020, giving a new deadline to complete the disciplinary action and asking for a response as to why he did not complete the assignment previously. Plaintiff never completed that assignment or responded to the email. Although Plaintiff did not receive the emails and was unaware of the assignment, his lack of knowledge was because he had not logged into his email since April 21, 2020, and failed to notice his email password had expired, despite that it would have been unusual to receive no emails for that long. His failure to log into and respond to emails supported Defendants' finding that he was not ready to work from April 21 through May 15, 2020, when he discovered the error, and that he violated his obligations under NMDOH's telework policies. According to NMDOH policy, one definition of being AWOL is appearing for

work in violation of NMDOH's readiness for work policy. The evidence thus shows that Defendant Rich had alternative reasons to recommend Plaintiff's termination.

Additionally, Defendants argue that no rational jury could find that the adverse action was related to Plaintiff's exercise or attempt to exercise his FMLA rights because Plaintiff did not exercise or attempt to exercise his FMLA rights in response to Mr. Rich accusing him of being AWOL from May 5-15, 2020. Plaintiff instead claimed he was ready to work those nine days. Defendants do not contest that the May 4, 2020, text message invoked Plaintiff's leave for that day, but they assert that he did not provide proper notice that he sought FMLA leave for the remainder of the time between May 5 through May 15, 2020. It is undisputed that Plaintiff's text said: "David I just arrived at the ED at SF Pres Hospital. It's a given I won't be able to telecommute the rest of the day. I'll keep you posted." (Text Message, ECF No. 74-20.) Also, it is not disputed that Mr. Rodriguez-Ortega did not attempt to contact Mr. Rich again over the next nine days, either directly or through a family member, even though he had previously been warned about the need to follow NMDOH's leave notification policy. Mr. Rich called Mr. Rodriguez-Ortega on May 15, 2020, and at that time Mr. Rodriguez-Ortega learned that Mr. Rich considered him AWOL for failing to notify him that he would not be at work. Even though Mr. Rich did not give Mr. Rodriguez-Ortega a chance to speak in that phone call (construing the facts in favor of Plaintiff), it is undisputed that on May 26, 2020, Mr. Rodriguez-Ortega lied to Mr. Rich in an email when he said that he was ready to work May 5-15, 2020. It is further undisputed that he did not tell Mr. Rich or anyone at NMDOH anytime between May 5, 2020, and his termination that he was invoking FMLA leave between May 5, 2020, and May 15, 2020.

Plaintiff nonetheless contends that there "is absolutely no dispute that the May 4th text gave Defendant Rich notice of Mr. Rodriguez-Ortega's need for FMLA leave." (Pl.'s Resp. 10, ECF

No. 184.) That text, however, only said he arrived at the hospital on May 4th and that he would not be able to telecommute "the rest of the day" and that he would keep Mr. Rich posted. (Pl.'s Ex. 20, ECF No. 74-20.) Based on the text, Mr. Rich coded 4.5 hours of FMLA leave for May 4, 2020, with 3.5 hours marked as Telework. (Timesheet, ECF No. 74-21.) The May 4th text did not give Mr. Rich notice that his later absences from May 5 through May 15 were FMLA qualifying.

Relying on 29 C.F.R. § 825.301(a), Plaintiff argues that Mr. Rich had a duty to inquire further of Mr. Rodriguez-Ortega or his spokesperson to ascertain whether the May 5-15 leave was potentially FMLA-qualifying. It is undisputed that Mr. Rich called Mr. Rodriguez-Ortega on May 15, 2020, and he answered. Even construing Mr. Rodriguez-Ortega's version of the phone call as true, and that Mr. Rich did not give him an opportunity to explain the reasons he was absent from May 5-15, it is undisputed that in a May 26, 2020, email, Mr. Rodriguez-Ortega told Mr. Rich that he was ready to work for nine of the ten days between May 5 and 15, 2020. At that point, Mr. Rich had no reason to believe Mr. Rodriguez-Ortega was invoking FMLA leave for May 5-15, 2020. A reasonable jury could not conclude from this record that Mr. Rich failed to satisfy his FMLA duties to investigate FMLA-qualifying leave.

Plaintiff nevertheless argues that his own lie, in a moment of panic, was caused by Mr. Rich having punished him in February 2020 by marking him AWOL and telling him he could not use FMLA leave if he had not called in each day. According to Plaintiff, Mr. Rich believed the call-in policy to be more restrictive than it was and that he misinformed Mr. Rodriguez-Ortega of his FMLA rights.[11] Plaintiff points to Mr. Rich's deposition testimony wherein he said that Mr.

---

[11] Plaintiff argues that Mr. Rich applied a stricter notice requirement than NMDOH policy had. According to the policy, non-facility employees needed to call in no later than 30 minutes *after* the scheduled beginning of their workday, (*see* Pls.' Ex. 4, ECF No. 74-4 at 34 of 6), while Mr. Rich testified that the policy required notice 30 minutes *before* a shift, (*see* Rich Dep. 115:16-20, ECF No. 74-24). Here, the discrepancy in Mr. Rich's understanding of the NMDOH policy is immaterial because Mr. Rodriguez-Ortega failed to notify Mr. Rich of his absence at any time from May 5-15.

Rodriguez-Ortega could face a 5-day suspension for his February 2020 absences for failing to notify his employer where he was "regardless of the reason." (Rich Dep. 114:24-115:1, ECF No. 74-24.) According to Plaintiff, Mr. Rich's non-FMLA compliant notification policy, which did not account for an employee being too incapacitated to call into work, chilled him from invoking his FMLA right to leave from May 5-15. Plaintiff argues that Mr. Rich's interference in February 2020 led him "to reasonably believe that the same thing would happen in May and that he would be marked AWOL if he admitted he had been incapacitated." (Pl.'s Resp. 12, ECF No. 184.)

The problem with Plaintiff's argument is that it does not account for the provisions of NMDOH's *Absences and Other Leave* policy, which Mr. Rodriguez-Ortega received and knew about. NMDOH's policy required employees to call their supervisor at the earliest opportunity, but no later than 30 minutes from the start of the employee's shift. (Pls.' MSJ, Ex. 4, ECF No. 74-4 at 4 of 6.) The policy also accounted for incapacitation and extenuating circumstances, allowing a family member to call in on behalf of the employee. (*Id.*) This policy does not conflict with the FMLA, which likewise provides: "When the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances." 29 C.F.R. § 825.303(c). The FMLA further imposes notice requirements for unforeseeable leave on the employee:

> When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer's usual and customary notice requirements applicable to such leave. See § 825.303(c). Notice may be given by the employee's spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally.

29 C.F.R. § 825.303(a) (emphasis added). *See also* 29 C.F.R. § 825.301(a) ("The employer's decision to designate leave as FMLA–qualifying must be based only on information received from

the employee or the employee's spokesperson (e.g., if the employee is incapacitated, the employee's spouse, adult child, parent, doctor, etc., may provide notice to the employer of the need to take FMLA leave)."). It is undisputed that Plaintiff was cared for by family members upon his release from the hospital during the May 5-15, 2020, period, yet neither Plaintiff nor any of his family members provided notice to NMDOH that he was absent because he needed FMLA leave from May 5-15.

Mr. Rich had reason to believe that Mr. Rodriguez-Ortega violated NMDOH's *Absences and Other Leave* policy, the relevant portions of which were consistent with the FMLA. As the Tenth Circuit explained, a request for FMLA leave does not shelter an employee from his obligation, which is the same as for all other employees, to comply with the employer's employment policies, including its absence policy. *Bones v. Honeywell International, Inc.*, 366 F.3d 869, 878 (10th Cir. 2004). An "employer generally does not violate the FMLA if it terminates an employee for failing to comply with a policy requiring notice of absences, *even if the absences that the employee failed to report were protected by the FMLA*." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1008-09 (10th Cir. 2011) (emphasis in original). "Formal notice-of-absence policies serve an employer's legitimate business interests in keeping apprised of the status of its employees and ensuring that it has an adequate workforce to carry out its normal operations." *Id.* at 1009. Here, Defendant Rich met his burden to show that the employer's decision to terminate Plaintiff's employment was not related to any exercise or attempted exercise of his FMLA rights. *Cf. Dalpiaz*, 760 F.3d at 1132-33 ("[I]f an employer presents evidence that an employee was dismissed for her failure to comply with the employer's absence-notification policy, this is sufficient to demonstrate the termination was not legally 'related to' the exercise of FMLA leave, even if the employee's absences were caused by a requested medical leave.").

In addition, Plaintiff asserts that Mr. Rich interfered with his FMLA rights in other ways prior to his termination. Plaintiff argues that Mr. Rich interfered with his FMLA rights by stripping him of his duties in March 2020. Even assuming that Plaintiff's version is correct that Mr. Rich took away his duties in early March 2020 so that he could look into medical retirement, it is undisputed that Mr. Rich later sent two emails to Mr. Rodriguez-Ortega on April 24, 2020, and again on May 1, 2020, referencing an assignment that he gave Mr. Rodriguez-Ortega that Mr. Rodriguez-Ortega failed to do, and ordering him to complete the assignment. Although Plaintiff argues that there is a dispute of fact as to whether Mr. Rich gave him this assignment, he admits that Mr. Rich referenced an assignment that had not been done in these two separate emails. The evidence thus establishes that at least as of April 24, 2020, Mr. Rich attempted to notify Mr. Rodriguez-Ortega by email that he had an assignment. Based on the record showing that Mr. Rich gave Plaintiff a work assignment in April 2020, Plaintiff has not established that Mr. Rich stripped him of all duties as an employee to sustain an FMLA interference theory on a duty-stripping theory.

Finally, Plaintiff argues that he "should not have been marked AWOL for any of his protected leave in February 2020" because he had been hospitalized and incapacitated. Because Mr. Rodriguez-Ortega was hospitalized from February 20-23, 2024, and he received retroactive FMLA coverage, Plaintiff contends that Defendant Rich violated the FMLA by marking him AWOL for eight hours on February 21 and 28, 2020, and for three hours on February 27, 2020. Under FMLA regulations, if "an employer's failure to timely designate leave in accordance with § 825.300 causes the employee to suffer harm, it may constitute an interference with, restraint of, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.301(e). According to Plaintiff, being marked AWOL is an adverse action, because it affects the employee's pay, leave, and retirement and can be the basis of future discipline.

Mr. Rich, however, has provided evidence of alternative reasons for marking him AWOL: he considered him AWOL for the dates Mr. Rodriguez-Ortega did not notify him about his whereabouts. (Pls.' MSJ, UF ¶¶ 17, 19, ECF No. 74.) Mr. Rich marked Mr. Rodriguez-Ortega AWOL for failing to properly notify him, either personally or through a family member, that he needed sick leave on those dates. Plaintiff did not notify Mr. Rich of his need for leave on February 20 or 21, 2020, or have a family member call in to NMDOH for him. Mr. Rich did not know he was in the hospital until he called Mr. Rodriguez-Ortega's brother on February 21, 2020. Mr. Rich thus had reason to believe that Mr. Rodriguez-Ortega violated the NMDOH's call-in policy on February 21, 2020, for which he was marked AWOL. Mr. Rodriguez-Ortega was no longer hospitalized on February 27 and 28, 2020, and Mr. Rich marked him AWOL on those dates for failing to notify him of his whereabouts. Notably, Plaintiff admits that he failed to properly notify his employer of his need for leave in February 2020. (*See* Pls.' Resp. 8, ECF No. 184 ("There is no dispute that, *with the exception of the two incidents in February 2020 and May 2020*, Plaintiff had always properly notified Defendants of his need for leave.") (emphasis added); Pls.' Am. Compl. ¶¶ 24-25, 28, ECF No. 106 (asserting Plaintiff did not notify NMDOH of his whereabouts due to his incapacitation; Mr. Rich learned he was hospitalized by calling his brother on February 21, 2020, and his brother knew of his illness; and "Mr. Rich marked Mr. Rodriguez-Ortega AWOL for several days of his hospitalization and recovery period for being in violation of [DOH's Absence and Leave] policy").) Moreover, Mr. Rich subsequently provided Mr. Rodriguez-Ortega FMLA forms to apply for FMLA leave, approved him for intermittent FMLA leave, and retroactively applied FMLA leave to some of his February absences. Defendant Rich has satisfied his burden on summary judgment of demonstrating that his decision to mark Plaintiff AWOL for a few days in February 2020 was not related to the exercise or attempted exercise of his FMLA

rights, but rather because of Mr. Rodriguez-Ortega's failure to adhere to NMDOH's leave notification policies.

For all the foregoing reasons, Defendant Rich is entitled to summary judgment on Plaintiff's FMLA interference claim. *Cf. Brown*, 700 F.3d at 1227-28 (concluding that employer's evidence was so one-sided that submission to jury of FMLA interference claim was not required where evidence showed employee received detailed, specific, unfavorable feedback in his performance review, there was uncontroverted evidence of continued problems after annual written evaluation, and no evidence existed that stated reasons for termination were not real ones); *Twigg*, 659 F.3d at 1009 (affirming district court's decision granting summary judgment in favor of employer on plaintiff's FMLA interference claim where it was undisputed employee did not receive formal approval of FMLA leave past April 1, 2008; she failed to report her absences on April 2, 3, and 4, in violation of her employer's notice-of-absence policy; and employer provided evidence indicating it terminated her because she failed to give proper notice); *Bones*, 366 F.3d at 877-78 (concluding district court properly granted summary judgment to employer on employee's FMLA interference claim where it was uncontroverted that employer fired plaintiff because she did not comply with employer's absence policy, record showed she had history of non-compliance with absence policy, and it was uncontroverted that she did not comply with absence notification policy on dates for which she was terminated); *see also Branham v. Delta Airlines*, 678 F. App'x 702, 705 (10th Cir. Feb. 3, 2017) (concluding that employer carried its burden of proving it dismissed employee for reasons unrelated to any FMLA leave where plaintiff was on final warning, called in sick for her latest absence just hours after having accepted assignment, and was absent on short notice just weeks before).

**B. Defendant Rich is entitled to summary judgment on Plaintiff's FMLA retaliation claim**

"The FMLA makes it unlawful for an employer to retaliate against an employee for exercising her rights to FMLA leave." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012) (citing 29 U.S.C. § 2615(a)). A plaintiff may show intentional discrimination by direct or indirect evidence of discrimination. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017). Plaintiff argues that Defendant Rich's actions in marking him AWOL, stripping him of job duties, and telling him to look into medical retirement constitute direct evidence of FMLA retaliation. The Court disagrees that Plaintiff produced direct evidence of retaliation.

For an FMLA retaliation claim supported by indirect evidence of discrimination, the analysis follows the burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *DePaula*, 859 F.3d at 969; *Brown*, 700 F.3d at 1229. To establish a prima face claim for FMLA retaliation, Plaintiff must demonstrate that (1) he engaged in protected activity, (2) the employer took a materially adverse employment action, and (3) there is a causal connection between the two. *Khalik*, 671 F.3d at 1193. If Plaintiff establishes his prima facie case of retaliation, Defendant has the burden of coming forward with a legitimate, non-discriminatory reason for the adverse action. *See Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003). The employer's burden is of production, not persuasion. *Id.* If met, the burden shifts to Plaintiff to prove by a preponderance of the evidence that the legitimate reason offered was a mere pretext for discrimination. *Id*.

A plaintiff may show pretext by producing evidence that the proffered reason is factually false or that discrimination was the primary factor in his employer's decision. *DePaula*, 859 F.3d at 970 (internal quotations omitted). A plaintiff may meet his burden "by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence."

*Id.* The court does "not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118-19 (10th Cir. 2007). In determining whether the proffered reason for a decision was pretextual, a court examines the facts as they appear to the person making the decision and does not look to the plaintiff's subjective evaluation of the situation. *DePaula*, 859 F.3d at 971. To show pretext, a plaintiff may present evidence of temporal proximity *plus* circumstantial evidence of retaliatory motive. *Brown*, 700 F.3d at 1230.

Plaintiff first asserts that he was retaliated against for taking FMLA leave when he was marked AWOL February 21, 27, and 28, 2020, when he was either hospitalized or incapacitated. Defendants contend that Plaintiff cannot show that he suffered an adverse action because he engaged in protected FMLA activity. The record shows that after Plaintiff's February 2020 hospitalization and medical absences, Defendant Rich retroactively approved Plaintiff for intermittent FMLA leave. As discussed *supra*, the record, even construed in Plaintiff's favor, does not establish that Defendant Rich marked him AWOL *because* he invoked FMLA leave. Rather, the record supports Defendant Rich's legitimate, non-discriminatory reason for the adverse action: Plaintiff failed to follow NMDOH's leave notification policy.

Because Defendant Rich met his burden of production, to survive summary judgment, the plaintiff must prove by a preponderance of the evidence that the legitimate reason offered was a mere pretext for discrimination. Plaintiff suggests that Mr. Rich marking him AWOL for only a few days in February 2020, including a half a day, shows that he was punishing him for taking FMLA leave. The Court disagrees. Even if Mr. Rich's decision to mark him AWOL was not wise, fair, or correct, the relevant inquiry is whether he honestly believed his reasons and acted in good faith upon them. There is nothing in the record that suggests he did not believe that Plaintiff

violated NMDOH's *Absences and Other Leave* policy by failing to call in or have his family member call in for him. As discussed *supra*, NMDOH's call-in policy did not violate the FMLA. Plaintiff's evidence falls short of that needed to persuade a reasonable jury that the defendant's proffered reason was mere pretext to retaliate against him for engaging in FMLA-protected activity.

Second, Plaintiff argues that he was stripped of his job duties in retaliation for invoking FMLA leave. Defendants contend that telling Plaintiff to look into medical retirement or allegedly stripping him of his duties are not adverse actions because he was not demoted nor was his compensation affected. Defendants further argue that the evidence does not support that his duties were stripped. As discussed above, the record, construed in Plaintiff's favor, shows that he was not permanently stripped of job duties. Mr. Rich assigned him work in April 2020 that he failed to do. Plaintiff has not cited authority that temporarily not assigning him work is an adverse action.

Finally, Plaintiff contends that his termination was unlawful retaliation for engaging in FMLA protected activity. According to Defendants, Plaintiff cannot establish a prima-facie case of FMLA retaliation because he never invoked FMLA leave between May 5-15, 2020. The Court need not decide that issue, because even assuming Plaintiff demonstrated a prima facie case of discrimination, Defendant Rich met his burden of coming forward with legitimate, non-discriminatory reasons to fire Plaintiff, and Plaintiff failed to meet his burden to prove pretext.

Mr. Rich and Ms. Padilla provided their reasons for recommending Plaintiff's employment be terminated in the June 30, 2020, *Notice of Contemplated Action – Dismissal* letter for numerous NMDOH policy violations. For the reasons discussed *supra*, the undisputed facts in the record support Defendant Rich's reasoning in the letter. Defendants thus articulated a legitimate, non-

discriminatory reason for terminating Plaintiff's employment, shifting the burden back to Plaintiff to show pretext.

Plaintiff asserts that Defendants fired him for invoking FMLA leave on May 4th, which gave Defendants notice that he needed additional FMLA leave. But again, he stated in writing that he was ready to work from May 5-15, and never said he was invoking FMLA leave for those days. Plaintiff also argues that Mr. Rich's failure to try to communicate with Mr. Rodriguez-Ortega by means other than email until May 15, 2020, is the behavior of someone who wants to claim the employee was AWOL so he can terminate him. That inference, however, is not reasonable where Mr. Rich emailed Mr. Rodriguez-Ortega about the assignment twice, extending the deadline for when the assignment was due in both emails. Having considered the record, Plaintiff has failed to produce evidence that Mr. Rich's reasons for terminating Plaintiff's employment were factually false or that discrimination was the primary factor in his decision. There are insufficient facts to create a genuine issue for the jury. Accordingly, the Court grants Defendant Rich summary judgment on Plaintiff Rodriguez-Ortega's FMLA retaliation claim.

###### C. Plaintiff Rodriguez-Ortega's request for summary judgment on his FMLA interference and retaliation claims is denied

Plaintiff moved for summary judgment on all his claims in Plaintiffs' *First Amended Motion for Summary Judgment* (ECF No. 74). Plaintiff's request for summary judgment on his FMLA interference and retaliation claims must be denied for the reasons given herein supporting dismissal of those claims.

###### D. The Court declines supplemental jurisdiction over the remaining state law claims

Having concluded that Defendant Rich is entitled to summary judgment on Plaintiff Rodriguez-Ortega's FMLA interference (Count I) and FMLA retaliation (Count II) claims, no additional federal claims remain in the case. What are left are Plaintiff Rodriguez-Ortega's and

Plaintiff Rodriguez's state tort claims and their respective appeals of the SPB decisions affirming their terminations.

Under 28 U.S.C. § 1367(c), the "district courts may decline to exercise supplemental jurisdiction over a claim ... if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Section 1367 grants the court discretion to dismiss supplemental state law claims when it has dismissed the federal claims supporting its original jurisdiction. *See Tonkovich v. Kansas Bd. of Regents*, 254 F.3d 941, 945 (10th Cir.2001). Factors that a district court should consider in deciding whether to exercise pendant jurisdiction include the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness. *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 541 (10th Cir.1995) (quoting *Thatcher Enter. v. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990)). While the parties have largely completed discovery and pretrial motions practice in federal court, the remaining proceedings should occur in as an efficient manner in state court as here. Most significantly, the claims to be resolved are issues of state law that are best resolved by the state courts of New Mexico, particularly the appeals of the SPB termination decisions. The parties will not be prejudiced by this Court declining to exercise supplemental jurisdiction. For reasons of judicial comity and principles of federalism, this Court declines to exercise supplemental jurisdiction and will remand the case to the First Judicial District Court of New Mexico. The Court will therefore not decide the other pending pretrial motions that are best decided by the state court.

**IT IS THEREFORE ORDERED** that

1. Defendants' *Motion for Summary Judgment on Jeremy Rodriguez-Ortega's Claims* (**ECF No. 166**) is **GRANTED IN PART**. The Court **GRANTS** Defendants' motion

for summary judgment on Plaintiff Rodriguez-Ortega's FMLA interference claim (Count I) and FMLA retaliation claim (Count II).

2. The Court **DISMISSES Counts I and II with prejudice**.

3. Plaintiffs' *First Amended Motion for Summary Judgment* (**ECF No. 74**) is **DENIED IN PART**. The Court **DENIES** Plaintiffs' motion for summary judgment as to Plaintiff Rodriguez-Ortega's FMLA interference claim (Count I) and FMLA retaliation claim (Count II).

4. The Court declines to exercise pendant jurisdiction over the remaining state law claims in the case.

5. The Court declines to rule on the parties' respective requests for summary judgment on Plaintiffs' state-law claims.

6. The Court **REMANDS** this case to the First Judicial District Court, State of New Mexico, for disposition of Plaintiffs' remaining state law claims.

_____
SENIOR UNITED STATES DISTRICT JUDGE